UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAGI GENGER,

                              Plaintiff,

            - against -

ORLY GENGER,

                              Defendant.

Civ. No.: 14-5683 (KBF)

**DEFENDANT ORLY GENGER'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)
AND 12(H)(3) FOR LACK OF SUBJECT MATTER JURISDICTION, AND
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) FOR FAILURE TO
<u>STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS AND ALLEGATIONS...............................................3

    THE 12(B)(1) AND 12(H)(3) MOTION.............................................................3

    THE 12(B)(6) MOTION.....................................................................................3

    Orly Genger .......................................................................................................3

    Sagi Genger........................................................................................................4

    Dalia Genger .....................................................................................................4

    The October 26, 2004 Divorce Stipulation ......................................................5

    The October 30, 2004 Sagi Promise Document.................................................7

    The November Document....................................................................................8

    Dalia's Demand and the Instant Lawsuit ..........................................................9

ARGUMENT..........................................................................................................10

I.       THE COMPLAINT SHOULD BE DISMISSED A SECOND TIME
          UNDER F.R.C.P. 12(B)(1) AND 12(H)(3) BECAUSE SAGI STILL
          FAILS TO MEET HIS HEAVY BURDEN OF PROVING, BY
          CLEAR AND CONVINCING EVIDENCE, THAT HE IS NO
          LONGER A NEW YORK DOMOCILIARY ...........................................10

II.      IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE
          DISMISSED WITH PREJUDICE UNDER F.R.C.P. 12(B)(6) FOR
          THE MANY INDEPENDENT REASONS SET FORTH BELOW.........12

      A.    The Complaint Should Be Dismissed With Prejudice Because The
             November Document Lacks Consideration...............................................13

      B.    The Complaint Should Be Dismissed With Prejudice Because Sagi
             Failed To Notify Orly Of Dalia's Claim, And Give Orly A Chance
             To Defend Prior To Payment, And There Are Valid Defenses To
             Dalia's Claim To Payment........................................................................18

      C.    The Complaint Should Be Dismissed With Prejudice Because It
             Does Not State, And Could Never Properly State, A Claim For
             Promissory Estoppel .................................................................................20

CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. County of Nassau,
297 F.Supp.2d 540 (E.D.N.Y. 2004) ......................................................................13

APWU v. Potter,
343 F.3d 619 (2d Cir. 2003).....................................................................................10

Ashcroft v. Iqbal,
556 U.S. 662 ...........................................................................................................14

Ballard v. Parkstone Energy, LLC,
664 F.Supp.2d 325 (S.D.N.Y. 2009).......................................................................19

Barclay's Ice Cream Co. v. Local No. 757 of Ice Cream Drivers & Employers Union, No.
1979 U.S. Dist. LEXIS 9964 (S.D.N.Y. Sept. 7, 1979)..........................................11

Beitner v. Becker,
34 A.D.3d 406 (2d Dept. 2006) ..............................................................................13

Chase Manhattan Bank v. 264 Water St. Assocs.,
222 A.D.2d 229 (1st Dept. 1995)......................................................................18, 20

Consolidated Energy Design Inc. v. The Princeton Club of New York,
2014 U.S. Dist. LEXIS 38560 (S.D.N.Y. March 24, 2014) ..........................*passim*

Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust,
74 A.D.3d 32 (1st Dept. 2010)....................................................................18, 19, 20

Doherty v. American Home Prods. Corp.,
1999 U.S. Dist. LEXIS 16101 (D. Conn. Oct. 15, 1999) .......................................13

Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.,
2007 U.S. Dist. LEXIS 11346 (S.D.N.Y. Feb. 8, 2007).........................................13

Fishoff v. Coty, Inc.,
676 F.Supp.2d 209 (S.D.N.Y. 2009)........................................................................22

General Electric Co. v. Inter-America Marketing Systems, Inc.,
220 A.D.2d 307 (1st Dept. 1995)............................................................................16

Genger v. Genger,
115 A.D.3d 421 (1st Dept. 2014)..............................................................................5

Genger v. Genger,
2013 N.Y. Misc. LEXIS 2304 (N. Y. Sup. Ct. May 29, 2013)....................................................5

George v. Storage Am. & Ebay, Inc.,
2014 U.S. Dist. LEXIS 53764 (S.D.N.Y. Mar. 6, 2014) ......................................................11

Haggerty v. United Mining Corp.,
1992 U.S. Dist. LEXIS 13018 (S.D.N.Y. Aug. 31, 1992)....................................................13

Hai Yang Liu v. 88 Harborview Realty, LLC,
2014 U.S. Dist. LEXIS 36320 (S.D.N.Y. Mar. 12, 2014) ...................................................10

Halbritter v. Stonehedge Acquisition Rome II, LLC,
2008 U.S. Dist. LEXIS 26042 (S.D.N.Y. Apr. 2, 2008).......................................................12

In re Estate of Camac,
2 Misc.3d 894 (N.Y. Sur. Ct. 2004).................................................................................16

In re Estate of Concetta Ciadiello,
2007 N.Y. Misc. LEXIS 2326 (N.Y. Sur. Ct. 2007).............................................................15

International Audiotext Network, Inc. v. AT&T Co.,
62 F.3d 69 (2d Cir. 1995) ....................................................................................3, 12, 13

Interpharm, Inc. v. Wells Fargo Bank, N.A.,
655 F.3d 136 (2d Cir. 2011).............................................................................................12

Kimco of New York, Inc. v. Devon,
163 A.D.2d 573 (2d Dept. 1990) .......................................................................................16

Lampros v. Banco Do Brasil, S.A.,
2013 U.S. App. LEXIS 22316 (2d Cir. Nov. 4, 2013)..........................................................20

Linardos v. Fortuna,
157 F.3d 945 (2d Cir. 1998)..............................................................................................10

Matter of New York State Urban Development Corp.,
63 A.D.3d 1719 (4th Dept. 2009) .....................................................................................16

McRay v. Citrin,
270 A.D.2d 191 (1st Dept. 2000).......................................................................................15

N.Y. City St. Tree Consortium, Inc. v. Eber-Schmid,
2009 U.S. Dist. LEXIS 12557 (S.D.N.Y. Feb. 18, 2009)................................................10, 12

Oppenheimer & Co. v. Trans Energy Inc.,
946 F.Supp.2d 343 (S.D.N.Y. 2013)................................................................................12, 13

Palazzo ex rel. Delmage v. Corio,
 232 F.3d 38 (2d Cir. 2000)..................................................................................11

Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates,
 50 A.D.2d 226 (1st Dept. 1975)...........................................................................18

Pershall v. Elliott,
 249 N.Y. 183 (1928) ............................................................................................16

Rapoport v. Asia Elecs. Holding Co., Inc.,
 88 F.Supp.2d 179 (S.D.N.Y. 2000) ...............................................................3, 13

Readco. Inc. v. Marine Midland Bank,
 81 F.3d 295 (2d Cir. 1996)...................................................................................20

Rose v Elias,
 177 A.D.2d 415 (1st Dept. 1991)..........................................................................15

Secured Equities Investments, Inc. v. McFarland,
 300 A.D.2d 1137 (4th Dept. 2002) .......................................................................16

Smith v. Local 819 I.B.T. Pension Plan,
 291 F.3d 236 (2d Cir. 2002).................................................................................14

TPR Investment Associates, Inc. v. Pedowitz & Meister LLP,
 2014 U.S. Dist. LEXIS 67116 (S.D.N.Y. May 15, 2014).....................................17

United Resource Recovery Corp. v. Ramko Venture Management, Inc.,
 584 F.Supp.2d 645 (S.D.N.Y. 2008)....................................................................22

Vasquez v. Herald Association Inc.,
 186 A.D.2d 467 (1st Dept. 1992)..........................................................................16

Watson v. United States,
 349 F. App'x 542 (Fed. Cir. 2009) .......................................................................11

Webb v. Kenney,
 234 F.Supp.2d 197 (E.D.N.Y. 2002) ...................................................................13

Wiest v. Breslaw,
 2002 U.S. Dist. LEXIS 4371 (S.D.N.Y. March 15, 2002) ...................................10

## OTHER AUTHORITIES

F.R.C.P. 12(b)(1) ...........................................................................................3, 10, 12

F.R.C.P. 12(b)(6) .............................................................................................12, 13

F.R.C.P. 12(h)(3) .................................................................................................3, 12

## **PRELIMINARY STATEMENT**

On July 22, 2014, the Court dismissed plaintiff Sagi Genger's ("Sagi) original complaint, without prejudice, for lack of subject-matter jurisdiction. See 7/22/14 Order.[1]   On July 24, 2014, Sagi re-filed the same complaint again (with minor changes and an additional claim for "promissory estoppels" tacked on).   Neither the new filing date, nor the new claim for promissory estoppel, saves Sagi's complaint from dismissal; it remains fatally and irreparably flawed for several independent reasons.

*First*, because there is no federal question or diversity here, the Court continues to lack subject-matter jurisdiction over the dispute.   In its 7/22/14 Order, the Court held all the purported facts proffered by Sagi failed to prove, by "clear and convincing evidence," that Sagi was no longer domiciled in New York on February 18, 2014. 7/22/14 Order at 9-11.   This holding remains *res judicata* as to all prior facts proffered by Sagi, and Sagi does not allege any new material facts, much less new material facts sufficient to clearly and convincingly prove Sagi was no longer domiciled in New York as of July 24, 2014.   If Sagi wishes to sue his sister, Orly Genger ("Orly"), it must be in the New York State Courts.   See Argument, Point I.

*Second*, Sagi's claim for breach of a letter dated November 10, 2004 (the "November Document") fails for want of consideration.   In a vain attempt to create consideration where none exists, Sagi contends Orly's purported November 10, 2004 agreement to indemnify Sagi for 50% of any amount he pays their mother, Dalia Genger ("Dalia"), pursuant to his October 30, 2004 written promise to Dalia (the "Sagi Promise Document") is supported by two

---

[1] The Court's 7/22/14 Order is attached as **Exhibit 1** to the Declaration of Bryan D. Leinbach ("Leinbach Decl.") filed contemporaneously herewith.

kinds of consideration: (i) the Orly Trust's (and Sagi Trust's) receipt of certain shares in Trans-Resources, Inc. (the "TRI Shares") as part of the Divorce Stipulation (defined below), and (ii) love, affection, and the end to parental strife. Compl. ¶ 8.  Neither suffices as consideration.  The TRI Shares cannot provide consideration because the the Divorce Stipulation, which fully set out the transfer of the TRI Shares to the Orly and Sagi Genger 1993 Trusts, was signed and became binding on Dalia "IN ALL CIRCUMSTANCES" "as of October 26, 2004," before the Sagi Promise Document or the November Document.   Further, Sagi has spent years successfully contending the TRI Shares were never actually validly transferred to the Trusts.   Accordingly, Sagi is judicially estopped from claiming they were transferred now, for purposes of establishing consideration.  As to love and affection, it is settled that love and affection (especially between a child and a parent) does not constitute consideration as a matter of New York law.  See Argument Point II(A).

  *Third*, under well-settled law, Sagi is barred from seeking indemnification because he failed to provide Orly with notice and an opportunity to defend before paying Dalia. See Argument, Point II(B).

  *Fourth*, a claim for promissory estoppel requires an "unconscionable injury to the relying party as a result of the reliance," Consolidated Energy Design Inc. v. The Princeton Club of New York, 13 Civ. 8747 (KBF), 2014 U.S. Dist. LEXIS 38560, *9 (S.D.N.Y. March 24, 2014).  For over six years, Sagi and Dalia have worked together in a vicious campaign to destroy Orly financially, taking everything they could from Orly in a series of frauds, including every asset Orly was given as part of their parents' divorce.[2]  Under these circumstances, Sagi could

---

[2] A sampling of some (but not all) of the various frauds and efforts to harm Orly concocted by Sagi and Dalia are set forth in Orly's original May 2, 2014 Motion to Dismiss at pp. 1, n.1 and 4-12, with supporting exhibits, and are

not possibly have reasonably relied on Orly's supposed 2004 promise when he paid Dalia in 2014. Nor can Sagi's supposed injury be properly labeled as an "unconscionable" injury. As a result, Sagi's promissory estoppel claim fails as a matter of law. See Argument, Point I((C).

## STATEMENT OF FACTS AND ALLEGATIONS[3]

### THE 12(B)(1) AND 12(H)(3) MOTION

The facts supporting Orly's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3) are set forth in the Court's 7/22/14 Order (Leinbach Decl., Ex. 1) and incorporated herein by reference.

### THE 12(B)(6) MOTION

#### Orly Genger

Defendant Orly, Sagi's younger sister, is an accomplished artist and sculptor. (See www.orlygenger.com, for examples of Orly's works and exhibitions.) In 2004, Orly had little schooling or experience in business or finance. Rather, Orly reposed her trust, confidence and reliance in her older brother, Sagi, who often provided business advice to her.

---

incorporated herein by reference. [See Civ. No. 14-1006 (KBF), Docket No. 10.] For the Court's convenience, a copy of pages 1-12 of Orly's Memorandum of Law is attached as Leinbach Decl., **Exhibit 3**.

[3] Orly takes issue with many of the allegations in Sagi's complaint, and those that are contradicted by documents attached or integral to Sagi's complaint need not be credited by the Court. See International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (complaint "include[s] any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" or any document "integral to the complaint"); Rapoport v. Asia Elecs. Holding Co., Inc., 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000) ("[i]f these documents contradict the allegations of the…complaint, the documents control and this Court need not accept as true the allegations in" the complaint).

**Sagi Genger**

Plaintiff Sagi has an MBA from the Wharton School of Business and is an experienced businessman. He is currently the CEO of TPR Investment Associates, Inc. ("TPR"), a closely held Genger family company founded by Orly and Sagi's father, Arie Genger ("Arie").[4]

**Dalia Genger**

Dalia is Orly and Sagi's mother. Arie and Dalia were married in Israel on July 23, 1967, and remained so until they divorced in New York in October 2004. See Complaint ¶ 8 [Docket No. 1] (courtesy copy attached as Leinbach Decl., **Exhibit 2**).

Dalia is also Trustee of the Orly Genger 1993 Trust (the "Orly Trust"), having been appointed to that position over Orly's objection by former trustee Leah Fang, Sagi's sister-in-law.[5] Dalia has misused her position as Trustee to assist Sagi in the looting of all of the Orly

---

[4] Sagi finds himself effectively limited to private companies because of an action the Securities and Exchange Commission brought against him. Specifically, Sagi served as the Chief Financial Officer, and then Chief Operating Officer, of Lumenis, Ltd., a publicly traded company, from November 1999 to July 2003. On or about April 26, 2006, the Securities and Exchange Commission commenced an action against Sagi, asserting among other things, that Sagi had Lumenis report millions of dollars in false revenue and profits on Lumenis' financial statements and press releases. Also in April 2006, Sagi entered into a Consent Judgment permanently enjoining him and his agents from making materially false statements or omitting material facts in connection the sale of any securities, and barring him from serving as an officer or director of a publicly traded company for five years. See SEC Consent Judgment (Leinbach Decl., **Exhibit 4**).

[5] Orly has been seeking to remove Dalia since her appointment as Trustee. See, e.g., Third Amended Petition, dated September 20, 2011 (Leinbach Decl., **Exhibit 5**). To convince the Court to let her remain as Trustee, Dalia submitted and maintained a false affidavit saying she was treating her children equally, as proved by the fact that, "I have been effectively redeeming my shares" in Genger family company TPR to TPR. See March 11, 2008 Affidavit of Dalia Genger, ¶¶ 4, 10. In fact, in August 2008, Dalia actually assigned all her shares to Sagi, which benefited only Sagi. Dalia never shared this fact with Orly, or with the Surrogate Court who was then deciding her fitness to be Trustee to the Orly Trust based on Dalia's false sworn representations to it of share redemption and equal treatment of her children. Remarkably, Dalia maintained this material lie in sworn interrogatory responses to Orly, dated March 29, 2012, apparently hoping Orly would never discover her key misrepresentation to the Surrogate Court. See Leinbach Decl., **Exhibit 6** (attaching 3/11/08 Affidavit of Dalia Genger; 8/8/08 Assignment and Assumption Agreement; and Dalia Genger Interrogatory Response No. 30, sworn to on 3/29/12).

In her 3/11/08 affidavit, Dalia also asserted (¶ 9) that she was uniquely positioned to protect the Orly Trust by

Trust assets.  Recently, the trial court, as unanimously affirmed by the New York Supreme Court, Appellate Division voided Dalia and Sagi's secret efforts to saddle the Trust with at least $4.4 million in debt (while putting $3.6 million of that money in TPR's pocket), with the debt ostensibly payable to a Sagi friend's recently formed shadowy St. Kitts entity, whose address is a P.O. Box located on a golf course outside the jurisdiction of the New York courts.  See generally Genger v. Genger, 115 A.D.3d 421, 422 (1st Dept. 2014).

### The October 26, 2004 Divorce Stipulation

"In October 2004, Dalia and Arie finalized a stipulation formalizing the terms of their divorce" (the "Divorce Stipulation").  Compl. ¶ 8.  (For the Court's convenience, the Divorce Stipulation (without exhibits) is attached as Leinbach Decl., **Exhibit 7**.)  As a Whereas Clause of the Divorce Stipulation (p. 1) – an "integral part of this Agreement" (p. 2) – states: the Divorce Stipulation was made because "the Wife has commenced the above-captioned action against the Husband seeking a divorce (the "Divorce Action") and the parties desire to resolve and settle all issues in that action…" (emphasis added).

This court-ordered Divorce Stipulation – made "as of October 26, 2004" (pp. 1, 56) – distributed the assets of Dalia and Arie.  See Divorce Stipulation, Article II (Distribution of Assets).  In this regard, the Divorce Stipulation expressly provides for TPR's 52.85% ownership interest in Trans-Resources, Inc. ("TRI") to be transferred (19.43% each) to the Orly and Sagi

---

preventing any forcible enforcement of a note, which would dissipate assets belonging to the Orly Trust.  In actuality, Dalia colluded with Sagi in late 2008 and early 2009, to have the note forcibly collected by TPR in a Feb. 2009 sham UCC sale (without notice to Orly or other interested buyers).  See Genger v. Genger, 2013 N.Y. Misc. LEXIS 2304, *9 (N. Y. Sup. Ct. May 29, 2013) (describing fraudulent UCC sale and denying defendants' motions for summary judgment); see also Dalia Genger Interrogatory Responses Nos. 3, 7, 12, 14 (Leinbach Decl., Ex. 6).

Trusts, with the remainder (13.99%) going to Arie. [6]  See Divorce Stipulation, pp. 12-14 (Art. II (9)). [7]  "Following the foregoing transfers of the TRI Stock, the Wife will have no ownership interest in TRI." Id.

The Divorce Stipulation provides that "HE OR SHE [Arie or Dalia] UNDERSTANDS THAT THIS AGREEMENT WILL BE BINDING ON HIM OR HER IN ALL CIRCUMSTANCES" (p. 56), and "shall be binding and obligatory upon the heirs, personal representatives, administrators, executors and assignees of the parties herein" (p. 51 (emphasis added)) (hereafter, the "Binding Clauses").

The Divorce Stipulation contains an "Entire Understanding Clause" preventing incorporation of side agreements or promises not set forth in the Stipulation itself:

### ENTIRE UNDERSTANDING

> This Agreement contains the entire understanding of the parties who hereby acknowledge that between them there have been and are no representations, warranties, covenants or undertakings (whether written or oral, express or implied) with respect to the subject matter hereof including, without limitation, all rights or claims arising at law, in equity or pursuant to the parties' marital relationship other than those expressly set forth herein or in the transaction contemplated hereby or entered into concurrently herewith.

Divorce Stipulation, p. 53.

In the Divorce Stipulation (Article IX: Mutual Release and Discharge of Claims

---

[6]  The remaining 47.15% was owned by Glenclova Investment Company and TR Investors, LLC, who were controlled by Jules Trump, Eddie Trump, and Mark Hirsch (collectively, the "Trump Group").

[7]  Pursuant to Art. II(9)(c) of the Divorce Stipulation, the transfer of the TRI Shares was approved by an October 26, 2004 TPR Board Resolution (Leinbach Decl., **Exhibit 8**), and the TRI Shares transferred by TPR to the Orly Trust, Sagi Trust, and Arie on October 30, 2004 (see Transfer Agreement (Leinbach Decl., **Exhibit 9**).  Like the Divorce Stipulation, neither the Transfer Resolution nor the Transfer Agreement reference the Sagi Promise Document or the November Document in any way.

and Claims to the Estate) (the "Release Clause"), Dalia broadly released Arie and his heirs:

> 2.  The Wife hereby remises, releases and forever discharges the Husband, the Husband's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, which the [Wife][8], the [Wife]'s heirs, executors, administrators, successors and assigns ever had or now has against the [Husband], for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all "separate property" and all "marital property" as those terms are defined in Section 236(B) of the Domestic Relations Law or arising out of the marital relationship, except for (a) any amounts that may be due pursuant to the audits referred to in Article XII and (b) any cause of action for Divorce, Annulment or Separation and any defenses thereto.

Divorce Stipulation, p. 34.

The Sagi Promise Document and the November Document are not identified or referenced anywhere in the Divorce Stipulation as part of the Divorce Stipulation, nor is either document attached to it.  Sagi nowhere avers in his Complaint that the divorce court was shown or apprised of the Sagi Promise Document or November Document, or that those documents comprised any part of the divorce court's decision to grant a divorce decree.

## The October 30, 2004 Sagi Promise Document

The Sagi Promise Document, a copy of which is attached as Exhibit A to the Complaint, is dated October 30, 2004 – four days after the Divorce Stipulation.  It is on Sagi Genger letterhead, and is signed by Sagi and Dalia only.  There is no signature line for Orly.

---

[8] In an obvious scrivener's error, the words "Husband" and "Wife" were mistakenly swapped three times in this paragraph IX(2) of the Divorce Stipulation. This error has been corrected in this memorandum and the corrected words marked by [brackets].

Orly is not cc'd on the Sagi Promise Document.   The promise to pay is exclusively Sagi's:

> Dear Mom:
>
> This letter confirms <u>our understanding with respect to certain payments that I am prepared to make to you</u> in consideration of the following.  My sister Orly and I are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for our benefit.  In reliance on this letter and in consideration of the trust's receipt of these shares and other consideration, you are giving up valuable marital rights, and you desire further assurance that you will have sufficient funds to support your lifestyle.
>
> If you, in your sole and absolute discretion, from time to time desire funds to support your lifestyle, <u>you may request in writing that I make payment to you</u> as provided in this letter.  Promptly upon receipt of this request, <u>I will pay to you</u> (1) an amount equal to all dividends, distributions, proceeds or other payments attributable to 794.40 shares of TRI (adjusted for any splits or similar action) that have previously been paid to Orly, me or any trust for the benefit of either of us, less any amounts previously paid to you pursuant to this letter, or (2) any lesser amount indicated in your request.
>
> We intend for this letter to be a binding agreement under New York law.  Please confirm that this letter correctly reflects your understanding by signing below.
>
> > Sincerely,
> >
> > Sagi Genger

Sagi Promise Document (Compl., Ex. A) (emphases added); <u>accord</u> Compl. ¶ 9 ("pursuant to a co-signed letter dated October 30, 2004 … Plaintiff agreed to pay Dalia").

## **The November Document**

The November Document, a copy of which is attached as Exhibit B to the Complaint, is dated November 10, 2004 – fifteen days after the Divorce Stipulation.  It is on Sagi Genger letterhead and signed by Sagi.  <u>Id.</u>  It is "AGREED TO AND ACCEPTED THIS __ DAY OF NOVEMBER, 2004" by Orly.  It states:

Dear Orly:

In connection with the attached letter (the "Promise") from me to our mother, Dalia Genger, dated October 30, 2004, you agree to indemnify, defend, and hold me harmless, for and against one-half(1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations (each a "Claim"), including my reasonable counsel and other professional fees, expenses and costs, which arise from my understanding in the Promise.

I will notify you promptly of any Claims.

Very truly yours,

Sagi Genger

November Document (Compl., Ex. B) (emphases added); accord Compl. ¶ 9 (referring to "[Plaintiff's] undertakings in the [Oct. 30, 2004 Promise]").

The November Document further confirms that the promise to pay in the Sagi Promise Document is exclusively Sagi's. There is no mention of any consideration to Orly for her acceptance of the indemnity obligation set forth in the November Document. In that regard, by November 10, 2004, the Divorce Stipulation had been signed by Arie and Dalia, and the TRI Shares transferred to the Orly and Sagi Trusts, as agreed to in the Divorce Stipulation. See Divorce Stipulation and Transfer Documents (Leinbach Decl., Exs. 7-9).

**Dalia's Demand and the Instant Lawsuit**

"On or about January 22, 2014, Dalia demanded $200,000 from [Sagi] under the October 30, 2004 Promise." Compl. ¶ 10. "In response to Dalia's demand, [Sagi] paid Dalia $200,000." Id. ¶ 11.

On February 17, 2014, Sagi demanded $100,000 from Orly "under the November 10, 2004 Indemnity." Compl. ¶ 12. One day later, on February 18, 2014, Sagi commenced a

lawsuit for breach of contract.  7/22/14 Order at 2 (Leinbach Decl., Ex. 1).

On July 22, 2014, that lawsuit was dismissed for lack of subject matter jurisdiction.  7/22/14 Order at 13 (Leinbach Decl., Ex. 1).  Two days later, Sagi filed a near identical complaint for breach of contract   (Compl., ¶¶ 15-27) and promissory estoppels (id., ¶¶ 28-32).

While Sagi promised to notify Orly "promptly of any Claims" (November Document at 1), Sagi nowhere avers in his Complaint that he notified Orly before he paid Dalia.

## ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED A SECOND TIME UNDER F.R.C.P. 12(B)(1) AND 12(H)(3) BECAUSE SAGI STILL FAILS TO MEET HIS HEAVY BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THAT HE IS NO LONGER A NEW YORK DOMOCILIARY**

It is "hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." Linardos v. Fortuna, 157 F.3d 945, 947-948 (2d Cir. 1998); Wiest v. Breslaw, 01 Civ. 5663 (LMM), 2002 U.S. Dist. LEXIS 4371, *6 (S.D.N.Y. March 15, 2002); N.Y. City St. Tree Consortium, Inc. v. Eber-Schmid, 07-CV-0348 (BSJ), 2009 U.S. Dist. LEXIS 12557, *7 (S.D.N.Y. Feb. 18, 2009).   In assessing whether Sagi has met his evidentiary burden, Sagi is not entitled to any favorable inferences from the pleadings; jurisdiction must be shown affirmatively. Hai Yang Liu v. 88 Harborview Realty, LLC, 11 Civ. 1033 (AT), 2014 U.S. Dist. LEXIS 36320, *6 (S.D.N.Y. Mar. 12, 2014), citing APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).  In this regard, "Sagi has the burden to prove by clear and convincing evidence that he changed his domicile from New York to Connecticut before this action commenced" on July 24, 2014.  7/22/14 Order at 9.

The Court already has dismissed the near-identical complaint once, holding that "Sagi has failed to prove by clear and convincing evidence both that by February 18, 2014 Connecticut had become his 'true fixed home' and that he no longer had an 'intention of returning' to New York." 7/22/14 Order (citing Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000)).  While that dismissal was without prejudice and does not preclude re-filing the case in state court (7/22/14 Order at 13 n.3), *res judicata* compels dismissal of the instant complaint in this Court.

A "finding of lack of subject matter jurisdiction is *res judicata* as to that particular issue in subsequent actions between the parties." George v. Storage Am. & Ebay, Inc., 134 Civ. 9226 (LAK), 2014 U.S. Dist. LEXIS 53764 (S.D.N.Y. Mar. 6, 2014) (quoting Barclay's Ice Cream Co. v. Local No. 757 of Ice Cream Drivers & Employers Union, No. 79 Civ. 1611, 1979 U.S. Dist. LEXIS 9964 (S.D.N.Y. Sept. 7, 1979)).  Thus, all the facts Sagi previously used to try to prove diversity – e.g., "(1) his leases of properties in Connecticut; (2) his use of a Connecticut address for his business; (3) his membership in Chabad of Greenwhich; (4) his children's attendance at a school in Connecticut; [(5)] his Connecticut Driver's license and vehicle registration" (7/22/14 Order at 9-10) – have been legally determined to be insufficient.  See George, 2014 U.S. Dist. LEXIS 53764, at *11, citing Watson v. United States, 349 F. App'x 542, 544-45 (Fed. Cir. 2009) (holding that *res judicata* barred new action where prior action was dismissed for lack of subject matter jurisdiction, and plaintiff filed new complaint alleging jurisdiction under same statute, raised identical claims against same parties as prior action, and failed to provide additional facts to cure jurisdictional defects).

Here, Sagi includes no additional facts supporting diversity jurisdiction in his operative Complaint.  Similarly, Sagi still has not complied with Rule 6(c) of this Court's

Individual Rules of Practice requiring that Sagi "submit to the Court a letter not exceeding two (2) single-spaced pages (exclusive of letterhead and signature block(s)) explaining the basis of [Sagi's] belief that diversity jurisdiction exists."  Under these circumstances, Sagi's "presumptive domicile" of New York continues to prevail, and the instant action must again be dismissed for lack of subject matter jurisdiction.  See F.R.C.P. 12(b)(1); F.R.C.P. 12(h)(3); N.Y. City St. Tree Consortium, Inc. v. Eber-Schmid, 07-CV-0348 (BSJ), 2009 U.S. Dist. LEXIS 12557, *9-10 (S.D.N.Y. Feb. 18, 2009) (dismissing action for lack of diversity jurisdiction because plaintiff TNY had failed to show by clear and convincing evidence that defendants had effected a change of domicile from New York to New Jersey); Halbritter v. Stonehedge Acquisition Rome II, LLC, No. 07 Civ. 43848 (WHP), 2008 U.S. Dist. LEXIS 26042, *9 (S.D.N.Y. Apr. 2, 2008) (granting motion to dismiss; "[b]ecause there is conflicting evidence supporting domicile in New York and Florida, [plaintiff] Halbritter has not provided clear and convincing evidence that she changed her domicile from New York to Florida.  Thus, her presumptive domicile is New York.").

## II.  IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE UNDER F.R.C.P. 12(B)(6) FOR THE MANY INDEPENDENT REASONS SET FORTH BELOW

In deciding a 12(b)(6) motion to dismiss, a complaint "include[s] any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" or any document "integral to the complaint." International Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995); Oppenheimer & Co. v. Trans Energy Inc., 946 F.Supp.2d 343, 348 (S.D.N.Y. 2013) ("where, as here, certain contracts are integral to the complaint, a court may consider those documents when assessing the merits of the motion to dismiss") (citing Interpharm, Inc. v. Wells Fargo Bank, N.A., 655 F.3d 136, 141 (2d Cir. 2011)).

"If these documents contradict the allegations of the … complaint, the documents control and this Court need not accept as true the allegations in" the complaint. Rapoport v. Asia Elecs. Holding Co., 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000); Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., 05 Civ. 8510, 2007 U.S. Dist. LEXIS 11346, *11 (S.D.N.Y. Feb. 8, 2007) (same); Oppenheimer, 946 F.Supp.2d at 351 (dismissing breach of contract claim contradicted by contract); Webb v. Kenney, 234 F.Supp.2d 197, 201-02 (E.D.N.Y. 2002) (dismissing due process claim contradicted by agreement); Doherty v. American Home Prods. Corp., No. 97 Civ. 1211, 1999 U.S. Dist. LEXIS 16101, *15-16 (D. Conn. Oct. 15, 1999) (refusing to vacate prior dismissal of claims where "plaintiffs' claims are directly contradicted by the very documents -- the stock option Agreements and Plans -- upon which they purport to rely."); accord International Audiotext, 62 F.3d at 72 (a court is "not constrained to accept the allegations of the complaint in respect of the construction of the Agreement").

Here, Sagi's Promise Document, the November Document, and the Divorce Stipulation put the lie to many of Sagi's pled allegations and demonstrate Sagi "can prove no set of facts in support of his claim which would entitle him to relief." Anderson v. County of Nassau, 297 F.Supp.2d 540, 544 (E.D.N.Y. 2004); Haggerty v. United Mining Corp., 84 Civ. 7671, 1992 U.S. Dist. LEXIS 13018, *12 (S.D.N.Y. Aug. 31, 1992). Thus, Orly's motion to dismiss under F.R.C.P. 12(b)(6) should be granted.

### A.   The Complaint Should Be Dismissed With Prejudice Because The November Document Lacks Consideration

Sagi's breach of contract action fails because neither the November Document nor the Sagi Promise Document are enforceable contracts. "All contracts must be supported by consideration." Beitner v. Becker, 34 A.D.3d 406, 407 (2d Dept. 2006). Here, there is no valid

consideration for either of the two documents upon which Sagi relies.

The November Document identifies no consideration for Orly's purported agreement to indemnify and defend.  See November Document (Compl., Ex. B).  Sagi attempts to paper over this fatal flaw by contending in his complaint that Orly received two kinds of consideration: (i) Orly's "receipt of those [TRI] shares; and (ii) unnamed "other valuable consideration."  Compl. ¶ 8.[9]  Sagi's attempt to create consideration where no consideration exists fails.

*First*, the November Document is between Sagi and Orly.  Sagi had neither the power nor ability to provide to Orly any of the purported consideration which he contends supports the November Document.

*Second*, by November 10, 2004, the Divorce Stipulation already had been signed "as of October 26, 2004," and the allotted amount of TRI Shares transferred to the Orly Trust.  In this regard, the Divorce Stipulation fully set out the transfer of the TRI Shares to the Orly and Sagi Trusts, including the fact that "following the foregoing transfers of the TRI Stock, [Dalia] will have no ownership interest in TRI."  Divorce Stipulation, Art. II(9).  Moreover, in entering into the Divorce Stipulation, Dalia expressly agreed that "SHE UNDERSTANDS THAT THIS

---

[9] Sagi's original complaint used the phrase: "other valuable consideration, most particularly their strong desire to bring an end to their parent's bitter divorce case."  This description of the "other consideration" is now removed, in likely recognition of the fact that (i) love and affection are not consideration as a matter of New York law, and (ii) the divorce case ended with the August 26, 2004 Divorce Stipulation.  See discussion, *supra*.  Making his Complaint deliberately opaque and obscure, however, does not save Sagi's complaint.  Rather, this deliberate lack of specificity further supports dismissal of Sagi's Complaint.  See Consolidated Energy Design Inc. v. The Princeton Club of New York, 13 Civ. 8747 (KBF), 2014 U.S. Dist. LEXIS 38560, *9 (S.D.N.Y. March 24, 2014) ("'Conclusory allegations or legal conclusions masquerading as factual conclusions,' as here, do not 'suffice to prevent a motion to dismiss.")  (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (in judging sufficiency of complaint, a court does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action").

AGREEMENT WILL BE BINDING ON … HER IN ALL CIRCUMSTANCES." Id. at p. 56.
Given all this, and the "Entire Agreement Clause" and the "Release Clause" in the Divorce
Stipulation, transfer of the TRI Shares to the Orly Trust, which had already occurred and was
already binding on Dalia (and Arie) "IN ALL CIRCUMSTANCES," could not be consideration
for Orly's purported acceptance of an indemnification obligation on November 10, 2004.

Third, any purported "strong desire to bring an end to their parents' very bitter
divorce case" or other familial desires or motivations are not valid consideration.  The Divorce
Stipulation – the document that actually "resolve[d] and settle[d] all issues in that [divorce]
action" (Divorce Stipulation at p. 1) – already had been signed by Arie and Dalia, and was
binding upon them.  Id. at p. 56.  It was this Divorce Stipulation that (i) constituted the "Entire
Agreement" ending the divorce action, (ii) received the Court's approval, and (iii) led to the end
of the parents' divorce case.

Fourth, Sagi and Orly's supposed desire to see the divorce case end, like their
purported desire to support Dalia in her lifestyle, are simply manifestations of the love children
have for their parents.  Love and affection, however, is not consideration as a matter of New
York law.  "Services that are usually rendered by family members…out of love and affection, or
without expectation of compensation, are presumed to have been rendered gratuitously and do
not constitute consideration…unless the presumption is overcome by convincing proof... to pay
for specified services that were performed in exchange for the promise."  In re Estate of Concetta
Ciadiello, 2007 N.Y. Misc. LEXIS 2326, *6 (N.Y. Sur. Ct. 2007); McRay v. Citrin, 270 A.D.2d
191, 191 (1st Dept. 2000) (where "[t]he sole consideration given to support defendant's promise
to pay plaintiff a yearly sum of money [was] plaintiff's promise of 'love and affection'" this "did
not suffice as a predicate for enforcement of the executory agreement."); Rose v Elias, 177

15

A.D.2d 415, 416 (1st Dept. 1991) (affirming trial court's ruling that love and affection are insufficient consideration); In re Estate of Camac, 2 Misc.3d 894, 898 (N.Y. Sur. Ct. 2004) ("'[l]ove and affection' (especially between a child and a parent) do not constitute consideration" (citation omitted)); see also Pershall v. Elliott, 249 N.Y. 183, 188 (1928) ("[a] previous moral obligation is insufficient as a consideration to support an action to enforce an executory contract") (citation omitted).

       *Fifth*, it is well-settled that, the doctrines of judicial estoppel and estoppel against inconsistent positions, ""precludes a party from framing his pleadings in a manner inconsistent with a position taken in a prior judicial proceeding." Kimco of New York, Inc. v. Devon, 163 A.D.2d 573, 574 (2d Dept. 1990) (barring defendant under the doctrine of inconsistent positions from claiming that an option contract was invalid after petitioning the Surrogate's Court to allow defendant to buy property by exercising the option in a prior proceeding). See also General Electric Co. v. Inter-America Marketing Systems, Inc., 220 A.D.2d 307 (1st Dept. 1995) ("The IAS Court properly invoked the doctrine of judicial estoppel to preclude those counterclaims...since defendant successfully advanced the diametrically opposite position at the trial of plaintiff's claims."); Vasquez v. Herald Association Inc., 186 A.D.2d 467, 469 (1st Dept. 1992) ("the IAS court correctly estopped [the party from taking a position that] was diametrically opposite to that taken in earlier litigation."); Matter of New York State Urban Development Corp., 63 A.D.3d 1719 (4th Dept. 2009) (under the doctrine of estoppel against inconsistent positions the attorney representing respondents "will not now be heard to argue an inconsistent position"); Secured Equities Investments, Inc. v. McFarland, 300 A.D.2d 1137, 1139 (4th Dept. 2002) (same).

       Sagi's claim that Orly has received "shares of TRI" in connection with the

divorce directly contradicts Sagi's and Dalia's successful claims in other courts (Delaware Chancery Court, New York Supreme Court, and this Court) that the TRI Shares are not, and have never been, an actual asset of the Orly Trust.  Thus:

-- Sagi and Dalia entered into an August 30, 2013 Stipulation and Order of Dismissal (the "Delaware Stipulation"), agreeing that the October 2004 TRI transfers were "void and the stock reverted to TPR" and that TPR properly sold the TRI Stock to the Trump Group in August 2008 as those October 2004 transfers were "void." See Delaware Stipulation at ¶¶ 1, 2 (Leinbach Decl., **Exhibit 10**); August 2008 Side Letter Agreement (Leinbach Decl., **Exhibit 11**).

-- On May 15, 2014, at TPR's urging, this Court (Keenan, J.) ordered that "[Escrow Agent] is directed to release the Proceeds [of TPR's sale of the Orly Trust TRI Shares], together with any interest accrued thereon, to TPR." TPR Investment Associates, Inc. v. Pedowitz & Meister LLP, Civ. Action No. 14-8243 (JFK), 2014 U.S. Dist. LEXIS 67116, *23 (S.D.N.Y. May 15, 2014).[10]   Notably, Dalia (as the supposed Trustee of the Orly Trust) urged this Court (Keenan, J.) to direct the proceeds from the sale of the Orly Trust TRI shares to TPR. See Hearing Tr. at 13 ( Leinbach Decl., **Exhibit 12**) (Dalia Counsel: "We [Dalia] don't object if this Court would direct that the escrow[ed millions] be given to TPR.").

-- On July 24, 2014, TPR and Sagi successfully convinced the Appellate Division First Department to dismiss various claims brought against them by the Orly Trust, because "any damage that the Orly Trust incurred was the result of Arie's invalid transfer of the TRI stock." Genger v. Genger, Index No. 651089/10 (1st Dept. July 24, 2014) (Leinbach Decl., **Exhibit 13**).[11]

---

[10] Notably, in ordering the Proceeds released, Judge Keenan emphasized his decision and order was in no way determining any of Orly's state law claims:

> It must emphasized, however, that neither my 2012 Omnibus Opinion nor today's decision announce any kind of equitable or normative conclusion as to who among the Genger siblings ultimately deserves recompense.  That is a different question, one that was left to the state courts to sort out.  See Glenclova Inv. Co. v. Trans-Resources, Inc., No. 08 Civ. 7140, 2013 WL 6003512, at *3 (S.D.N.Y. Nov. 12, 2013).  Thus, nothing in this Opinion should be construed as resolving any question other than whether TPR is the next (but not necessarily last) beneficiary of the sale of the Orly Trust Shares.  (Id., 2014 U.S. Dist. LEXIS 67116, at *17.)

[11] Orly has filed a motion to reargue this decision, and sought leave to appeal to the Court of Appeals.

17

Having successfully urged the various courts to treat the October 2004 transfer of TRI stock to the Orly Trust as void *ab initio,* Sagi (and Dalia) are now prevented under the doctrines of judicial estoppel and estoppel against inconsistent positions from properly contending those transfers constitute consideration here.

For each of these reasons, the November Document is unenforceable by Sagi, and the Court should grant Orly's motion to dismiss.

**B.**      **The Complaint Should Be Dismissed With Prejudice Because Sagi Failed To Notify Orly Of Dalia's Claim, And Give Orly A Chance To Defend Prior To Payment, And There Are Valid Defenses To Dalia's Claim To Payment**

Under New York law, an indemnitor cannot seek reimbursement from an indemnitee unless the indemnitor first notifies the indemnity of a potentially covered claim and gives it an opportunity to defend. See Chase Manhattan Bank v. 264 Water St. Assocs., 222 A.D.2d 229, 231 (1st Dept. 1995) (one who "fails to notify an indemnitor about an impending settlement proceeds at his own risk"); Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975), aff'd on other grounds, 41 N.Y.2d 1045 (1977). "[I]t is well established under New York law that, where an indemnitor does not receive notice of an action settled by the indemnitee, 'in order to recover reimbursement [for the settlement], [the indemnitee] must establish that [it] would have been liable and that there was no good defense to the liability.'" Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 74 A.D.3d 32, 39 (1st Dept. 2010) (citation omitted).[12]

---

[12] Notably, even if an indemnity agreement does not contain a notice provision, "the implied covenant of good faith warrants reading into the contractual procedure a requirement that notice be given within a reasonable time so as to afford a meaningful opportunity of participation." Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975).

Here, the November Document specifically states that "I [Sagi] will notify you [Orly] promptly of any Claims." November Document at 1. Moreover, it gives Orly an express right to defend. Id. Despite this, Sagi admits in his Complaint that he only demanded that $100,000 from Orly on February 17, 2014, which was after Sagi paid Dalia $200,000 in response to Dalia's demand. See Complaint ¶¶ 11-13. Sagi's failure to provide Orly with timely notice prevented Orly from raising at least two valid defenses to the Promise Document's enforceability, resulting in waiver of Sagi's indemnification claim as a matter of law. See Ballard v. Parkstone Energy, LLC, 664 F.Supp.2d 325, 330-31 (S.D.N.Y. 2009) (holding that late notice resulted in waiver of buyer's indemnification claims).

*First*, Sagi was not required to pay Dalia under the Sagi Promise Document because that document fails for lack of consideration for the same reasons as the November Document. See Argument, Point II. In this regard, nothing in the Divorce Stipulation premises Dalia's execution of it on the Sagi Promise Document. To the contrary, Dalia bound herself and her heirs to the Divorce Stipulation "IN ALL CIRCUMSTANCES." See Binding Clauses to Divorce Stipulation, pp. 51, 56. The Divorce Stipulation also contains an "Entire Understanding" provision (p. 53) that prevents Dalia or Sagi from properly claiming the Sagi Promise Document was a material part of, or precondition to, the Divorce Stipulation.

*Second*, the Sagi Promise Document cannot be enforced by Dalia because she released all claims against Sagi in the Divorce Stipulation. The Release Clause includes a release of Arie heirs, which includes Sagi. See Release Clause (Divorce Stipulation at p. 34). Nothing in the Divorce Stipulation carves the Sagi Promise Document from that Release Clause. See id.

19

For each of these two reasons, the Sagi Promise Document is not an enforceable contract.  As a result, under well-settled law, Sagi is barred from seeking indemnification, because he failed to provide Orly with notice and an opportunity to defend before paying Dalia. See, e.g., 264 Water St. Assocs., supra; Tri-Links Inv. Trust, supra.

### C.   The Complaint Should Be Dismissed With Prejudice Because It Does Not State, And Could Never Properly State, A Claim For Promissory Estoppel

Recognizing his breach of contract claim cannot survive dismissal, Sagi has added a promissory estoppel claim.  Compl. ¶¶ 28-32.  This claim, however, is also irreparably flawed as a matter of law and should be dismissed.

"To make out a claim for promissory estoppels, a plaintiff must prove (1) a clear and unambiguous promise, (2) reasonable and forseeable reliance by the promisee; and (3) unconscionable injury to the relying party as a result of the reliance."  Princeton Club of New York, 2014 U.S. Dist. LEXIS 38560, at *9 (quoting Readco. Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996));  Lampros v. Banco Do Brasil, S.A., 2013 U.S. App. LEXIS 22316, *3 (2d Cir. Nov. 4, 2013) (promissory estoppel claim fails in the absence of reasonable reliance).  Here, Sagi cannot establish that he reasonably and foreseeably relied upon Orly's alleged promise, or that he suffered an unconscionable injury, in paying Dalia.

Neither Sagi nor Dalia can reasonably rely on a 2004 promise based on the purported transfer of TRI shares to the Orly Trust, when Sagi and Dalia have been claiming for years (2008-2014) that those shares really belong to Sagi's corporate alter ego TPR, not the Orly Trust.  Sagi has claimed for years (both individually and through TPR) that TPR's transfer of the TRI stock to the Orly Trust is a nullity.  As just one example:

> In her May 31 Order, Justice Jaffe writes that: "TPR's assertion of ownership interest in the TRI shares and the escrowed $10.3 million cannot be reconciled with its acknowledgment that 'Orly is the main beneficiary.'" (R. 25).   There appears to be some confusion.   What TPR acknowledged is that Orly is the main beneficiary <u>of the Orly Trust</u>, not that she is the main beneficiary of the $10.3 million of sales proceeds for the TRI Shares at issue. <u>Those sales proceed belong to the owner of the TRI Shares, which the Delaware Chancery Court has ruled to be TPR.</u>

Excerpt of TPR/Sagi Appellate Br. at 14, n.7 (emphases added) (Leinbach Decl., **Exhibit 14**).

Similarly, there can be no reasonable reliance on the November Document when Sagi and Dalia's efforts to take the Orly Trust TRI Shares from Orly and her Orly Trust are just one of Sagi and Dalia's many schemes to pauperize Orly.  Since 2008, Dalia and Sagi, working together and separately, have, among other things, (i) seized the Orly Trust's TRI assets; (ii) seized the Orly Trust's TPR assets; (iii) violated two protective injunctions in trying to send at least $4.4 million of Orly Trust assets to a shadowy St. Kitts entity; (iv) fraudulently claimed ownership of the apartment Orly lived in and another apartment held in trust for Orly; and (v) defrauded Orly of her half of valuable Canadian real estate property.  See, e.g., Sampling of Frauds (Leinbach Decl., Ex. 3).  Given this history, it is untenable that Sagi could claim any reliance on the November Document when he paid Dalia.  Indeed, this lawsuit is nothing more than Sagi and Dalia's latest attack upon Orly – which they hope to culminate in a future demand that Orly pay Sagi $6.5 million in purported indemnification.

Clinching the matter, there can be no reasonable reliance where, as here, Sagi was already well-informed <u>before he paid Dalia</u> that Orly considered the November Document, and any indemnity promise by her, to be invalid and unenforceable.  (See Harris Decl. ¶ 5) (Leinbach Decl., **Exhibit 15**).

Finally, any injury to Sagi is not unconscionable as a matter of law.  See Fishoff v. Coty, Inc., 676 F.Supp.2d 209, 220 (S.D.N.Y. 2009) ("Unconscionable injury, however, requires something beyond 'the expectation damages which flow naturally from the non-performance of the alleged agreement.'") (quoting United Resource Recovery Corp. v. Ramko Venture Management, Inc., 584 F.Supp.2d 645, 658 (S.D.N.Y. 2008); Princeton Club of New York, 2014 U.S. Dist. Lexis 38560, at *9.

For each of these reasons, Sagi's newly-pled promissory estoppel claim is meritless, and cannot save the instant complaint from dismissal.

## CONCLUSION

For the foregoing reasons, the Court should (i) dismiss the complaint again for lack of subject matter jurisdiction; or (ii) in the alternative, dismiss the case with prejudice for failure to state a claim; and (iii) grant Orly such other and further relief as the Court deems just and proper.

Dated:   New York, New York
August 27, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
Yoav M. Griver
Bryan D. Leinbach
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
*Attorneys for defendant Orly Genger*

22