UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SAGI GENGER,<br><br>                                      Plaintiff,<br><br>                  - against -<br><br>ORLY GENGER,<br><br>                                      Defendant. | Civ. No.: 14-5683 (KBF) |

**DEFENDANT ORLY GENGER'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT FOR LACK OF
SUBJECT MATTER JURISDICTION, FOR LACK OF CONSIDERATION,
AND FOR OTHER REASONS**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

ARGUMENT

I.      SAGI'S AGAIN FAILS HIS HEAVY BURDEN OF REBUTTING,
        BY CLEAR AND CONVINCING EVIDENCE, THE LEGAL
        PRESUMPTION THAT HE REMAINS DOMICILED IN NEW
        YORK.  ACCORDINGLY, THIS ACTION BELONGS IN NEW
        YORK STATE COURT .......................................................................... 1

II.     THE BREACH OF CONTRACT CLAIM STILL FAILS BECAUSE
        THE NOVEMBER DOCUMENT IS NOT SUPPORTED BY
        CONSIDERATION .............................................................................. 4

        A.     The Divorce Stipulation and November Document are not
               "Integrated" .......................................................................... 5

        B.     Sagi Cannot Save His Complaint By Alleging A Prior Oral
               Agreement ............................................................................. 6

        C.     Orly's 2013 Settlement Is Not Consideration For The 2004
               November Document ................................................................. 7

III.    SAGI CANNOT ENFORCE THE PROMISE DOCUMENT,
        BECAUSE SAGI FAILED TO GIVE ORLY A CHANCE TO
        DEFEND PRIOR TO PAYMENT AND THERE ARE VALID
        DEFENSES TO DALIA'S CLAIM TO PAYMENT ................................ 8

IV.     SAGI'S ESTOPPEL CLAIM FAILS BECAUSE SAGI CANNOT
        PROPERLY PLEAD FACTS SHOWING OBJECTIVELY
        REASONABLE RELIANCE .................................................................. 10

CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Beitner v. Becker,
34 A.D.3d 406 (2d Dept. 2006) ........................................................................4

Big East Entertainment, Inc. v. Zomba Enterprises, Inc.,
453 F. Supp.2d 788 (S.D.N.Y. 2006) ...............................................................6

Bogosian v. All-Am. Concessions,
06-CV-1633 (RRM)(RML), 2011 U.S. Dist. LEXIS 109082
(E.D.N.Y. Sept. 26, 2011) ................................................................................3

Braddock v. Braddock,
60 A.D.3d 84 (1st Dept. 2009) ......................................................................10

Briarwood Farms, Inc. v. Toll Bros., Inc.,
2011 U.S. App. LEXIS 25595 (2d. Cir. Dec. 22, 2011)...................................9

BWA Corp. v. Alltrans Exp. U.S.A., Inc.,
112 A.D.2d 850 (1st Dept. 1985) .....................................................................6

Chase Manhattan Bank v. 264 Water St. Assocs.,
222 A.D.2d 229 (1st Dept. 1995) .....................................................................8

Commander Oil Corp. v. Advance Food Service Equip.,
991 F.2d 49 (2d Cir. 1993) ..............................................................................6

Commodities Futures Trading Comm'n v. Walsh,
17 N.Y.3d 162 (2011)......................................................................................5

Commodities Futures Trading Comm'n v. Walsh,
2014 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 28, 2014)................................5

Consolidated Energy Design Inc. v. The Princeton Club of New York,
2014 U.S. Dist. LEXIS 38560 (S.D.N.Y. March 24, 2014).............................10

Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust,
74 A.D.3d 32 (1st Dept. 2010) ......................................................................8, 9

DiFolco v. MSNBC Cable L.L.C.,
622 F.3d 104 (2d Cir. 2010) ............................................................................9

Durst v. Seeglar,
04 Civ. 6981, 2005 U.S. Dist. LEXIS 32017 (S.D. N.Y. Dec. 7, 2005) ...............3, 4

Halbritter v. Stonehedge Acquisition Rome II, LLC,
    No. 07 Civ. 43848 (WHP), 2008 U.S. Dist. LEXIS 26042
    (S.D.N.Y. Apr. 2, 2008) ........................................................................................ 2, 4

Kleinberg v. Radian Group, Inc.,
    2002 U.S. Dist. LEXIS 20595 (S.D.N.Y. Oct. 29, 2002) ....................................... 10

Kleiner v. Blum,
    03 Civ. 3846, 2003 U.S. Dist. LEXIS 17081 (S.D.N.Y. Sept. 30, 2003) ............. 2, 4

Mississippi Band of Choctaw Indians v. Holyfield,
    490 U.S. 30 (1989) ..................................................................................................... 1

N.Y. City St. Tree Consortium, Inc. v. Eber-Schmid,
    07-CV-0348 (BSJ), 2009 U.S. Dist. LEXIS 12557
    (S.D.N.Y. Feb. 18, 2009) ......................................................................................... 1, 2

Smoothline Ltd. v. N. Am. Foreign Trading Corp.,
    No. 00-CV-2798 (DLC), 2003 U.S. Dist. LEXIS 3085
    (S.D.N.Y. Mar. 7, 2003) .............................................................................................. 3

Wiest v. Breslaw,
    01 Civ. 5663 (LMM), 2002 U.S. Dist. LEXIS 4371
    (S.D.N.Y. March 15, 2002) .......................................................................................... 1

**OTHER AUTHORITIES**

Black's Law Dictionary 616 (7th ed. 2000) ................................................................. 9

Orly Genger's moving papers, and Sagi Genger's ("Sagi") opposition, amply confirm that Sagi's Complaint should be dismissed for several independent reasons.

**I.     SAGI'S AGAIN FAILS HIS HEAVY BURDEN OF REBUTTING, BY CLEAR AND CONVINCING EVIDENCE, THE LEGAL PRESUMPTION THAT HE REMAINS DOMICILED IN NEW YORK.   ACCORDINGLY, THIS ACTION BELONGS IN NEW YORK STATE COURT**

On July 22, 2014, this Court painstakingly explained why the evidence Sagi again presents here – "(1) his leases of properties in Connecticut; (2) his use of a Connecticut address for his business; (3) his membership in Chabad of Greenwich; (4) his children's attendance at a school in Connecticut; (4) his Connecticut driver's license and vehicle registration" (7/22 Order at 9-10) – does not invoke this Court's carefully limited jurisdiction.  7/22 Order at 8-11.  Sagi's instant opposition resubmits this prior, insufficient evidence, along with a few minor additions,[1] and continues to improperly conflate residence and domicile.  See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47-49 (1989) ("Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another."); Wiest v. Breslaw, 01 Civ. 5663 (LMM), 2002 U.S. Dist. LEXIS 4371, *5-6 (S.D.N.Y. March 15, 2002) (same).

Sagi's long-term domicile in New York is presumed to continue.  He cannot overcome that presumption "simply [by] coming forward with some evidence of [the] change [of domicile]." Wiest, 2002 U.S. Dist. LEXIS 4371, at *7.  Where conflicting evidence exists, or the record arguably supports two potential domiciles, "the presumptive domicile prevails."  N.Y.

---

[1] These minor additions (Supplemental Declaration of Sagi Genger and attached exhibits) show: (i) Sagi continues to see his New York doctor, albeit in Harrison N.Y.; (ii) his children saw a Connecticut dentist in September, six weeks after the filing of the instant complaint; (iii) Elana Genger (but not Sagi) is now receiving electric and TV/Internet bills in Connecticut; and (iv) a chess teacher has seen Sagi in Connecticut.  Sagi provides no documentary evidence supporting his naked assertions that "he has not stayed overnight in New York, even in a hotel, for nearly a year" (leaving open the strong possibility that he frequents New York and has many remaining business and non-business ties there) and that he is "registered to vote in Connecticut."  Sagi Suppl. Decl. ¶¶ 2, 3. To the contrary, as discussed below, Sagi refuses to provide or produce evidence of his New York activity, his wife's voter registration, and many other facts relevant to his clear and convincing burden burden of proof.

City St. Tree Consortium, Inc. v. Eber-Schmid, 07-CV-0348 (BSJ), 2009 U.S. Dist. LEXIS 12557, *9-10 (S.D.N.Y. Feb. 18, 2009).

The objective evidence adduced by Sagi continues to be "nearly identical" (7/22 Order at 10) to the evidence found insufficient in Eber Schmid. In that case, defendants moved to New Jersey from New York, listed a New Jersey address on their business and financial documents, were members of a New Jersey Synagogue, sent their child to school in New Jersey, had New Jersey drivers licenses, and "spen[t] the vast majority of their time in New Jersey, [and] treat the [New Jersey] House as their home." 2009 U.S. Dist. LEXIS 12557, at *10; 7/22 Order at 8. Nevertheless, defendants presumptive New York domicile prevailed for diversity purposes.

Sagi's objective evidence continues to be "even less convincing" (7/22 Order at 10) than Halbritter v. Stonehedge Acquisition Rome II, LLC, No. 07 Civ. 43848 (WHP), 2008 U.S. Dist. LEXIS 26042 (S.D.N.Y. Apr. 2, 2008):

> Like Sagi, the plaintiff in Halbritter had also moved from New York to another state for approximately eight months before filing the action at issue, and they also retained an interest in property in New York. 2008 WL 926583 at *1. However, the plaintiff in Halbritter presented additional evidence that Sagi did not: not only did she make significant renovations to a house in Florida, but also she presented an extensive record of personal and business appointments in Florida. Nevertheless, the court in Halbritter found that plaintiff failed to prove she had changed domicile from her long-term New York domicile to Florida by clear and convincing evidence. Id. at *3. Eber-Schmid and Halbritter suggest that Sagi's evidence is insufficient on its own to establish by clear and convincing evidence that Sagi changed his domicile from New York to Connecticut before filing this action.[2]

7/22 Order at 10; see also Kleiner v. Blum, 03 Civ. 3846, 2003 U.S. Dist. LEXIS 17081, *4 (S.D.N.Y. Sept. 30, 2003) (remanding case to the New York State court because of conflicting

---

[2] In Halbritter, plaintiff, inter alia, presented objective documentary evidence (not just naked assertions) that she (i) spent $400,000 renovating her Florida home, (ii) changed her address to Florida with the U.S.P.S., (iii) listed Florida as her residence on her tax forms, (iv) saw doctors in Florida, and (v) spent the majority of her time in the fourteen months before bringing her action in Florida. Id. 2008 U.S. Dist. LEXIS 26042, at *8-9; 7/22 Order at 8-9.

evidence); <u>Durst v. Seeglar</u>, 04 Civ. 6981, 2005 U.S. Dist. LEXIS 32017 *17-22 (S.D. N.Y. Dec. 7, 2005) (plaintiff failed to clearly and convincingly prove that he had changed his residence from New York to Texas, even though plaintiff presented objective evidence that he (i) filed New York State tax returns as a nonresident; (ii) was registered to vote in Texas; (iii) held a Texas driver's license; and (iv) chose to return to Texas after his incarceration).[3]

Further, it remains undisputed that conflicting evidence exists – either directly, or based on Sagi's refusal to provide supporting documents voluntarily or in discovery[4] – demonstrating that New York continues to be Sagi's domicile:

- Sagi "continues to own [his] New York home, which is not for sale." (7/22 Order at 4, quoting Sagi Affidavit). Sagi refuses to disclose whether he owns any New York State real property other than the New York Apartment. <u>See</u> Sagi Response to Orly Doc. Req. No. 38.

- Sagi's Connecticut lease lists Sagi's "New York Apartment as the place to which 'all notices, demands, or communications' should be sent." (7/22 Order at 6). In this regard, Sagi does not state that he no longer receives mail at his New York address as of July 24, 2014. Nor does he provide any change of address forms.

- Sagi continues to use New York doctor Anna Filova (Sagi Suppl. Decl.). Sagi provides no actual evidence supporting his assertion that he uses Connecticut doctors (see Doc. Req. No. 30).

- Sagi admits his attorneys continue to be in New York (Sagi Suppl. Decl. ¶ 2).

---

[3] Sagi continues his irrelevant "Mezuzah" argument. Under Judaic law, one must remove a mezuzah if you are renting to non-Jews. However, one can always re-post the Mezuzah upon one's return or rental to a Jew. <u>See</u> Rabbinical Assembly Article (Reply Decl., **Exhibit 16**). Accordingly, removing a Mezuzah is a red herring; it can demonstrate neither an intent to abandon, nor an intent not to return to, New York.

[4] Remarkably, Sagi refuses to produce any documents related to his domiciliary status other than the ones cherry-picked and submitted by him in opposition to the motion to dismiss. <u>See</u> Sagi Responses to Orly First Request for Production of Documents at 19-38 (Reply Decl., **Exhibit 17**). Sagi's refusal to provide or produce domicile related documents should weigh against Sagi in determining whether he has met his heavy evidentiary burden by clear and convincing evidence. <u>See, e.g.</u>, <u>Bogosian v. All-Am. Concessions</u>, 06-CV-1633 (RRM)(RML), 2011 U.S. Dist. LEXIS 109082. *34 (E.D.N.Y. Sept. 26, 2011) ("asset stripping, undercapitalization and the inability to perform the Contract, properly may be inferred from Rosen's refusal to produce transactional or financial documents, or otherwise respond to plaintiffs' document requests.") (and cases cited); <u>Smoothline Ltd. v. N. Am. Foreign Trading Corp.</u>, No. 00-CV-2798 (DLC), 2003 U.S. Dist. LEXIS 3085 at *2-3 (S.D.N.Y. Mar. 7, 2003) ("Since the evidence that would answer this [question whether the owners stripped the assets of their corporations] is exclusively within the custody and control of the [owners or their corporations], it is fair to infer that the truth is unfavorable to [them]," where owners failed to produce such evidence voluntarily or in discovery.).

- Sagi refuses to disclose where his financial advisors and accountants are located (Doc. Req. No. 29); refuses to disclose where his bank and brokerage accounts are located (Doc. Req. No. 28); and refuses to provide the credit card, cell phone, and E-Z Pass records (Doc. Req. No. 31, 32, 33). All this information is relevant to Sagi's unsupported assertion (Sagi Suppl. Decl. ¶ 2) that he no longer has "material ties" to, and does not stay in, New York.

- Sagi refuses to disclose who pays maintenance and real estate taxes on the New York Apartment (Doc. Req. No. 27).

- Sagi refuses to disclose whether he or his wife continue to pay New York taxes, and refuses to provide a copy of any tax return material for 2013 or 2014 (Doc. Req. No. 37).

- Sagi provides the Connecticut Registration for one of his cars, but refuses to disclose whether this is his 6-member family's only vehicle, or provide any information regarding the current car registrations for the family's other vehicles (Doc. Req. No. 34).

- Sagi refuses to disclose whether he or his wife were active in any New York clubs and civic organizations on or before July 24, 2014 (Doc. Req. No. 36).

- Sagi refuses to provide objective documentary evidence showing where he and his wife were registered to vote on July 24, 2014 (Doc. Req. No. 22, 24).

Notably, most of these Sagi failures support, and continue supporting, the Court's prior dismissal. Yet, given the opportunity to cure, Sagi still omits this relevant evidence. This decision to omit is fatal because, under <u>Eber Schmid</u>, <u>Halbritter</u>, <u>Kleiner</u>, <u>Durst</u>, and etc., Sagi's selective presentation of limited evidence, and deliberate omission of conflicting evidence within his exclusive control, cannot properly amount to "clear and convincing evidence" that Sagi changed his long time domicile of New York to Connecticut. For all these reasons, Sagi still fails to clearly and convincingly prove that "Connecticut has become his 'true fixed home' and that he no longer has an 'intention of returning' to New York." 7/22 Order at 11.

## II.  THE BREACH OF CONTRACT CLAIM STILL FAILS BECAUSE THE NOVEMBER DOCUMENT IS NOT SUPPORTED BY CONSIDERATION

"All contracts must be supported by consideration." <u>Beitner v. Becker</u>, 34 A.D.3d 406, 407 (2d Dept. 2006). The only consideration Sagi identifies in his complaint are: (i) the Orly Trust's "receipt of [TRI] shares" and (ii) "other valuable consideration." Compl. ¶ 8 (Moving

Decl, Ex. 2).  Neither of these is valid consideration for the November Document.  (See Moving

Br. at 13-18).  Specifically, the TRI Shares were transferred, and the parents' divorce case ended

by a binding Divorce Stipulation before the November Document was supposedly executed.  Id.[5]

Moreover, actions motivated by love and affection – precisely what is alleged here – are not

consideration as a matter of law.  Id.[6]  Thus, Sagi's breach of contract claim should be dismissed.

**A.    The Divorce Stipulation and November Document are not "Integrated"**

Sagi's contention (Sagi Br. at 17-18) that the Divorce Stipulation and November

Document are an "integrated transaction" fails.  *First*, this contention is foreclosed by the "Entire

Understanding" clause of the Divorce Stipulation, which bars the parties, Dalia and Arie,[7] from

relying on:

> ...representations, warranties, covenants or undertakings (whether written or oral,
> express or implied) with respect to the subject matter hereof including, without
> limitation, all rights or claims arising at law, in equity or pursuant to the parties'
> marital relationship other than those expressly set forth herein or in the transaction
> contemplated hereby or entered into concurrently herewith.

Divorce Stipulation, p. 53 (emphasis added).  Neither the Divorce Stipulation nor the TRI share

transfer documents reference or contemplate the November Document.  See Divorce Stipulation;

Transfer Agreement; TRI Board Resolution (Moving Decl., Exs. 7-9).  And, the November

---

[5] The TRI share transfer also cannot serve as consideration because Sagi and Dalia have repeatedly argued that the Orly Trust never received the TRI shares. See Argument, Section II(C).

[6] Sagi's reliance upon Commodities Futures Trading Comm'n v. Walsh, 17 N.Y.3d 162 (2011) ("Walsh I") and Commodities Futures Trading Comm'n v. Walsh, 2014 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 28, 2014) ("Walsh II"). (Sagi Br. at 19) is misplaced.  They address a narrow, limited exception where non-economic consideration between spouses can be "fair consideration" for a spousal separation agreement. See Walsh I, 17 N.Y.3d at 175-176 (certain forms of non-economic consideration which may be considered "fair consideration" for a spousal separation agreement incorporated into divorce decree); Walsh II, 2014 U.S. Dist. LEXIS 29094, at *28 (ex-wife's non-economic contributions during 23 years of marriage, such as "rais[ing] the children, supervis[ing] home renovations, manag[ing] the family's finances and relinquish[ing] a lucrative career" was fair consideration for property received in divorce).  The November Document is not a property settlement and does not distribute marital property.  Sagi does not cite single case applying this narrow Walsh exception to a child's promise to support his/her parent.

[7] As the Entire Understanding Clause binds Dalia, Sagi's claim that the Clause doesn't bind him is of no moment.

Document was not executed "concurrently" with the Divorce Stipulation.  Compl., Ex. B.

*Second*, for agreements to be integrated, the parties to the agreements must be the same and all parties must have "assented to all the promises as a whole." Commander Oil Corp. v. Advance Food Service Equip., 991 F.2d 49, 53 (2d Cir. 1993); Big East Entertainment, Inc. v. Zomba Enterprises, Inc., 453 F. Supp.2d 788, 799 (S.D.N.Y. 2006) (two agreements not interrelated where each agreement had different parties).  Here, the parties to the Divorce Stipulation (Dalia and Arie) and the November Document (Sagi and Orly) are completely different.  Moreover, Sagi's complaint does not allege that Arie or Orly assented to the November Document or its inclusion as part of the Divorce Stipulation.

*Third*, documents can only be treated as integrated "in the absence of anything to indicate a contrary intention." BWA Corp. v. Alltrans Exp. U.S.A., Inc., 112 A.D.2d 850, 852 (1st Dept. 1985); Big East Entertainment, 453 F. Supp.2d at 799.  Here, Sagi's "integrated transaction" argument is completely contrary to the Divorce Stipulation's "Entire Understanding" clause.

## B.    Sagi Cannot Save His Complaint By Alleging A Prior Oral Agreement

Sagi's claim (Sagi Br. at 17) that the November Document is enforceable based upon an alleged prior oral agreement between Dalia, Sagi and Orly is meritless.  *First*, Sagi's Complaint does not seek to enforce an oral agreement: it seeks to enforce the November Document.  See Compl. ¶¶ 15-27 (Moving Decl., Ex. 2).

*Second*, Sagi's newly minted oral agreement is materially different from the November Document that Sagi seeks to enforce.  Indeed, Sagi's alleged prior oral agreement was to reimburse Dalia for half of Dalia's interest in TRI. See 11.11.04 Email attached to Sagi Decl. (Pennisi Decl., Ex. N).  By contrast, Sagi's alleged October Document and November Document claim to reimburse Dalia for her full interest in TRI – twice the amount of the alleged oral promise.  See Compl., Exs. A, B.  As Sagi nullified this alleged prior oral agreement when he

purportedly came to a new agreement with Dalia, Sagi cannot now enforce this rejected and revised oral agreement a decade later.

*Third*, just like the November Document, Sagi's alleged prior oral agreement lacks consideration. For at least each of these three reasons, Sagi's alleged prior oral promise contention fails to save his Complaint.

### C.   Orly's 2013 Settlement Is Not Consideration For The 2004 November Document

In 2013, Orly settled claims (individually and as beneficiary of the Orly Trust) against certain individuals and entities known as the "Trump Group" related to a 2008 sale of TRI Shares. 12/23/13 Decision and Order at 3 (Reply Decl., **Exhibit 18**). Logically, the 2013 settlement of another action cannot possibly serve as consideration for a purported 2004 Agreement.

Further, Sagi and Dalia have repeatedly argued the Orly Trust never received any TRI shares. For example, just last week, Dalia wrote to the N.Y. Surrogate's Court that:

> As several courts have now held that the <u>Trust never received the intended transfer of shares in Trans-Resources, Inc.</u>, we do not see how the Trust will ever be put in funds.

9/12/14 Dalia Letter To Surrogate's Court (Reply Decl., **Exhibit 19**) (emphasis added); see also 7/3/14 Decision and Order at 3 (noting Dalia often sides with Sagi against Orly) (Reply Decl., **Exhibit 20**); Moving Br at 16-17.[8] In any event, Sagi's complaint does not allege that Orly's 2013 settlement was consideration for the 2004 November Document.

---

[8] Because Sagi successfully argued the Orly Trust never received TRI shares in other courts, Sagi is judicially estopped from arguing the opposite here. (See Moving Br. at 16-17, and cases cited). Sagi's contention he only made such arguments after Orly's 2013 settlement is irrelevant and false. Sagi cites no case preventing judicial estoppel because of when or why Sagi makes an argument. And, Sagi's "Orly made me do it" claim is belied by the fact he was contending the Orly Trust never received any TRI shares well before 2013. See, e.g., 8/29/10 Sagi Verified Answer ¶¶ 28-30, 80-81, 84, 91, 111, First Affirmative Defense (Reply Decl., **Exhibit 21**).

III.   **SAGI CANNOT ENFORCE THE PROMISE DOCUMENT, BECAUSE SAGI FAILED TO GIVE ORLY A CHANCE TO DEFEND PRIOR TO PAYMENT AND THERE ARE VALID DEFENSES TO DALIA'S CLAIM TO PAYMENT**

An indemnitee cannot seek reimbursement from an indemnitor unless the indemnitee first notifies the indemnitor of a potentially covered claim and gives it an opportunity to defend. See Chase Manhattan Bank v. 264 Water St. Assocs., 222 A.D.2d 229, 231 (1st Dept. 1995).  If it fails to do so, the indemnitee "must establish that [it] would have been liable and that there was no good defense to the liability." Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 74 A.D.3d 32, 39 (1st Dept. 2010) (citation omitted); Moving Br. at 18.

Sagi's complaint alleges he "paid Dalia $200,000" sometime before he demanded $100,000 from Orly "under the Nov. 10, 2004 Indemnity" "[o]n February 17, 2014."  Compl., ¶¶ 11, 12 (Moving Decl., Ex. 2).  Neither Sagi's complaint, nor his opposition to the instant motion, allege that Sagi told Orly he was going to pay Dalia $200,000 prior paying the claim and gave Orly the required opportunity to raise a defense to Dalia's claim.  See Compl. ¶¶ 8-14; Sagi Br. at 22-23.  As it is undisputed that Sagi was informed that Orly disputed the enforceability of the Sagi Promise Document and November Document before he paid Dalia (Harris Decl. ¶ 5 (Moving Decl., Ex. 15)), Sagi is barred from seeking indemnity under New York law, and his complaint must fail as a matter of law.

Sagi contends he sufficiently notified Orly by telling Orly and her counsel, on January 23, 2014, that Dalia had made a demand for payment under the Sagi Promise Document (Sagi Br. at 22).  Sagi misses the point.  Under New York law, Sagi needed to notify Orly that he intended to pay Dalia's demand, and give Orly an opportunity to defend the claim before he paid Dalia.  See Deutsche Bank, 74 A.D.3d at 39.  This did not happen, thus foreclosing Orly from raising any defense.  In this regard, there are no emails or assertions from Sagi that he notified Orly that he intended to pay Dalia's $200,000 demand, even though Sagi knew, before he paid

8

<u>Dalia</u>, that Orly disputed the enforceability of the Sagi Promise Document and November Indemnity Document.  Harris Decl. ¶ 5.

Sagi's self-serving assertion that "there is no viable defense" to the Sagi Promise Document does not "establish that...there was no good defense to the liability." <u>Deutsche Bank Trust Co.</u>, 74 A.D.3d at 39.  Indeed, viable defenses do exist, including a lack of consideration.

Equally unsupported, is Sagi's assertion that the law of indemnity does not apply because the November Document "is basically a contribution obligation" (Sagi Br. at 23).   The November Document expressly states that Orly "agree to indemnify, defend, and hold me harmless, for and against one-half(1/2) of any and all...Claims." Compl., Ex. B (Moving Decl., Ex. 2). This matches the Black's Law Dictionary definition of indemnity: "1. A duty to make good any loss, damage, or liability incurred by another.  2. The right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty."  Black's Law Dictionary 616 (7th ed. 2000).  Conversely, Sagi does not cite a single case to support his argument that the law of indemnity does not apply.

Finally, Sagi's claim that Orly repudiated the November Document in a February 18, 2014 email fails. *First*, even if Orly's statement constituted repudiation (it did not), by February 18, 2014 Sagi already had paid Dalia $200,000, without informing Orly he was about to pay or allowing Orly an opportunity to defend. *Second*, "[a] 'repudiation can be determined to have occurred only when it is shown that 'the announcement of an intention not to perform was positive and unequivocal.'" <u>Briarwood Farms, Inc. v. Toll Bros., Inc.</u>, 2011 U.S. App. LEXIS 25595, *5 (2d. Cir. Dec. 22, 2011) (quoting <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 112 (2d Cir. 2010)).  Orly's email telling Sagi "Please stop lying about me and about the history" is not a "positive and unequivocal" repudiation of anything. Orly 2/18/2014 Email, Ex. E to Sagi

9

Decl. (Pennisi Decl., Ex. N).

## IV.   SAGI'S ESTOPPEL CLAIM FAILS BECAUSE SAGI CANNOT PROPERLY PLEAD FACTS SHOWING OBJECTIVELY REASONABLE RELIANCE

A claim for promissory estoppel requires "reasonable and forseeable reliance by the promise." Consolidated Energy Design Inc. v. The Princeton Club of New York, 2014 U.S. Dist. LEXIS 38560, *9 (S.D.N.Y. March 24, 2014) (Moving Br. at 20-21).   That reliance must be objectively reasonable. See Kleinberg v. Radian Group, Inc., 2002 U.S. Dist. LEXIS 20595, *29 (S.D.N.Y. Oct. 29, 2002) (dismissing promissory estoppel claim as matter of law because reliance upon representation is contrary to an "unambiguous and comprehensive contract").

Here, Sagi could not have reasonably or forseeably relied upon the November Document when he paid Dalia, because he already had been told Orly disputed the enforceability of the Document.   See Harris Aff. ¶ 5.   Thus, Sagi's promissory estoppel claim, and his detrimental reliance argument (Sagi Br. at 20-21), must fail.

Sagi's reliance upon Braddock v. Braddock, 60 A.D.3d 84 (1st Dept. 2009) is meritless. In Braddock, the Appellate Division, First Department held that plaintiff cousin could rely upon defendant cousin's promise that he would co-own an oil exploration company if plaintiff quit his job as an investment banker in New York and moved his family to Texas. Id., 60 A.D.3d at 89. Here, Orly made no promise to Sagi.   To the contrary, she told Sagi the November Document was not enforceable, which means any purported Sagi reliance was not objectively reasonable.

## CONCLUSION

Sagi and Dalia's latest scheme to pauperize Orly is full of holes.   For each of the above reasons, the Court should (i) dismiss the complaint again for lack of subject matter jurisdiction; and/or (ii) dismiss the case with prejudice for failure to state a claim; and (iii) grant Orly such other and further relief as the Court deems just and proper.

Dated:   New York, New York
        September 18, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
     Yoav M. Griver
     Bryan D. Leinbach
     1211 Avenue of the Americas
     New York, New York 10036
     (212) 223-0400
     *Attorneys for defendant Orly Genger*

11