UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
SAGI GENGER,                                                             :
                                                                         :
                                    Plaintiff,                           :   1:14-cv-05683 (KBF)
                                                                         :
              -against-                                                  :
                                                                         :
ORLY GENGER,                                                             :
                                                                         :
                                    Defendant.                           :
------------------------------------------------------------------------ X

 

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF SAGI GENGER'S MOTION FOR SUMMARY JUDGMENT

 

MORGAN, LEWIS & BOCKIUS LLP
John Dellaportas
Nicholas Schretzman
Mary C. Pennisi
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001

Case 1:14-cv-05683-KBF-DCF   Document 36   Filed 10/20/14   Page 2 of 20

**TABLE OF CONTENTS**

                                                                     **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 1

ARGUMENT ................................................................................................................................ 7

I.       Legal Standard ................................................................................................................ 7

II.     Sagi is Entitled to Summary Judgment on His Claim for
        Breach of Contract ......................................................................................................... 8

      A.      The Undisputed Evidence Demonstrates that the
             Nov. 10, 2004 Indemnity is an Enforceable Contract ..................................... 8

      B.      Orly Undisputedly Breached the Nov. 10, 2004 Indemnity ....................... 13

      C.      Orly Had No Right to Defend Against Dalia's Claim ................................. 14

III.    In the Alternative, Sagi is Entitled to Summary Judgment on
        His Claim for Promissory Estoppel ........................................................................ 15

CONCLUSION .......................................................................................................................... 16

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 7

*Ciocca v. Neff*,
    2005 WL 1473819 (S.D.N.Y. June 22, 2005) ......................................................... 15

*Commodity Futures Trading Comm'n v. Walsh*,
    17 N.Y.3d 162 (2011) .............................................................................................. 10

*Commander Oil Corp. v. Advance Food Serv. Equip.*,
    991 F.2d 49 (2d Cir. 1993) ...................................................................................... 11

*Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*,
    301 A.D.2d 70 (1st Dep't 2002) ............................................................................... 15

*Consol. Energy Design Inc. v. Princeton Club of New York*,
    2014 WL 1202946 (S.D.N.Y. March 24, 2014) ...................................................... 16

*Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*,
    74 A.D.3d 32 (1st Dep't 2010) ................................................................................ 14

*Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc.*,
    804 F.2d 787 (2d Cir. 1986) .................................................................................... 15

*Henneberry v. Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007) ...................................................................... 15

*Hollander v. Lipman*,
    65 A.D.3d 1086 (2d Dep't 2009) ............................................................................. 12

*Holt v. Feigenbaum*,
    52 N.Y.2d 291 (1981) .............................................................................................. 12

*Matter of Zach*,
    144 A.D.2d 19 (1st Dep't 1989) ............................................................................... 9

*Knight v. U.S. Fire Ins. Co.*,
    804 F.2d 9 (2d Cir. 1986) ........................................................................................ 7

*Kurz v. United States*,
    156 F. Supp. 99 (S.D.N.Y. 1957),
    *aff'd*, 254 F.2d 811 (2d Cir. 1958) .......................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................... 7

*Meyersohn v. Bloom*,
   259 A.D. 432 (1st Dep't 1999) .................................................................................... 16

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
   1994 WL 164057 (S.D.N.Y. Apr. 21, 1994) ................................................................ 14

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004) .......................................................................................... 8

*Nau v. Vulcan Rail & Constr. Co.*,
   286 N.Y. 188 (1944) .............................................................................................. 11-12

*RLS Assocs, LLC v. United Bank of Kuwait PLC*,
   380 F.3d 704 (2d Cir. 2004) ................................................................................. 10, 12

*Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp.*,
   2003 WL 22966285 (S.D.N.Y. Dec. 16, 2003) ............................................................ 9

*Weiner v. McGraw-Hill, Inc.*,
   57 N.Y.2d 458 (1982) ................................................................................................. 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ............................................................................................... 7, 8, 15

*Restatement (Second) of Contracts,* § 90 (1981) ......................................................... 15

Williston, *Contracts,* § 863 (3rd ed. 1970) .................................................................... 11

**PRELIMINARY STATEMENT**

This is a straightforward contract case. In 2004, plaintiff Sagi Genger ("Sagi") and defendant Orly Genger ("Orly") agreed to support their mother, Dalia Genger ("Dalia"), in her retirement, out of the valuable economic benefits of shares of stock of Trans-Resources, Inc. ("TRI") that Dalia gave to her children's trusts as part of her divorce from her husband, Arie Genger ("Arie"). Their agreement was later reduced to two written documents. In 2014, Dalia – financially harmed from all of the meritless lawsuits Orly has filed against her over the years – asked for financial support out of the TRI shares she had given away in 2004. Sagi has fulfilled his commitment to his mother, but Orly has not. Instead, she has propped up her lawyers to cry "forgery" on a document she knows full well to be real.

At bottom, this case is about a clear and unambiguous one-page written agreement between Sagi and Orly, pursuant to which Orly has a duty to reimburse Sagi for one-half of all monies paid by Sagi to support Dalia. As set forth below, the undisputed facts demonstrate that the Nov. 10, 2004 Indemnity is a valid and binding contract, that Orly has received consideration thereunder, that she has breached and repudiated that contract, that Sagi has suffered a monetary loss as a result, and that Orly is estopped from claiming otherwise. Sagi is therefore entitled to summary judgment of liability in his favor.

**STATEMENT OF FACTS**[1]

In 2004, the Genger family was being torn apart, as Dalia and Arie bitterly negotiated their divorce settlement, seemingly without end. *See* Declaration of Mary C. Pennisi, executed on October 20, 2014 ("Pennisi Decl."), Exh "A," Tr. 16:22-17:2 ("My sister was … crying

---

[1] The facts herein are drawn from the declarations filed in the predecessor case, No. 1:14-cv-01006, of David Parnes, executed on May 29, 2014 ("Parnes Decl."), Sagi Genger, executed on May 29, 2014 ("May 29 Sagi Decl."), Dennis Ryan, executed on May 29, 2014 ("Ryan Decl."), Sagi Genger, executed on July 7, 2014 ("July 7 Sagi Decl."), and Dalia Genger, executed on July 7, 2014 ("Dalia Decl."), and are annexed to the Pennisi Declaration filed herein as Exhibits H, I, J, K, and D, respectively.

hysterically and literally begging my mother to bring this – all this matter to a conclusion.  It was very difficult for her, as it was for me.").

One issue holding up the divorce was Dalia's skepticism of Arie's claim that the family's TRI stock had no value.  *Id.*, Tr. 16:2-16:6 ("my sister and I were pleading with my mother to sign what substantially was a stipulation of settlement, and she was very doubtful about [Arie's] representations that the TRI shares were worthless").  In 2004, a deal was struck whereby Dalia agreed to convey her marital rights to her 794.40 shares of TRI to two trusts for the benefit of Sagi and Orly, respectively, with a right to claw back her living expenses if the TRI shares ended up having economic value.  *Id.*, Tr. 23:10-23:13 ("we would give my mother the ability to call back in value … her shares that would have been allocated to her").  The parties' agreement was thereafter reduced to writing in two related documents:

<u>First</u>, pursuant to a co-signed letter dated October 30, 2004 (the "Oct. 30, 2004 Promise"), Sagi agreed to pay Dalia an amount equal to all dividends, distributions, proceeds or other payments attributable to the shares of TRI that were received by Sagi and Orly (or any trust for the benefit of either of them), or any lesser amount, upon demand by Dalia.  The underlying divorce papers were not delivered to the Court for approval, but instead were held in escrow, until Orly executed a related document embodying her earlier oral promise to reimburse Sagi for 50% of his support payments to Dalia.  Parnes Decl., Exh. "A" & ¶ 9.

<u>Second</u>, as she had earlier orally promised to do, Orly executed a co-signed letter dated November 10, 2004 (the "Nov. 10, 2004 Indemnity") agreeing to "indemnify, defend, and hold [Sagi] harmless, for and against one-half … of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations …, including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings [to Dalia] in the [Oct. 30, 2004 Promise]."  *Id.*, Exh. "B" ¶ 9.

2

The parties' agreement was executed in two parts because, on October 30, 2004 – the closing date of Arie's and Dalia's stipulation of settlement (the "Divorce Stipulation") – Orly was vacationing on a yacht off the coast of Fiji. *Id.*, ¶ 5; Pennisi Decl., Exh "A," Tr. 30:8-30:18; Tr. 43:18-43:22; *Id.*, Exh. "G" at 0008-0010.  Before leaving for Fiji, however, Orly orally agreed with Sagi to grant Dalia a clawback for living expenses, should the TRI shares generate value – an agreement she then reconfirmed by telephone on the October 30, 2004 closing date. *Id.*, Exh. "A.," Tr. 29:18-29:21 (Orly told Sagi: "if that's what moves the ball forward, it should be done; and that … she'd back me, obviously 50-50 on whatever we had to do"); Tr. 32:10-32:12 ("I read [the Nov. 10, 2004 Indemnity] to her, she said, 'Fine, whatever it is I'll back – backstop you 50-50.'"); Tr. 98:12-99:16 ("She said to me, 'Obviously whatever you think is correct and that it's 50-50 between us … if that's what mom wants and it gets it closed, that's what we'll do.'"); July 7 Sagi Decl. ¶ 5.

While Orly was yachting in the Pacific Ocean, her father, Arie's divorce attorney, Edward Klimerman, was asked to prepare a document reflecting the parties' oral agreement. (Mr. Klimerman was a partner at the law firm of Sonnenschein Nath & Rosenthal LLP, and he also held Orly's power of attorney on certain matters.)  *See* Pennisi Decl., Exh. "A," Tr. 114:16-17; May 29 Sagi Decl., Exh. "A" at 7; Pennisi Decl., Exh. "G," at 0008-0010.  On November 10, 2004, Mr. Klimerman's assistant, Deborah Kempf, sent to Sagi, as an email attachment, the document which became the Nov. 10, 2004 Indemnity:

> **From:** Kempf, Deborah [mailto:dkempf@sonnenschein.com]
> **Sent:** Wed 11/10/2004 4:27 PM
> **To:** Sgenger@trans-resources.com
> **Cc:** Klimerman, Edward
> **Subject:** FROM: Ed Klimerman
>
> Per your request, attached is a draft of the Indemnity Letter. <<NYCLIB1-17454061-v1-Letter from Sagi to Orly.DOC>>

May 29 Sagi Decl., Exh. "B."

3

Later that day, Sagi forwarded to Orly, unchanged, the Nov. 10, 2004 Indemnity prepared by Mr. Klimerman:

> **From:** Sagi Genger
> **Sent:** Wednesday, November 10, 2004 5:51 PM
> **To:** orlygenger@hotmail.com
> **Cc:** dparnes@parnespartners.com
> **Subject:** Loose End from Divorce
>
> Dear Orly,
>
> Since you were in Fiji I promised to mom her full share interest in TRI instead of only half.  Please sign the attached to split it with me.
>
> If you have any questions you can call David.
>
> Love,
>
> Sagi

Parnes Decl., Exh. "C."

Shortly thereafter, David Parnes, Sagi's attorney, made arrangements directly with Orly to pick up a copy of the Nov. 10, 2004 Indemnity that Orly had signed.  Specifically, Orly called Mr. Parnes and told him that she was leaving the signed copy with the doorman at her New York apartment building.  Mr. Parnes thereafter picked up the copy, which he brought to Sagi.  Mr. Parnes watched Sagi sign the document, and then added the fully-executed copy to the Genger family's corporate files.  Parnes Decl., ¶ 8; July 7 Sagi Decl. ¶¶ 5-7.

As it turned out, Dalia's skepticism of her husband's veracity was well-placed, as the TRI shares did produce substantial value.[2]  Meanwhile, Dalia continued to rack up large legal fees

---

[2] Specifically, in a post-divorce arbitration, Justice Milonas (Ret.) found that Arie had deliberately falsified his marital assets by falsely valuing his TRI shares at $0 by claiming a corporate liability which did actually not exist.  Pennisi Decl., Exh. "C," at 8.  By contrast, Justice Milonas found that the "most credible, reliable and the fairest assessment [of the marital assets in dispute] was prepared by Sagi." *Id.* at 11.  By Arbitration Award dated May 6, 2008, Justice Milonas awarded Dalia $3.85 million to correct the imbalance in marital assets created by Arie's fabrication.  *Id.*  Sagi's refusal to help his father defraud his mother earned him Arie's enmity, which has manifested itself in six years of meritless lawsuits by Orly against her brother, directed and funded by Arie.  On July 24, 2014, the Appellate Division threw out the most significant of these lawsuits.  Pennisi Decl., Exh. "E."

4

from her daughter's never-ending, meritless lawsuits. On January 22, 2014, Dalia demanded $200,000 from Sagi under the Oct. 30, 2004 Promise. May 29 Sagi Decl., Exh. "D." The next day, Sagi notified Orly and her lawyers of Dalia's demand, and his intention to honor his prior commitment to his mother. *Id.,* ¶ 6; July 7 Sagi Decl. at 11.

Therafter, Sagi properly paid Dalia $200,000. Pennisi Decl., Exh. "A," Tr. 124:23-125-16. Sagi then demanded $100,000 (one-half of the amount paid by Sagi to Dalia) from Orly under the Nov. 10, 2004 Indemnity. This litigation was commenced for the simple reason that, to date, Orly has refused to reimburse Sagi for the $100,000 she owes him under the Nov. 10, 2004 Indemnity. May 29 Sagi Decl., Exh. "E."

Instead, Orly has denied the existence of the agreement altogether *see* May 29 Sagi Decl., Exh. E*,* suggesting the Nov. 10, 2004 Indemnity is a figment of Sagi's and Mr. Parnes's collective imagination. If it were, then they have been imagining it for quite some time. In October 2006, about two years after the document was signed, Sagi contacted Mr. Parnes to ask him where he had filed the Nov. 10, 2004 Indemnity. Parnes Decl., Exh. "D" & ¶ 10. Mr. Parnes directed Sagi to the place where he had placed the fully-executed copy. *Id.*

> **From**: David Parnes
> **Sent**: Tuesday, October 03, 2006 9:07 AM
> **To**: Sagi Genger
> **Subject**: RE: Signed Promise
>
> It shoudl be either [sic]
>
> (i) in your inbox - folder on your desk; or
>
> (ii) top drawer, in folder labelled with your name / mother name.
> _____
> **From**: Sagi Genger
> **Sent**: Mon 10/2/2006 3:15 PM
> **To**: David Parnes
> **Subject**: RE: Signed Promise
>
> I signed a promise for the entire amount she signed a back to back promise for half the amount.
> _____

5

>**From**: David Parnes
>**Sent**: Monday, October 02, 2006 3:15 PM
>**To**: Sagi Genger
>**Subject**: RE: Signed Promise
>
>?
>
>―――――――――――――――――
>**From**: Sagi Genger
>**Sent**: Monday, October 02, 2006 9:55 AM
>**To**: David Parnes
>**Subject**: RE: Signed Promise
>
>Do you have my sister's indemnity?
>
>―――――――――――――――――
>**From**: David Parnes
>**Sent**: Tuesday, July 11, 2006 2:06 PM
>**To**: Sagi Genger
>**Subject**: FW: Signed Promise
>
>see attached
>
>―――――――――――――――――
>**From**: David Parnes [mailto:david@ParnesPartners.com]
>**Sent**: Thursday, November 11, 2004 10:12 PM
>**To**: orlygenger@hotmail.com
>**Subject**: Signed Promise
>
>Orly,
>
>\Attached is the signed promise from Sagi to your mother.
>
>Best,
>
>David

Parnes Decl., Exh. "D."

Tellingly, whenever she has been asked to speak to the issue directly and under oath, as opposed to through her lawyers, Orly has declined to deny that she in fact executed the Nov. 10, 2004 Indemnity.  In a February 2014 deposition, for example, Orly testified that, while she did not recall signing the Nov. 10, 2004 Indemnity, the signature appeared to be hers.  Pennisi Decl., Exh. "B," Tr. 41:15-45:14 ("It looks like my signature.  But I have absolutely no recollection of signing this document, so I can't say if it is or if it isn't").  Similarly, in a reply affirmation she submitted in the predecessor case, the most that Orly could muster was a statement that: "I do not remember signing the November Document." 1:14-cv-01006-KBF, Doc. 35 at 4.

6

Even though Orly only claims a lack of memory, that did not stop her attorney from representing to this Court in April 2014 that the Nov. 10, 2004 Indemnity is a "***forgery***." As noted above, there is contemporaneous record which proves that a Sonnenschein lawyer drafted the document, that Sagi provided a copy of it to Orly on November 10, 2004, that she told Mr. Parnes that she signed it, and that she then left a signed copy of the document for Mr. Parnes with her doorman. By contrast, there is absolutely no evidence that the Nov. 10, 2004 Indemnity is a forgery. In order to remove any shred of doubt, however, Sagi has retained a handwriting expert who has compared Orly's signature on the Nov. 10, 2004 Indemnity to over two dozen of Orly's signatures on other documents. It is his conclusion that "Orly Genger signed her name" to the Nov. 10, 2004 Indemnity. *See* Ryan Decl., Exh. "A."

## ARGUMENT

### I.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment "shall be rendered" if the submissions "show[s] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the evidence in the record "could not lead a . . . trier of fact to find for the non-moving party, there is no genuine issue for trial," and the motion should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In turn, there are no factual issues for trial unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[M]ere speculation or conjecture," no matter how sincere, is insufficient to withstand a summary judgment motion. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In its October 7, 2014 Order, this Court held that: "This lawsuit is concerned solely with whether the indemnification obligation is binding and whether the request for payment has been

duly made and is valid.  The resolution of this action will be based on evidence surrounding the circumstances of defendant's alleged entry into the indemnification agreement in 2004. "  Doc. No. 26 at 1-2.  Here, such evidence conclusively establishes that the Nov. 10, 2004 is binding and that Sagi's request for payment has been duly made.  Accordingly, summary judgment of liability is warranted in Sagi's favor.

## II.   SAGI IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR BREACH OF CONTRACT

The three elements of a breach of contract claim under New York law are:  (1) a contract; (2) a material breach thereof; and (3) damages resulting from the breach.  *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  As all three elements are satisfied here, Sagi has made the requisite *prima facie* showing.

### A.   The Undisputed Evidence Demonstrates that the Nov. 10, 2004 Indemnity is an Enforceable Contract

First, there is no genuine dispute that the Nov. 10, 2004 Indemnity is a valid and binding contract between Sagi and Orly.  The evidence establishes that, in connection with Arie's and Dalia's final divorce negotiations, Dalia agreed to convey her marital rights to 794.40 shares of TRI to two trusts for the benefit of Sagi and Orly, respectively.  However, Dalia's agreement was solely on the condition that Sagi and Orly provide for her living expenses, should she need the financial support, if the TRI shares later produced any economic value.  Parnes Decl., ¶ 3.  Orly orally agreed to share that burden, which she memorialized in the Nov. 10, 2004 Indemnity when she returned from Fiji.  *See* Pennisi Decl., Exh. "G." at 008-0010; Parnes Decl., Exh. "C."  The Nov. 10, 2004 Indemnity was drafted by Orly's father's attorney, a partner at a major law firm, and Sagi's lawyer picked up a signed copy of the Nov. 10, 2004 Indemnity which Orly left for pick-up with her own doorman.  Pennisi Decl., Exh. "A," Tr. 114:16-17; May 29 Sagi Decl., Exh. "A" at 7; Parnes Decl., ¶ 8; July 7 Sagi Decl. ¶¶ 4-7.

8

Significantly, Orly does not specifically dispute any of these facts. Instead, as noted above, she has vacillated between selective amnesia, when asked about the matter directly, and anguishes cries of "forgery," when speaking through her lawyers. Pennisi Decl., Exh. "B," Tr. 41:15-45:14 ("It looks like my signature. But I have absolutely no recollection of signing this document, so I can't say if it is or if it isn't"). The former controls.

Given that Orly has sworn, under oath, that she does not recall whether or not she ever signed the Nov. 10, 2004 Indemnity, she cannot create an issue of fact by now challenging its authenticity or disputing its existence. Rather, under New York law, a party to a written contract must affirmatively deny the existence of the agreement in order to create a factual dispute as to the contract's authenticity. In *Matter of Zach*, 144 A.D.2d 19, 21 (1st Dep't 1989), for example, a husband testified that he had "no memory whatsoever of any discussions pertaining to [a antenuptial agreement with his signature on it], or any memory as to the facts and circumstances surrounding its execution." The court held the husband's "posture of amnesia" insufficient to raise an issue of fact, when the wife moved for summary judgment. *Id.*

Further, and in any event, a handwriting expert has concluded that the Nov. 10, 2004 Indemnity bears Orly's actual signature, and that the signature was not manipulated in any way, such as being copied and pasted from another document. *See* Ryan Decl., Exhibit "A," Expert Report (concluding that "Orly Genger signed her name" to the Nov. 10, 2004 Indemnity). This same expert concludes that Orly's signature on the Nov. 10, 2004 Indemnity is "remarkably similar" to dozens of her other signatures. *Id.* To date, his opinion stands unrebutted, which further demonstrates that this document is genuine. *See, e.g., Tai-Sun Plastic Novelties, Ltd. v. Haschel Exp. Corp.*, 2003 WL 22966285 at *3 (S.D.N.Y. Dec. 16, 2003).

Finally, the undisputed evidence establishes that the Nov. 10, 2004 Indemnity is supported by ample consideration in two ways. First, Orly received a benefit in the overall

9

agreement reached by Dalia, Sagi, and Orly.  In consideration for Orly's promise to reimburse Sagi for 50% of monies paid to Dalia under the Oct. 30, 2004 Promise, the Orly Genger 1993 Trust (the "Orly Trust") – for which Orly is the principal beneficiary – received an economic benefit from her mother's conveyance of her marital rights in the TRI shares to the Trust by virtue of the Oct. 30, 2004 Promise.  See Parnes Decl., Exh. "A."

Second, in addition to the financial windfall, Orly also received an emotional and psychological benefit in helping to bring about an end to her parents' bitter divorce.  As the testimony establishes, the Gengers' divorce was tearing the family apart.  Thus, for everyone's emotional well-being (on top of the economic benefit of the TRI shares), Orly agreed to the clawback in order to end her parents' protracted divorce battle.  See Pennisi Decl., Exh. "B," Tr. 39:11-39:19 ("I definitely had a desire for the divorce to be over with . . . [b]ecause it was a horrible period.").  New York law "recognizes other forms of legitimate consideration, including non-monetary consideration." Commodity Futures Trading Comm'n v. Walsh, 17 N.Y.3d 162, 175-76 (2011) (listing examples of non-economic consideration).

The unchallenged evidence is that Orly agreed to reimburse Sagi in exchange for these two real benefits.  Under New York law, that is sufficient consideration.  See, e.g., RLS Assocs., LLC v. United Bank of Kuwait PLC, 380 F.3d 704, 709 (2d Cir. 2004) ("So long as a contract provides some consideration, it may be minimal – even a peppercorn . . . Courts do not inquire into the value or adequacy of the consideration.").  In particular, Dalia's contractual right to claw back the economic value attributable to the TRI shares under the Oct. 30, 2004 Promise was an express condition to her agreement to sign the divorce papers, relinquish her right to the TRI shares, and end a protracted family battle.

That the family's agreement was implemented in two documents instead of one was a matter of happenstance. On October 30, 2004, the closing date of the divorce, Orly was yachting

10

off the coast of Fiji.  *See* Parnes Decl. ¶ 5; Pennisi Decl., Exh "A," Tr. 30:8-30:18; Tr. 43:18-43:22; *Id.*, Exh. "G" at 0008-0010.  Prior to her departure, Orly had agreed with Sagi to split any monies paid to Dalia under the clawback, but Sagi temporarily assumed the entire obligation to Dalia under the Oct. 30, 2004 Promise so that the closing could be completed without awaiting Orly's return.  *Id.*, Exh. "A.," Tr. 23:10-23:13; 29:18-29:21; 32:10-32:12; 98:12-99:16.  Sagi only did so, however, because Orly had verbally agreed to reimburse him for 50% of any monies paid to Dalia, and to memorialize that agreement upon her return to the United States.  *Id.*  Sagi signed the Oct. 30, 2004 Promise with Dalia and then, when Orly returned to New York from her trip to Fiji, she executed the Nov. 10, 2004 Indemnity to memorialize her prior oral agreement with Sagi.  *See* Parnes Decl., ¶ 8 and Exh "C."

Orly has previously argued that the Nov. 10, 2004 Indemnity is without consideration because she signed it eleven days after the consideration found in the Oct. 30, 2004 Promise.  That argument is unavailing.  The Oct. 30, 2004 Promise and Nov. 10, 2004 Indemnity are plainly interrelated; indeed, the latter attaches and cross-references the former.  Under New York law, interrelated documents are enforceable together, even if one is executed slightly later in time than the other.  *See, e.g., Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993) ("Even if the writings are executed at different times, . . . contracts should be interpreted together if 'the parties assented to all the promises as a whole so that there would have been no bargain whatever if any promise or set of promises had been stricken.'") (quoting Williston, *Contracts,* § 863 at 275 (3rd ed. 1970)); *Kurz v. United States*, 156 F. Supp. 99, 104 (S.D.N.Y. 1957), *aff'd*, 254 F.2d 811 (2d Cir. 1958) (New York law is flexible on any "time lapse between instruments" because, "where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together, even though they do not expressly refer to each other"); *Nau v. Vulcan Rail & Constr. Co.*, 286 N.Y. 188, 197

(1944) (finding that because agreements at issue "were executed at substantially the same time, related to the same subject matter, [they] were contemporaneous writings and must be read together as one."). Thus, the Nov. 10, 2004 Indemnity does not fail for lack of consideration merely because it was signed after the Divorce Stipulation.

Orly received real benefit for her agreement to reimburse Sagi. Under New York law, that is more than sufficient consideration for an enforceable agreement. *See, e.g.*, *RLS Assocs., LLC*, 380 F.3d at 709.

Aside from the benefits Orly received, the detriment Sagi has incurred from the Nov. 10, 2014 Indemnity provides further consideration to support it. As the Court of Appeals explained in *Holt v. Feigenbaum*, 52 N.Y.2d 291, 296-300 (1981), "[t]his dual notion of consideration as either a benefit to the promisor *or* a detriment to the promisee has persisted [from 17th Century English common law in *Slade's Case*] to the present day and has become an integral part of our modern approach to the enforceability of contracts." It added:

> Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee. Thus, courts have not hesitated to find sufficient consideration not only in what is now the proverbial peppercorn . . ., but in 'a horse or a canary, or a tomtit if [the promisee] chose' . . . In fact, the detriment suffered or the thing promised need be of no benefit to the one who agreed to it.

*Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 464-65 (1982); *see also Hollander v. Lipman*, 65 A.D.3d 1086, 1087 (2d Dep't 2009) (reversing trial court's finding that "the alleged April 1995 oral agreement between the defendant's decedent . . . and his late daughter was not supported by consideration … [where] the decedent's daughter agreed to suffer a detriment provided sufficient consideration to support the alleged agreement.").

Here, Orly made a personal promise to reimburse Sagi for half of their mother's support, which Sagi reasonably relied upon (given it came from his own sister), and for which he suffered

12

a detriment.  *See* July 7 Sagi Decl., ¶ 9 and Exh. "H."  It would be unconscionable to force Sagi to support his mother on his own, when both he and Orly made a commitment to equally do so, and when the reason Dalia seeks the financial support is because Orly has depleted her resources through endless, meritless lawsuits.  *See, e.g.,* Pennisi Decl., Exh. E.

### B. Orly Undisputedly Breached the Nov. 10, 2004 Indemnity

There can be no genuine factual dispute that Orly breached the Nov. 10, 2004 Indemnity and that Sagi is owed $100,000, plus fees and expenses, as a result.  It is undisputed that Sagi paid Dalia $200,000, and that Orly has not reimbursed Sagi for 50%.  *See* July 7 Sagi Decl. Exh. "H;" *see also* Dalia Decl. ¶ 2.  Sagi received Dalia's $200,000 demand on January 22, 2004, and within 24 hours had notified Orly of the demand and his intention to pay it.  May 29 Sagi Decl., Exh. "D"; ¶ 6; July 7 Sagi Decl. ¶ 7.  On January 24 and 29, 2014, Orly's counsel sent emails in which they acknowledged Sagi's notice.  Pennisi Decl., Exhs. "F," "M."  In sum, Orly clearly knew about her obligation, and yet she knowingly shirked it.

### C. Orly Had No Right to Defend Against Dalia's Claim

Furthermore, Orly has previously argued that she, as an indemnitor, has no contractual duty to indemnify without first receiving notice and a chance to defend.  This argument fails for a number of reasons.

First, there is no viable defense that Sagi could truthfully have asserted to Dalia's payment demand.  Neither Sagi nor Dalia is feigning amnesia, or crying "forgery," or pretending there is no consideration.  *See* July 7 Sagi Decl. ¶¶ 8-12; Dalia Decl. ¶2.  Under New York law, no notice to Orly is required where, as here, the indemnitee can "establish that [it] would have been liable and that there was no good defense to the liability."  *Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*, 74 A.D.3d 32, 39 (1st Dep't 2010).  As Sagi plainly owed Dalia the

money, he was right to pay it.

Second, and in any event, the Nov. 10, 2004 Indemnity is not a traditional indemnity obligation, like an insurance contract, pursuant to which Orly agreed to cover a particular type of claim. *See, e.g.*, *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 1994 WL 164057, at *2 (S.D.N.Y. Apr. 21, 1994) (traditional indemnity is where "the party seeking indemnification [seeks] it for amounts paid in settlement of a legal claim asserted by a third party"). The Nov. 10, 2004 Indemnity is a contribution obligation – a duty to reimburse Sagi for 50% of any amount that Sagi paid to Dalia in accordance with the Oct. 30, 2004 Promise.

Lastly, even assuming, *arguendo*, that the Nov. 10, 2004 Indemnity grants Orly an absolute right to defend any claim made by Dalia under the Oct. 30, 2004 Promise, no matter how frivolous (and it does not), Orly still repudiated her Nov. 10, 2004 Indemnity on February 18, 2004 when, in reply to Sagi's follow-up request for reimbursement, she emailed him back telling him to "stop lying about me and about the history." May 29 Sagi Decl., Exh. E. Under New York law, one cannot repudiate a contract while simultaneously claiming a right to defend under that very same contract. *See Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 301 A.D.2d 70, 79 (1st Dep't 2002) (a party who repudiates a contract cannot claim right to enforce thereunder). In sum, Orly has forfeited any right she may have otherwise had to invoke the provisions of the Nov. 10, 2004 Indemnity for her personal benefit.

Accordingly, under Fed. R. Civ. Proc. 56, Sagi should be granted summary judgment, and the case should proceed to the damages phase.

### III.   IN THE ALTERNATIVE, SAGI IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR PROMISSORY ESTOPPEL

The doctrine of promissory estoppel also renders Orly's Nov. 10, 2004 Indemnity to Sagi enforceable, entitling Sagi summary judgment. Promissory estoppel is an equitable doctrine.

*Ciocca v. Neff*, 2005 WL 1473819, at *6 (S.D.N.Y. June 22, 2005) (citing Restatement (Second) of Contracts § 90 (1981)).  Under New York law, it requires: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) the person to whom the promise was made relied on the promise to his or her detriment. *See Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 533 (S.D.N.Y. 2007) (citing *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc.*, 804 F.2d 787, 793 (2d Cir. 1986)); *see also* Rest. Contracts 2d § 90.

      Here, Sagi's claim for promissory estoppel is based upon a clear and unambiguous promise by Orly to reimburse Sagi for 50% of their mother's support, which Sagi reasonably relied upon, given that it was coming from his own sister and concerned their mother.  It would be an unconscionable injury to Sagi to force him to support their mother on his own, when they both made an express commitment to do so, particularly given that the reason their mother seeks the financial support is because Orly has depleted her resources through meritless lawsuits.  *See, e.g.*, Pennisi Decl., Exh. "E" (affirming dismissal of all of Orly's claims against Dalia in that action as meritless).  The facts thus satisfy all of the elements of promissory estoppel.  *See, e.g., Meyersohn v. Bloom*, 259 A.D.2d 432, 433-34 (1st Dep't 1999) (doctrine of promissory estoppel provided basis for recovery notwithstanding lack of consideration; "correspondence between the parties evidenced a clear personal promise by defendant to repay the amount in dispute, and plaintiffs relied on the promise"); *accord, e.g., Consol. Energy Design Inc. v. Princeton Club of New York*, 2014 WL 1202946, *3 (S.D.N.Y. March 24, 2014).

## CONCLUSION

      For the foregoing reasons, summary judgment should be granted in Sagi's favor on the question of liability, and the parties should proceed to the issue of damages.

Dated:    New York, New York
          October 20, 2014

                        Respectfully submitted,

                        MORGAN, LEWIS & BOCKIUS LLP

                        By:    */s/ John Dellaportas*
                             John Dellaportas
                             Nicholas E. Schretzman
                             Mary C. Pennisi
                             101 Park Avenue
                             New York, New York 10178
                             *Attorneys for Plaintiff Sagi Genger*