UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAGI GENGER,

                    Plaintiff,

        - against -

ORLY GENGER,

                  Defendant.

Civ. No.:  14-5683 (KBF)

**ORLY GENGER'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION
FOR SUMMARY JUDGMENT DISMISSING ALL CLAIMS AGAINST HER
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF MATERIAL UNDISPUTED FACTS ............................................................... 3

ARGUMENT ................................................................................................................................... 3

I.      THE LEGAL STANDARD ON SUMMARY JUDGMENT ..................................... 3

II.     SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S
        FAVOR BECAUSE THE NOVEMBER DOCUMENT IS NOT
        SUPPORTED BY CONSIDERATION ....................................................................... 4

III.    SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S
        FAVOR BECAUSE THE NOVEMBER DOCUMENT AND THE
        DIVORCE STIPULATION ARE NOT "INTEGRATED" ...................................... 13

IV.     SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S
        FAVOR BECAUSE THE NOVEMBER DOCUMENT IS NOT
        ENFORCEABLE DUE TO A MUTUAL MATERIAL MISTAKE
        OF FACT .................................................................................................................. 16

V.      SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S
        FAVOR BECAUSE SAGI CANNOT ENFORCE THE
        NOVEMBER DOCUMENT BECAUSE HE DID NOT GIVE
        ORLY AN OPPORTUNITY TO DEFEND BEFORE PAYING
        DALIA'S DEMAND FOR $200,000 ........................................................................ 18

VI.     SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S
        FAVOR BECAUSE SAGI CANNOT ESTABLISH HIS
        EQUITABLE CLAIM FOR PROMISSORY ESTOPPEL ...................................... 21

CONCLUSION .............................................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)................................................................................................4

Ballard v. Parkstone Energy, LLC,
  664 F.Supp.2d 325 (S.D.N.Y. 2009)......................................................................20

Beitner v. Becker,
  34 A.D.3d 406 (2d Dept. 2006) ..............................................................................4

Big East Entertainment, Inc. v. Zomba Enterprises, Inc.,
  453 F. Supp.2d 788 (S.D.N.Y. 2006)......................................................................14

BWA Corp. v. Alltrans Exp. U.S.A., Inc.,
  112 A.D.2d 850 (1st Dept. 1985)............................................................................13

Carvel Corp. v. Diversified Management Group, Inc.,
  930 F.2d 228 (2d Cir. 1990)....................................................................................13

Chase Manhattan Bank v. 264 Water St. Assocs.,
  222 A.D.2d 229 (1st Dept. 1995)......................................................................18, 20

Commander Oil Corp. v. Advance Food Service Equip.,
  991 F.2d 49 (2d Cir. 1993)......................................................................................13

Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust,
  74 A.D.3d 32 (1st Dept. 2010)..........................................................................19, 20

Enh, Inc. v. International Diffusion SRL,
  97 Civ. 3202 (LAP), 1997 U.S. Dist. LEXIS 7665 (S.D.N.Y. May 30, 1997)........22

French v. New York State Dep't of Educ.,
  476 Fed. Appx. 468 (2d Cir. 2011).........................................................................22

General Electric Co. v. Inter-America Marketing Systems, Inc.,
  220 A.D.2d 307 (1st Dept. 1995)..............................................................................9

Giuffre Hyundai, Ltd. v. Hyundai Motor Am.,
  756 F.3d 204 (2d Cir. 2014)......................................................................................3

ICN Pharmaceuticals, Inc. v. Bristol-Myers Co.,
  245 A.D.2d 182 (1st Dept. 1997)...........................................................................6, 9

In re Estate of Camac,
  2 Misc.3d 894 (N.Y. Sur. Ct. 2004).......................................................................12

In re Estate of Concetta Ciadiello,
    2007 N.Y. Misc. LEXIS 2326 (N.Y. Sur. Ct. 2007)................................................................12

Jeffreys v. City of New York,
    426 F.3d 549 (2d Cir. 2005).......................................................................................4, 15

Kimco of New York, Inc. v. Devon,
    163 A.D.2d 573 (2d Dept. 1990) ....................................................................................9

Lampros v. Banco Do Brasil, S.A.,
    2013 U.S. App. LEXIS 22316 (2d Cir. Nov. 4, 2013)............................................................21

Madeira v. United Talmudical Acad. of Kiryas Yoel,
    351 F.Supp.2d 162 (S.D.N.Y. 2004)............................................................................6, 9

McRay v. Citrin,
    270 A.D.2d 191 (1st Dept. 2000)...................................................................................12

Nobel Insurance Co. v. Hudson Iron Works, Inc.,
    51 F. Supp.2d 408 (S.D.N.Y. 1999)...........................................................................14, 15

Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates,
    50 A.D.2d 226 (1st Dept. 1975)...............................................................................18, 20

Pershall v. Elliott,
    249 N.Y. 183 (1928) ...............................................................................................13

Precision Instrument Mfg. Co. v. Automotive Maint. Machinery Co.,
    324 U.S. 806 (1945)................................................................................................23

Princeton Club of New York, 13 Civ. 8747 (KBF), 2014 U.S. Dist. LEXIS 38560
    (S.D.N.Y. March 24, 2014)........................................................................................21

Readco. Inc. v. Marine Midland Bank,
    81 F.3d 295 (2d Cir. 1996).........................................................................................21

Republic Insurance Co. v. Nobel Insurance Co.,
    2 F. Supp.2d 548 (S.D.N.Y. 1998) ...............................................................................14

Rodriguez v. Mower,
    56 A.D.3d 857 (3d Dept. 2008) ...............................................................................16, 17

Rose v. Elias,
    177 A.D.2d 415 (1st Dept. 1991)...................................................................................12

TPR Investment Associates v. Pedowitz & Meister LLP,
    2014 U.S. Dist. LEXIS 67116 (S.D.N.Y. May 15, 2014)..........................................................8

TR Investors, LLC v. Genger,
    2010 WL 2901704 (Del. Ch. July 23, 2010)........................................................................6, 18

TR Investors, LLC v. Genger,
    2010 WL 3279385 (Del. Ch. August 9, 2010)........................................................................6

United States v. Hardwick,
    523 F.3d 94 (2d Cir. 2008)........................................................................................................4

United States v. Williams,
    02-CR-1372 (RPP), 2014 U.S. Dist. LEXIS 97367 (S.D.N.Y. July 17, 2014) ......................17

Vasquez v. Herald Association Inc.,
    186 A.D.2d 467 (1st Dept. 1992)..............................................................................................9

Von Bing v. Mangione,
    309 A.D.2d 1038 (3d Dept. 2003) ............................................................................................5

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 814 (7th Ed. 2000) ........................................................................4, 16

Fed. R. Civ. P. 56(a) ..........................................................................................................................3

## PRELIMINARY STATEMENT

For years, Sagi Genger ("Sagi") and Dalia Genger ("Dalia") having been doing whatever they can to pauperize Orly Genger ("Orly"), Sagi's younger sister. This lawsuit, however, is a particularly distasteful attempt. Sagi contends Orly must now pay him half of any monies demanded by Dalia, because Orly's 1993 Trust ("Orly Trust") "received" and "benefited from" certain Trans-Resources, Inc. ("TRI") shares that TPR Investments Associates, Inc. ("TPR") gave the Orly Trust at the time Dalia and Arie Genger ("Arie") divorced. For years, however, Sagi (with Dalia's support) has taken the exact opposite position. Sagi has consistently argued – to this Court, to the New York State Courts, and to the Delaware Courts – that any purported TRI share transfer from TPR to the Orly Trust was ineffective, that the Orly Trust never received any shares, and that TPR (which is controlled by Sagi) continued to own those shares.

Sagi's efforts have been successful for him (and a nightmare for Orly). It is now established, including in a recent decision by Judge Keenan, that TPR owned all rights to the TRI Shares at issue, until TPR chose to sell them for $10.3 million in August 2008. It is TPR (i.e., Sagi) that has that $10.3 million, by Order of this Court. Orly and the Orly Trust have none of the shares, and none of the proceeds.

Apparently, this is not enough for Sagi. Having obtained $10.3 million by arguing that the Orly Trust never received those shares, he now argues that the Orly Trust's receipt of those same shares is "consideration" requiring Orly to indemnify Sagi. Thankfully, the undisputed facts show that Sagi's latest machination is legally flawed, and that his complaint should be dismissed on summary judgment for several independent reasons.

Sagi's claim for breach of contract is factually and legally flawed because Orly's purported November 10, 2004 agreement to indemnify Sagi (the "November Document") lacks consideration.   Sagi contends the November Document is supported by two kinds of consideration: (i) the Orly Trust's (and Sagi Trust's) receipt of certain shares in Trans-Resources, Inc. (the "TRI Shares") as part of the Divorce Stipulation (defined below), and (ii) love, affection, and the end to parental strife.   Operative Compl. ¶ 8 (Leinbach Decl., Ex. 1).   Sagi is twice wrong.

As to the TRI Shares, Sagi is judicially estopped from claiming they were transferred to either trust.   As to the Divorce, any attempt to claim it as consideration falls under the plain language of the Divorce Stipulation between Arie and Dalia.   At the time Dalia signed the Divorce Stipulation – which is binding on Dalia and her heirs "IN ALL CIRCUMSTANCES" "as of October 26, 2004" – she knew two things: (i) the Divorce Stipulation had an "Entire Understanding" provision which foreclosed any reliance on oral promises, and (ii) that the only written promise of support was exclusively Sagi's.   Indeed, a "promise" document expressly binding both Sagi and Orly was drafted, but never signed. Accordingly, neither Dalia nor Sagi can reasonably claim that an Orly promise to pay was a condition of the divorce.   Clinching the matter, it is settled that love and affection (especially between a child and a parent) does not constitute consideration as a matter of New York law. See Argument, Points II and III.   In addition, under well-settled law, Sagi is barred from seeking indemnification because he failed to provide Orly with notice and an opportunity to defend before paying Dalia.   See Argument, Point V.

Sagi's breach of contract claim and promissory estoppel claims also fail based on a mutual mistake of fact.   Any agreement reached in 2004 was premised on the Genger family

belief that Orly and Sagi were being treated equally in the divorce, with each one getting equivalent amounts of TRI shares. By the time of Dalia's "demand" in 2014, the transfers had been determined to be void <u>ab</u> <u>initio</u>, with Sagi (via TPR) obtaining all the value – and Orly none. Given this, the November Document is subject to rescission and unenforceable by Sagi. <u>See</u> Argument, Point IV.

Sagi's promissory estoppel claim also fails because it requires reasonable and justifiable reliance upon a promise. Here, Sagi could not possibly have reasonably relied on Orly's supposed 2004 promise when he paid Dalia in 2014 given his (and Dalia's) past actions and prior court rulings. Nor, given Sagi's unclean hands, is he entitled to any equitable relief. <u>See</u> Argument, Point VI.

For each and every one of these reasons, Orly's motion for summary judgment should be granted, and Sagi's complaint dismissed in its entirety.

**STATEMENT OF MATERIAL UNDISPUTED FACTS**

The facts supporting summary judgment are set forth in the accompanying Statement of Material Undisputed Facts, incorporated herein by reference.

**ARGUMENT**

**I.    THE LEGAL STANDARD ON SUMMARY JUDGMENT**

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Giuffre Hyundai, Ltd. v. Hyundai Motor Am.</u>, 756 F.3d 204, 208 (2d Cir. 2014) (same). "By its very terms, this standard provides that the mere

3

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) (italics emphases in original). In this regard:

> the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff. To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation. At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quotes and citations omitted) (underlined emphasis added) (italics emphasis in original).

Here, as set forth below, Sagi's breach of contract and promissory estoppel claims fail as a matter of law and undisputed material fact. As a result, Orly's motion for summary judgment, dismissing Sagi's Operative Complaint, should be granted.

## II.   SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S FAVOR BECAUSE THE NOVEMBER DOCUMENT IS NOT SUPPORTED BY CONSIDERATION

"All contracts must be supported by consideration." Beitner v. Becker, 34 A.D.3d 406, 407 (2d Dept. 2006). As a matter of law, consideration is bargained-for; it is a thing of value "received from a promisor to a promisee." Black's Law Dictionary (2000) at 245; United States v. Hardwick, 523 F.3d 94, 100 (2d Cir. 2008) ("[C]onsideration retains its contract law meaning of a bargained for exchange.") (citation omitted); Von Bing v. Mangione, 309 A.D.2d

1038, 1040 (3d Dept. 2003) ("[C]onsideration 'consists of either a benefit to the promisor or a detriment to the promisee' … which has been bargained for by the parties to the contract.") (citations omitted). Here, the record before the Court clearly establishes that there is no valid consideration for either of the two documents upon which Sagi relies.

The November Document does not identify any consideration between Orly and Sagi. November Document (Operative Compl., Ex. B) (Leinbach Decl., Ex. 1). Sagi attempts to correct this flaw by alleging in the Operative Complaint that both the November Document and Sagi Promise Document were supported by the following consideration: (i) Orly's "receipt of those [TRI] shares"; and (ii) "other valuable consideration." Operative Complaint ¶ 8; see also Sagi Br. at 16 [Docket No. 16] ("In consideration for Orly's promise to reimburse Sagi for 50% of monies paid to Dalia under the Oct. 30, 2004 Promise, Orly received an economic benefit from her mother's marital rights in the TRI shares. Orly also received an emotional and psychological benefit in helping to bring about an end [sic] her parents' bitter divorce battle.") Sagi's attempt to create consideration where none exists fails for several reasons.

*First*, the November Document is between Sagi and Orly. November Document (Leinbach Decl., Ex. 1). As set forth above, Sagi does not even allege he provided any consideration of any kind to Orly for the November Document. The shares were not Sagi's shares. The divorce was not Sagi's divorce. Thus, there is no consideration between them.

*Second*, Orly's receipt of TRI shares cannot serve as consideration for the November Document (or the October 30, 2004 Sagi Promise Document) because Sagi has repeatedly acted, and argued to the courts including this one, that neither Orly nor the Orly Trust ever received any TRI shares. Having done so, Sagi cannot now argue that Orly or the Orly

Trust "received" TRI shares.  See ICN Pharmaceuticals, Inc. v. Bristol-Myers Co., 245 A.D.2d

182, 186 (1st Dept. 1997); Madeira v. United Talmudical Acad. of Kiryas Yoel, 351 F.Supp.2d

162 (S.D.N.Y. 2004) (dismissing complaint on summary judgment, and holding plaintiff was

judicially estopped from alleging the landowner owned the property for purposes of establishing

liability, as plaintiff had previously stipulated in a judicial proceeding that the developer owned

the property).

On August 22, 2008, TPR (controlled by Sagi) entered into the Side Letter

Agreement, which purported to sell the Orly Trust's TRI shares to the Trump Group.  Side Letter

Agreement (Leinbach Decl., Ex. 35).  Then in July and August 2010, the Delaware Chancery

Court ruled that the TRI Share transfer to the Orly Trust was void ab initio and, as a result, the

Orly Trust TRI Shares had reverted to TPR.  See TR Investors, LLC v. Genger, 2010 WL

2901704, *1, *19 (Del. Ch. July 23, 2010); TR Investors, LLC v. Genger, 2010 WL 3279385, *3

(Del. Ch. August 9, 2010).  Sagi provided testimony in the Delaware Chancery Court case

supporting TPR's position that the transfer of shares to the Orly Trust was void and the shares

belonged to TPR to sell.  See TR Investors, LLC v. Genger, 2010 WL 2901704.

Having obtained a ruling that TPR (controlled by Sagi) owned the TRI Shares that

were meant to be transferred to the Orly Trust, TPR has argued to numerous courts, from as far

back as August 2010, that TPR – and not the Orly Trust – was the owner of those TRI shares:

> Orly Genger does not have standing to sue in connection with the
> TRI shares because Vice Chancellor Strine of the Chancery Court
> of the State of Delaware has recently ruled that the shares at issue
> belong to TPR Investment Associates, Inc., not the Orly Genger
> 1993 Trust.

Sagi 8/25/10 Answer, First Affirmative Defense (Leinbach Decl., Ex. 5).

In August 2013, Sagi (for TPR) and Dalia (for the Orly Trust) entered into a "So-Ordered" Delaware Stipulation stipulating that

> the [2004 Divorce Stipulation] transfers were void and the stock reverted to TPR, and ... the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the [Delaware Chancery] Court's determinations and findings in the 3994 Action.

So-Ordered Delaware Stipulation at 1-2 (Leinbach Decl., Ex. 44).

In November 2013, TPR (controlled by Sagi) commenced an action in this Court (Keenan, J.) contending that, based on the So-Ordered Delaware Stipulation, there were now no remaining factual issues – TPR owned the TRI shares that were supposed to have been transferred to Orly and, as a result, it was entitled to the proceeds of the sale of those Orly Trust TRI Shares:

> TPR's claim could not be more straightforward.  TPR once owned 1,102.8 shares of TRI.  TPR sold those shares for $10.3 million. The courts have now confirmed that TPR owned and had the right to sell those TRI shares, which this Court previously held to be the "condition precedent" to disbursing the sale proceeds to TPR.  In short, everything which could be litigated has now been litigated, and so the time has come for the escrow agent to pay TPR.

TPR Reply Brief at 1 (Leinbach Decl., Ex. 47).  At oral argument on TPR's motion for summary judgment, TPR counsel John Dellaportas reiterated that the Orly Trust shares had never belonged to the Orly Trust, but instead, were TPR's property:

> They also said that Chancellor Strine's ruling, paragraph 2, speaks only as the buyer and not the seller.  Absolutely incorrect.  What Chancellor Strine ruled in paragraph 2 was, "The Trump Group, having closed on the purchase of the so-called Orly Trust shares" -- here's the important part -- "pursuant to and under the terms of the side letter agreement between TPR and the Trump Group."

> That's the ruling.   The side letter agreement is in the record.
> That's a contract whereby we [TPR] sold those shares to them.
> Exactly the ruling your Honor said we [TPR] needed to get in
> order to get our proceeds.
>
> We've gotten the ruling that the Court asked us to get.  We [TPR]
> would now like our proceeds.  Thank you very much, your Honor.

4/29/14 Hearing Tr. at 34:3-16 (TPR Counsel Dellaportas) (Leinbach Decl., Ex. 48).  At that

same oral argument, Dalia counsel stated:  "We [Dalia] don't object if this Court would direct

the escrow[ed millions] be given to TPR." Id. at 13.

Importantly, before Judge Keenan, TPR drew a sharp distinction between money

damage claims and money paid for the shares.  TPR Moving Brief at 3 ("That is not to say Orly

loses her day in Court . . . . Orly remains free to pursue her money damages, such as they are, in

the New York Supreme Court.").[1]

Based on TPR/Sagi and Dalia's arguments, this Court (Keenan, J.) found that

TPR was "entitled to the Proceeds it received from the Trump Group *in consideration of* those

[Orly Trust] shares."  See TPR Investment Associates v. Pedowitz & Meister LLP, 2014 U.S.

Dist. LEXIS 67116, *15 (S.D.N.Y. May 15, 2014) (emphasis added); id. at *17 ("Because the

Trump Group is now the undisputed owner of the Orly Trust Shares, TPR is entitled to the

Proceeds paid by the Trump Group for those shares.").  That same day, TPR was wired the $10.3

million in proceeds.  (Leinbach Decl., Ex. 50).  Sagi and Dalia cannot have it both ways.  Having

---

[1]   In July 2010, Orly and Arie commenced a New York state court action seeking, among other things, causes of
action for money damages and equitable claims arising from Sagi and TPR's sale of the TRI shares at issue.  By
Decision and Order dated July 24, 2014, the New York Supreme Court, Appellate Division, reversed the trial
court's decision, in part, dismissing Orly and the Orly Trust's claims for unjust enrichment and breach of
fiduciary duty against TPR and Sagi.  Orly and Arie have moved for reargument of the Appellate Division's July
24, 2014 Decision and Order or for leave to appeal the decision to the New York Court of Appeals.  Orly and
Arie's motions are currently *sub judice* before the Appellate Division.

successfully claimed in other courts (Delaware Chancery Court, New York Supreme Court, and this Court) that the TRI Shares are not, and have never been, an actual asset of the Orly Trust, it cannot properly claim that Orly "received" shares of TRI.

The doctrine of judicial estoppel or estoppel against contrary statements, "precludes a party from framing his pleadings in a manner inconsistent with a position taken in a prior judicial proceeding." Kimco of New York, Inc. v. Devon, 163 A.D.2d 573, 574 (2d Dept. 1990) (barring defendant under the doctrine of inconsistent positions from claiming that an option contract was invalid after petitioning the Surrogate's Court to allow defendant to buy property by exercising the option in a prior proceeding); ICN Pharmaceuticals, Inc. v. Bristol-Myers Co., 245 A.D.2d 182, 186 (1st Dept. 1997) (holding that defendant was bound by the doctrine of judicial estoppel from taking a position before the New York County Supreme Court that was inconstant from a position taken in a prior arbitration); General Electric Co. v. Inter-America Marketing Systems, Inc., 220 A.D.2d 307 (1st Dept. 1995) ("The IAS Court properly invoked the doctrine of judicial estoppel to preclude those counterclaims…since defendant successfully advanced the diametrically opposite position at the trial of plaintiff's claims."); Vasquez v. Herald Association Inc., 186 A.D.2d 467, 469 (1st Dept. 1992) ("the IAS court correctly estopped [the party from taking a position that] was diametrically opposite to that taken in earlier litigation."); Madeira, 351 F.Supp.2d 162 (dismissing complaint on summary judgment, and holding plaintiff was judicially estopped from alleging the landowner owned the property for purposes of establishing liability, as plaintiff had previously stipulated in a judicial proceeding that the developer owned the property).

As detailed above, Sagi has repeatedly and successfully argued that the transfer of TRI shares was void ab initio and, as a result, the TRI shares at issue belonged to TPR. Indeed,

Sagi even argued to this Court that Orly could not challenge the fact that TPR owned the TRI

shares at issue, because it had already been decided:

> Accordingly, TPR requires an Order from this Court compelling
> the escrow agent, defendant Pedowitz & Meister, to release the
> [$10.3 million in proceeds from the sale of the Orly Trust TRI
> shares] to it.  TPR seeks no other relief in this case.  As these
> matters have already been fully litigated, application of basic
> principles of full faith and credit, res judicata, collateral estoppel,
> and judicial estoppel all ought to prevent their relitigation in this or
> other forums.

TPR Moving Brief at 3 (Leinbach Decl., Ex. 46).  This Court should take Sagi at his word.

Because the Orly and Sagi Trusts never received any TRI Shares, those shares cannot be

"consideration" for the Sagi Promise Document or November Document.

*Third*, even if Sagi could properly "take it all back" (he cannot), the Orly Trust

TRI Shares could not serve as consideration because they already had been transferred <u>before</u> the

November Document was executed.  The November Document was not created or executed until

<u>after</u> the Divorce Stipulation was signed "as of October 26, 2004."  <u>See</u> Parnes Aff. ¶ 8

(Leinbach Decl., Ex. 53).  By November 10, 2004, the contemplated transfer of Orly Trust TRI

Shares was already a legal *fait accompli*.  In this regard, the Divorce Stipulation fully set out the

transfer of the TRI Shares to the Orly and Sagi Trusts, including the fact that "following the

foregoing transfers of the TRI Stock, [Dalia] will have no ownership interest in TRI."  Divorce

Stipulation, Art. II(9) (Leinbach Decl., Ex. 12).

Moreover, in entering into the Divorce Stipulation "as of October 26, 2004,"

Dalia expressly agreed that "SHE UNDERSTANDS THAT THIS AGREEMENT WILL BE

BINDING ON … HER IN ALL CIRCUMSTANCES."  Divorce Stipulation at p. 56 (all caps in

original).  Equally bound were Dalia's heirs, Sagi and Orly.  Id. at p. 51.  As the contemplated

transfer of the TRI Shares to the Orly Trust had already occurred and was legally binding "IN

ALL CIRCUMSTANCES" it cannot be consideration for Orly's purported acceptance of an

indemnification obligation on November 10, 2004.

Nor can Sagi's convenient claim that Orly orally agreed to indemnify Dalia on

October 30, 2004 survive legal scrutiny in light of the "Entire Understanding" Clause in the

Divorce Stipulation.  In the Divorce Stipulation, Dalia agreed that:

### ENTIRE UNDERSTANDING

> This Agreement contains the entire understanding of the parties
> who hereby acknowledge that between them there have been and
> are no representations, warranties, covenants or undertakings
> (whether written or oral, express or implied) with respect to the
> subject matter hereof including, without limitation, all rights or
> claims arising at law, in equity or pursuant to the parties' marital
> relationship other than those expressly set forth herein or in the
> transaction contemplated hereby or entered into concurrently
> herewith.

Divorce Stipulation, p. 53 (Leinbach Decl. Ex. 12).  Thus, on October 30, 2004, when she signed

the Divorce Stipulation, Dalia knew that there was no "clawback" right within it, and that Orly

had signed no agreement concurrently with the Divorce Stipulation.  Yet, knowing all this, Dalia

signed the Divorce Stipulation and accepted its Entire Agreement clause.  Having done so, Dalia

is legally precluded from claiming that Orly's indemnification was part of the consideration for

her divorce.

*Fourth*, the November Document is not supported by "other valuable

consideration."  Complaint ¶ 8.  In his prior iteration of the Complaint, Sagi claimed the "other

consideration" referenced was "most particularly their strong desire to bring an end to their

parent's bitter divorce case." Prior Complaint ¶ 8 [Case No. 14-1006, Docket No. 2]. However, Orly's desire to end the divorce could not serve as consideration because by November 2004, the Divorce Stipulation – the document that actually "resolve[d] and settle[d] all issues in that [divorce] action" (Divorce Stipulation at p. 1) – already had been signed by Arie and Dalia, and was binding upon them. Id. at p. 56 (Leinbach Decl., Ex. 12). It was this Divorce Stipulation that (i) constituted the "Entire Agreement" ending the divorce action; (ii) received the Court's approval; and (iii) led to the end of the parents' divorce case.

*Further*, it is well-settled New York law that love and affection (or the "emotional and psychological benefit" derived there from) does not constitute consideration. "Services that are usually rendered by family members…out of love and affection, or without expectation of compensation, are presumed to have been rendered gratuitously and do not constitute consideration…unless the presumption is overcome by convincing proof...to pay for specified services that were performed in exchange for the promise." In re Estate of Concetta Ciadiello, 2007 N.Y. Misc. LEXIS 2326, *6 (N.Y. Sur. Ct. 2007); McRay v. Citrin, 270 A.D.2d 191, 191 (1st Dept. 2000) (where "[t]he sole consideration given to support defendant's promise to pay plaintiff a yearly sum of money [was] plaintiff's promise of 'love and affection'" this "did not suffice as a predicate for enforcement of the executory agreement."); Rose v. Elias, 177 A.D.2d 415, 416 (1st Dept. 1991) (affirming trial court's ruling that love and affection are insufficient consideration); In re Estate of Camac, 2 Misc.3d 894, 898 (N.Y. Sur. Ct. 2004) ("'[l]ove and affection' (especially between a child and a parent) do not constitute consideration" (citation omitted)); see also Pershall v. Elliott, 249 N.Y. 183, 188 (1928) ("[a] previous moral obligation is insufficient as a consideration to support an action to enforce an executory contract") (citation omitted).

For each and every one of these independent reasons, the November Document is not supported by valid consideration and, as a result, Sagi's breach of contract claim should be dismissed.

**III.   SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S FAVOR BECAUSE THE NOVEMBER DOCUMENT AND THE DIVORCE STIPULATION ARE NOT "INTEGRATED"**

Sagi also contends that the Sagi Promise Document and November Document have consideration because they are "interrelated" with the Divorce Stipulation. (Sagi Opp. Br. at 17 [Docket No. 16]).   The record before the Court shows this claim to be unreasonable and unavailing.

When separate contracts form a single integrated transaction, they have certain indicia.  For example: (i) the agreements reference one another; (ii) the agreements are executed by the same parties; (iii) the agreements are executed for the same purpose; and (iv) the agreements are executed contemporaneously. See Commander Oil Corp. v. Advance Food Service Equip., 991 F.2d 49, 53 (2d Cir. 1993); Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 233 (2d Cir. 1990) ("instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together."); BWA Corp. v. Alltrans Exp. U.S.A., Inc., 112 A.D.2d 850, 852 (1st Dept. 1985) (same).  Further, courts may only treat separate agreements as part of a single integrated transaction "in the absence of anything to indicate a contrary intention." BWA Corp., 112 A.D.2d at 852; Big East Entertainment, Inc. v. Zomba Enterprises, Inc., 453 F. Supp.2d 788, 799 (S.D.N.Y. 2006) (two agreements not found to be interrelated because two agreements were not executed by the same parties and each agreement had a separate purpose; granting summary

judgment dismissing complaint); <u>Nobel Insurance Co. v. Hudson Iron Works, Inc.</u>, 51 F. Supp.2d 408, 413 (S.D.N.Y. 1999); documents do not form interrelated transaction where certain documents are "at best, inconclusive, unexecuted, one-sided documents to markedly alter the terms and plain meaning of" other agreements; granting summary judgment dismissing complaint); <u>Republic Insurance Co. v. Nobel Insurance Co.</u>, 2 F. Supp.2d 548, 548 (S.D.N.Y. 1998) (documents do not form interrelated transaction where " the plain and unambiguous terms of an executed contract is to be drastically altered by reference to letters that that do not even qualify as contracts in the own right"; granting summary judgment dismissing complaint).

Here, the November Document and Divorce Stipulation have none of the indicia of an interrelated transaction. *First*, the parties to the Divorce Stipulation (Dalia and Arie) and the November Document (Sagi and Orly) are completely different. Divorce Stipulation, p. 56; November Document (Leinbach Decl., Exs. 12, 1).

*Second*, the Divorce Stipulation and November Document were not executed contemporaneously. Indeed, it is undisputed that the November Document Sagi seeks to enforce did not even exist when the Divorce Stipulation was signed on October 30, 2004. Parnes Aff. ¶ 8; Divorce Stipulation, p. 56 (Leinbach Decl., Exs. 53, 12).

*Third*, the Divorce Stipulation makes no reference to the November Document (or the Sagi Promise Document) or any "clawback" right. Divorce Stipulation (Leinbach Decl., Ex. 12). Nor does the Sagi Promise Document reference the November Document or any obligation of any kind by Orly. Sagi Promise Document (Operative Compl., Ex. A) (Leinbach Decl., Ex. 1).

14

*Fourth*, the Divorce Stipulation and November Document's serve fundamentally different purposes. The Divorce Stipulation addresses the division of property associated with Arie and Dalia's divorce. Divorce Stipulation (Leinbach Decl., Ex. 12). Conversely, the November Document purports to require Orly (not a party to the Divorce Stipulation) to reimburse Sagi (not a party to the Divorce Stipulation) for future payments made to Dalia, but not Arie. November Document (Leinbach Decl., Ex. 1).

*Fifth*, the record "indicate[s] a contrary intention." Specifically, the plain and unambiguous terms of the Divorce Stipulation makes Sagi's contention that the November Document is integrated with the Divorce Stipulation entirely unreasonable. See Jeffreys, 426 F.3d at 554 (factfinder must be able to "reasonably find for plaintiff" for claim to survive summary judgment). Indeed, "the plain and unambiguous terms of" the Divorce Stipulation would "be drastically altered by reference to" the November Document. Nobel Insurance Co., 51 F. Supp.2d at 413.

Integration of the November Document is expressly prohibited by the "ENTIRE UNDERSTANDING" clause of the Divorce Stipulation, because the November Document is not "expressly referenced," was not "expressly contemplated by," and was not "entered concurrently with" the Divorce Stipulation. Divorce Stipulation, p. 53 (Leinbach Decl., Ex. 12). Any alleged oral promise that Orly and Sagi would provide for Dalia's living expenses from the proceeds of the TRI shares they received is both contrary to the "ENTIRE UNDERSTANDING" clause, as well as and Dalia's express representation to Arie in the Divorce Stipulation that, after the transfer of TRI shares to Arie and the two Trusts, Dalia would have no further interest in TRI. Id., p. 14 (Leinbach Decl., Ex. 12). Moreover, the provision that makes the Divorce Stipulation "BINDING UNDER ALL CIRCUMSTANCES" as of October 26, 2004 forecloses and makes

unreasonable any contention that the November Document was a necessary or integrated part of the Divorce Stipulation. Id., p. 56 (Leinbach Decl., Ex. 12).

Neither Sagi nor Dalia produced any draft of the Divorce Stipulation that included a Dalia Clawback. Nor did they produce contemporaneous documentary evidence that Arie agreed to either the November Document, or to any agreement that Orly would provide for Dalia's living expenses. See Statement of Undisputed Material Facts at ¶¶ 15-20, 55-59. Likewise, when Sagi and Orly jointly subpoenaed Arie's former divorce attorneys at Dentons to search its internal electronic files for emails between Arie's attorney, Sagi, Orly or Dalia attorney Carol Schepp, the resulting search did not yield a single email between Sagi and Arie concerning the November Document or a Dalia Clawback. See 10/15/14 Email From Dentons (Leinbach Decl., Ex. 24).

For each of these reasons, the November Document is not "integrated" with the Divorce Stipulation. For this reason too, the November Document fails for lack of consideration.

## IV.   SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S FAVOR BECAUSE THE NOVEMBER DOCUMENT IS NOT ENFORCEABLE DUE TO A MUTUAL MATERIAL MISTAKE OF FACT

A "mutual mistake of fact" is "a mistake that is shared and relied on by both parties to a contract." BLACK'S LAW DICTIONARY 814 (7th Ed. 2000). A contract based upon a material mutual mistake of fact is subject to rescission. Rodriguez v. Mower, 56 A.D.3d 857, 858 (3d Dept. 2008) (granting summary judgment on contract claim based on mutual mistake of fact); United States v. Williams, 02-CR-1372 (RPP), 2014 U.S. Dist. LEXIS 97367, *16 (S.D.N.Y. July 17, 2014) (voiding plea agreement based upon mutual mistake of fact).

> In order to obtain such relief [rescission], it must be shown that the mistake in question is mutual, substantial, material and exists at the time the contract is entered.  The effect of rescission is to declare the contract void from its inception and to put or restore the parties to status quo.

Rodriguez, 56 A.D.3d at 858; Williams, 2014 U.S. Dist. LEXIS 97367, at *16 (same).

Here, assuming *arguendo* the November Document is a valid contract (it is not, for the many reasons discussed), the November Document is still subject to rescission because it is based upon a mutual mistake of fact.

It is undisputed that when the Divorce Stipulation (and related Transfer Document) were executed Dalia, Sagi and Orly "each reasonably believed that the 2004 Transfers provided for in the Stipulation of Settlement were valid and enforceable."  Orly 9/20/11 Compl. ¶ 57; Sagi 4/25/13 Answer ¶ 57; see also Sagi 1/16/14 Dep. Tr. at 178:12-15 (Leinbach Decl., Exs. 32, 33, 14).  Under Sagi's theory of the case, the transfer of TRI shares from TPR to the Orly and Sagi Trusts was a material component of the November Document (as well as the Sagi Promise Document) that Dalia, Sagi and Orly relied upon.  Operative Complaint ¶¶ 8-9 (Leinbach Decl., Ex. 1).  Indeed, Sagi identifies Orly's "receiving" the TRI Shares as the supposed consideration for the November Document.  Id. ¶ 8.  The Sagi Promise Document expressly states that the promise Sagi made was based on his understanding that equal amounts of TRI Shares would be received by Orly and Sagi's respective trusts:

> This letter confirms our understanding with respect to certain payments that I am prepared to make to you in consideration of the following.  My sister Orly and I are benefiting by the receipt of a total of 794.40 shares of Transf-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for our benefit.  In reliance on this letter and in consideration of the trust's receipt of these shares and other consideration, you are giving up valuable

marital rights, and you desire further assurance that you will have sufficient funds to support your lifestyle.

If you, in your sole and absolute discretion, from time to time desire funds to support your lifestyle, you may request in writing that I make payment to you as provided in this letter.  Promptly upon receipt of this request, I will pay to you (1) an amount equal to all dividends, distributions, proceeds or other payments attributable to 794.40 shares of TRI (adjusted for any splits or similar action) that have previously been paid to Orly, me or any trust for the benefit of either of us, less any amounts previously paid to you pursuant to this letter, or (2) any lesser amount indicated in your request.

Sagi Promise Document (Leinbach Decl., Ex. 1) (emphases added).

That equal receipt of TRI Shares benefiting both Sagi and Orly never happened. Rather, the transfers were determined to be void <u>ab</u> <u>initio</u> and only Sagi benefited.  <u>TR Investors, LLC v. Genger</u>, 2010 WL 2901704 (Del. Ch. July 23, 2010); Sagi 8/25/10 Answer, First Affirmative Defense (Leinbach Decl., Exs. 39, 5).  Under the principle of mutual mistake of fact, the November Document is subject to rescission and, as a result, Sagi's breach of contract claim fails as a matter of law.

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED IN ORLY'S FAVOR BECAUSE SAGI CANNOT ENFORCE THE NOVEMBER DOCUMENT BECAUSE HE DID NOT GIVE ORLY AN OPPORTUNITY <u>TO DEFEND BEFORE PAYING DALIA'S DEMAND FOR $200,000</u>

Under New York law, an indemnitor cannot seek reimbursement from an indemnitee unless the indemnitor first notifies the indemnitee of a potentially covered claim and gives it an opportunity to defend.  <u>See</u> <u>Chase Manhattan Bank v. 264 Water St. Assocs.</u>, 222 A.D.2d 229, 231 (1st Dept. 1995) (one who "fails to notify an indemnitor about an impending settlement proceeds at his own risk"); <u>Perkins & Will Partnership v. Syska & Hennessy &</u>

Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975), aff'd on other grounds, 41 N.Y.2d 1045 (1977).  "[I]t is well established under New York law that, where an indemnitor does not receive notice of an action settled by the indemnitee, 'in order to recover reimbursement [for the settlement], [the indemnitee] must establish that [it] would have been liable and that there was no good defense to the liability.'"  Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 74 A.D.3d 32, 39 (1st Dept. 2010) (citation omitted).[2]

Here, the November Document gives Orly an express right to defend.  November Document (Leinbach Decl., Ex. 1).  Yet, the record shows Sagi did not give Orly the required opportunity to defend.

On January 22, 2014, Dalia demanded $200,000 from Sagi.  Dalia Demand (Leinbach Decl., Ex. 56).  On January 23, 2014, Sagi informed Orly and her counsel of the existence of the Sagi Promise Document, the November Document, and of Dalia's purported demand.  5/29/14 Sagi Decl. ¶ 6; Harris Decl. ¶¶ 2-3 (Leinbach Decl., Ex. 62).  Sagi first provided Orly counsel with a copy of Dalia Genger's written demand for $200,000 on January 29, 2014.  1/29/14 Email (Leinbach Decl., Ex. 56).  Eight days later on February 3, 2014, Sagi claims he made a check payable to Dalia in the amount of $200,000, which was cashed on February 6, 2014.  Sagi Check and Statement (Leinbach Decl., Ex. 61).

Between January 23, 2014 and February 3, 2014, Sagi did not inform Orly that Sagi was about to pay Dalia's purported demand under the Sagi Promise Document.  Orly Decl.

---

[2]   Even if an indemnity agreement does not contain a notice provision, "the implied covenant of good faith warrants reading into the contractual procedure a requirement that notice be given within a reasonable time so as to afford a meaningful opportunity of participation."  Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975).

¶ 10 (Leinbach Decl., Ex. 57).  Moreover, Sagi paid Dalia even though, during that same time period, Orly counsel informed Sagi counsel that it disputed the validity and enforceability of the Sagi Promise Document and November Document, and asked for the original documents in order to have them examined <u>before</u> Sagi paid Dalia. 1/24/14 Email (Leinbach Decl., Ex. 63); Harris Decl. ¶ 5 (Leinbach Decl., Ex. 62).  Sagi's payment to Dalia before informing Orly that he was paying Dalia (and in disregard of Orly's request that she be given time to examine the documents and consider the matter) prevented Orly from challenging the enforceability of the Sagi Promise Document, and resulted in a waiver of Sagi's indemnification claim as a matter of law.  <u>See</u> <u>Ballard v. Parkstone Energy, LLC</u>, 664 F.Supp.2d 325, 330-31 (S.D.N.Y. 2009) (holding that late notice resulted in waiver of buyer's indemnification claims).

Moreover, Orly had at least two valid defenses to the Sagi Promise Document that she could have raised to enforceability of the Sagi Promise Document.  *First*, Sagi was not required to pay Dalia under the Sagi Promise Document because that document fails for lack of consideration for many of the same reasons as the November Document.  <u>See</u> Argument, Points II, III.

*Second*, the Sagi Promise Document is subject to rescission based upon a mutual mistake of fact for the same reason as the November Document.  <u>See</u> Argument Point IV.

For each of these two reasons, Sagi is barred from seeking indemnification, as a matter of law.  <u>See</u>, <u>e.g.</u>, <u>264 Water St. Assocs.</u>, <u>supra</u>; <u>Tri-Links Inv. Trust</u>, <u>supra</u>.

**VI.    SUMMARY JUDGMENT SHOULD BE GRANTED IN**
**ORLY'S FAVOR BECAUSE SAGI CANNOT ESTABLISH**
**HIS EQUITABLE CLAIM FOR PROMISSORY ESTOPPEL**

"To make out a claim for promissory estoppel, a plaintiff must prove (1) a clear

and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee; and (3)

unconscionable injury to the relying party as a result of the reliance." Princeton Club of New

York, 13 Civ. 8747 (KBF), 2014 U.S. Dist. LEXIS 38560, *9 (S.D.N.Y. March 24, 2014)

(quoting Readco. Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)); Lampros v.

Banco Do Brasil, S.A., 2013 U.S. App. LEXIS 22316, *3 (2d Cir. Nov. 4, 2013) (promissory

estoppel claim fails in the absence of reasonable reliance).  Here, Sagi cannot establish that he

reasonably and foreseeably relied upon Orly's alleged promise in paying Dalia.

On February 6, 2014, when Sagi paid Dalia $200,000 he was already aware that

Orly disputed the validity and enforceability of the Sagi Promise Document and November

Document.  See 1/24/14 Email (Leinbach Decl., Ex. 63); Harris Decl. ¶ 5 (Leinbach Decl.,

Ex. 62).  Thus, Sagi could not have reasonably relied upon Orly's promise at the time he paid

Dalia.  Thus, Sagi's claim for promissory estoppel fails.

Sagi's effort to rely on an equitable claims such as promissory estoppel is

particularly inappropriate here, considering that Sagi, as President of TPR, promised to do all

that was necessary to effectuate the transfer of TRI shares to his sister.  Specifically the Transfer

Document states:

> In case, at any time hereinafter, any further action is necessary or
> desirable to carry out the purpose of this Letter Agreement, each of
> the parties hereto shall take or cause to be taken all necessary
> action, including, without limitation, the execution and delivery of
> such further instruments and documents which may be reasonably

21

requested by any party for such purpose or otherwise to complete or perfect the transactions contemplated hereby.

Transfer Agreement (Leinbach Decl., Ex. 31).

Instead of taking "any further action necessary to" effectuate the transfer of TRI shares, Sagi instead executed the Side Letter Agreement agreeing to sell the Orly Trust's TRI shares. Side Letter Agreement (Leinbach Decl., Ex. 35). Also in contravention of his duty to take "further" and "necessary" action, Sagi successfully argued to this Court that TPR – and not the Orly Trust – was the owner of the Orly Trust TRI shares that that TPR – and not the Orly Trust – should received the $10.3 million in proceeds for those shares. Under these circumstances, Sagi is foreclosed from seeking any equitable relief:

> A plaintiff need not have led a blameless life in all respects in order to invoke equitable relief, but cannot have engaged in underhanded behavior related to the matter in which he seeks the relief. On the other hand, with respect to that matter, conduct that falls short of what is criminal or tortious can transgress equitable standards. Id. Equity affords wide discretion to the court refusing to aid the "unclean litigant." The court is "not bound by any formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 246, 78 L. Ed. 293, 54 S. Ct. 146 (1933). For example, in Fratelli Lozza (USA) Inc. v. Lozza (USA), 789 F. Supp. 625, 636 (S.D.N.Y. 1992), the court denied the equitable remedy of rescission to a plaintiff that was itself in breach of the agreement on which its lawsuit rested. Acting on similar [*5] principles, the Court of Appeals in Bandes v. Harlow & Jones, Inc., 852 F.2d 661 (2d Cir. 1988) upheld the district court's determination that the former managers of an expropriated Nicaraguan company that had enjoyed state favoritism under a prior regime had unclean hands that barred them from laying claim to the entire interpleaded fund owed to the company. Id. at 668.

Enh, Inc. v. International Diffusion SRL, 97 Civ. 3202 (LAP), 1997 U.S. Dist. LEXIS 7665, 4-5 (S.D.N.Y. May 30, 1997); see also French v. New York State Dep't of Educ., 476 Fed. Appx.

468, 472 (2d Cir. 2011) (granting summary judgment because of plaintiff's unclean hands), and

quoting Precision Instrument Mfg. Co. v. Automotive Maint. Machinery Co., 324 U.S. 806, 814

(1945) (the doctrine of "[un]clean hands . . . closes the doors of a court of equity to one tainted

with inequitableness or bad faith relative to the matter in which he seeks relief."). Here, the

doors of equity should be shut tight against Sagi and Dalia's latest scheme.

## CONCLUSION

Orly Genger respectfully requests the Court (i) grant her motion for summary

judgment, dismissing the complaint with prejudice; and (ii) grant Orly such other and further

relief as the Court deems just and proper.

Dated:   New York, New York
   October 20, 2014

          ZEICHNER ELLMAN & KRAUSE LLP

      By: _____

        Yoav M. Griver
        Bryan D. Leinbach
        Attorneys for Defendant
         Orly Genger
        1211 Avenue of the Americas
        New York, New York 10036
        (212) 223-0400