UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAGI GENGER,<br><br>                              Plaintiff,<br><br>              - against -<br><br>ORLY GENGER,<br><br>                              Defendant. | Civ. No.:  14-5683 (KBF)<br><br>**DEFENDANT ORLY GENGER'S**<br>**COUNTERSTATEMENT OF**<br>**MATERIAL UNDISPUTED FACTS** |

Pursuant to Local Rule 56.1, defendant Orly Genger ("Orly") respectfully submits her Counterstatement of Undisputed Material Facts in opposition to plaintiff Sagi Genger's ("Sagi") summary judgment motion. This Counterstatement includes the facts set forth in Orly's Statement of Undisputed Facts [Docket No. 37] and supporting exhibits, filed in support of her Motion for Summary Judgment. *For the Court's ready reference, any additional facts included in the Counterstatement, but not in the Statement, are italicized.* Any additional exhibits are included in the Reply Declaration of Bryan D. Leinbach ("Reply Decl.") and begin at Exhibit 65.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     The Parties

1.     Orly is an accomplished artist.  See Various Published Reviews; Sagi 8/25/10 Ver. Answer ¶ 15 (Leinbach Decl., Exs. 3, 5).

2.     In 2004, Orly had little schooling or experience in business or finance. Orly 1/15/08 Ver. Compl. ¶ 1 (Leinbach Decl., Ex. 7).[1]   Rather, Orly reposed her trust,

---

[1]   Pursuant to New York Civil Practice Law and Rules § 105(u), a verified pleading is treated as a sworn affidavit under New York law.

confidence and reliance in her older brother, Sagi, who often provided business advice to her. Id.; Sagi 7/26/12 Dep. Tr. at 408:18-25, 468:8-470:15 (Leinbach Decl., Ex. 9).

        3.      Sagi is Orly's older brother.  Orly 1/15/08 Ver. Compl. ¶ 2; Sagi 2/22/08 Ver. Answer ¶ 2 (Leinbach Decl. Exs. 7, 8).  Sagi holds an MBA in finance from The Wharton School, and has years of practical experience as a businessman.  Orly 1/15/08 Ver. Compl. ¶ 2; Sagi 2/22/08 Ver. Answer ¶ 2.

        4.      Sagi is currently the President and/or CEO of TPR Investment Associates, Inc. ("TPR"), a closely held company founded by Sagi and Orly's father, Arie Genger ("Arie"). TPR Shareholders Agreement, Section 2.2; Sagi 8/25/10 Ver. Answer ¶ 9 (Leinbach Decl., Exs. 10, 5).[2]

        5.      *TPR – the company located in Sagi's house – is under Sagi's control.  He has so testified.  7/27/12 Sagi Dep. Tr. at 455:10-12 (Reply Decl., Exhibit 86) ("Q.  That's interesting, who would you consider to be under your control? A. TPR").  And, the Delaware and New York State courts have so found.  See 2/17/11 Decision and Order, Index No. 651089-2010 [Docket No. 64] at 13 (Feinman, J.) ("TPR [is] a shell company controlled by Sagi") (Reply Decl., Exhibit 87); TRI Investors, LLC v. Genger, 2010 WL 3279385, *1 (Del. Ch. Aug. 9, 2010) ("Sagi Genger controlled [TPR] by 2008.").*

---

[2] Sagi finds himself effectively limited to private companies because of an action the Securities and Exchange Commission brought against him.  Specifically, Sagi served as the Chief Financial Officer, and then Chief Operating Officer, of Lumenis, Ltd., a publicly traded company, from November 1999 to July 2003.  On or about April 26, 2006, the Securities and Exchange Commission commenced an action against Sagi, asserting among other things, that Sagi had Lumenis report millions of dollars in false revenue and profits on Lumenis' financial statements and press releases.  Also in April 2006, Sagi entered into a Consent Judgment permanently enjoining him and his agents from making materially false statements or omitting material facts in connection the sale of any securities, and barring him from serving as an officer or director of a publicly traded company for five years.  See SEC Consent Judgment (Leinbach Decl., Ex. 11).

6.      *Not only does Sagi control TPR, he owns it.  On August 8 2008, Dalia assigned all her ownership interest in TPR to Sagi.  See 8/8/08 Assignment and Assumption Agreement at 1 (Reply Decl., Exhibit 88).  At the present time, Sagi owns or controls all the TPR stock,[3] except for 10 shares of TPR stock (approximately 3% of the outstanding TPR shares), which Sagi sold to his mother-in-law, Rochelle Fang for $800,000 to $1,000,000.  See 4/2/12 Rochelle Fang Affidavit at ¶ 7 (Reply Decl., Exhibit 82); RPI Stock Purchase Agreement at 1 (Reply Decl., Exhibit 85).  Sagi manages and controls Rochelle Portfolio Inc.  See 8/22/11 Rochelle Fang Dep. Tr. at 11:18-25 (Reply Decl., Exhibit 83); 10/26/11 Rochelle Fang Dep. Tr. At 69:6-70:15 (Reply Decl., Exhibit 84).*

7.      *TPR has filed papers in attesting to the fact that "as of at least August 2008," Sagi has actual and apparent authority to represent TPR in its business affairs, and dispose of TPR's property.  TPR Counterclaim to Dalia Delaware Complaint ¶ 4 (Reply Decl., Ex. 68).*

8.      Dalia Genger ("Dalia") is Sagi and Orly's mother.  Orly 8/4/10 Ver. Compl. ¶ 8; Sagi 8/25/10 Ver. Answer ¶ 8 (Leinbach Decl., Exs. 4, 5).  Orly's and Sagi's father, Arie, and mother, Dalia, were married in Israel on July 23, 1967, and remained so until they were divorced in New York on October 26, 2004.  Orly 8/4/10 Ver. Compl. ¶ 16; Sagi 8/25/10 Ver. Answer ¶ 16; Divorce Stipulation, p. 1 (Leinbach Decl., Exs. 4, 5, 12).  Dalia is worth millions of dollars.  See Divorce Stipulation, p. 5; Final Arbitration Award, pp. 11, 16, 17; Sagi 5/20/13 Dep. Tr. at 578:19-579:15 (Leinbach Decl., Exs. 12, 13, 15).

---

[3]   *Sagi has testified that the Sagi Trust (whose beneficiary is Sagi) has been made the majority owner of TPR.  Sagi 1/16/14 Dep. Tr. at 234:17-19 (Leinbach Decl., Ex. 14).*

**B.**     **The Divorce Stipulation**

9.     As of October 26, 2004, Arie Genger and Dalia Genger were divorced. Complaint ¶ 8; Answer ¶ 8 (Leinbach Decl., Exs. 1, 2); Divorce Stipulation, p. 1 (Leinbach Decl., Ex. 12).

10.     As part of their divorce, Arie and Dalia executed a Stipulation of Settlement (the "Divorce Stipulation"). The Divorce Stipulation was fully executed on October 30, 2004, but expressly provides that it is "made as of October 26, 2004." Divorce Stipulation, pp. 1, 56-58 (Leinbach Decl., Ex. 12).

11.     Dalia Genger was represented by at least three law firms in connection with the divorce, and the negotiation and execution of the Divorce Stipulation – the Law Offices of Dominic Barbara; Goldman & Greenbaum, P.C.; and Carter Ledyard & Milburn, LLP. Divorce Stipulation, p. 44 (Leinbach Decl., Ex. 12).

12.     Arie Genger was represented by at least two law firms in connection with the divorce, and the negotiation and execution of the Divorce Stipulation – Sonnenschein Nath & Rosenthal LLP (now Dentons US LLP) and Blank Rome LLP. Divorce Stipulation, p. 44 (Leinbach Decl., Ex. 12).

13.     Sagi did not represent either Arie or Dalia in the divorce. Sagi 1/16/14 Dep. Tr. at 108:21-109:14 (Leinbach Decl., Ex. 14).

14.     Carol R. Schepp was Dalia's former attorney with Carter Ledyard & Milburn, LLP. Divorce Stipulation, pp. 44, 52-53, 56. Carol R. Schepp was involved with the negotiation and execution of the Divorce Stipulation. Sagi 3/20/14 Dep. Tr. at 14:21-15:11,

38:5-12, 39:9-12; Divorce Stipulation, pp. 44, 52-53, 56 (Leinbach Decl., Exs. 16, 12).  Mrs. Schepp has no documents concerning the October 30, 2004 document attached to the Operative Complaint as Exhibit A (the "Sagi Promise Document") or the November 10, 2004 document attached to the Operative Complaint as Exhibit B (the "November Document").  See Schepp Subpoena; Schepp Responses to Subpoena (Leinbach Decl., Exs. 17, 18).

15.     *On October 20, 2014, Louis Schepp, counsel for Carol Schepp, sent an email to Orly counsel confirming that Ms. Schepp "has no knowledge or recollection with regard to the document[s] [sic] enclosed especially their preparation, drafting or use." 10/20/14 Email With Attachments (Reply Decl., Ex. 69).  Mr. Schepp's October 20, 2014 email attached copies of the Sagi Promise Document and November Document. Id.*

16.     Marilyn B. Chinitz was Dalia's former attorney with the Law Offices of Dominic Barbara.  Chinitz Aff. ¶ 3; Divorce Stipulation, p. 44 (Leinbach Decl., Exs. 19, 12). Mrs. Chinitz had no documents concerning the Sagi Promise Document and November Document, and no knowledge of either document.  See Chinitz Subpoena; 9/24/14 Chinitz Letter; Chinitz Aff. ¶¶ 1-5 (Leinbach Decl., Exs. 20, 21, 19).

17.     Goldman & Greenbaum, P.C. were Dalia's former attorneys. 10/8/14 Greenbaum Letter; Divorce Stipulation, p. 44 (Leinbach Decl., Exs. 22, 12).  Goldman & Greenbaum, P.C. have no documents concerning the Sagi Promise Document and November Document, and no knowledge of either document.  See G&G Subpoena; 10/8/14 Greenbaum Letter (Leinbach Decl., Exs. 23, 22).  Any documents G&G had were picked up by Dalia.  See attachments to 10/8/14 Greenbaum Letter (Leinbach Decl., Ex. 22).

18.     Sonnenschein Nath & Rosenthal LLP (now Dentons US LLP) and Edward

Klimerman, a partner at the firm, were Arie's former attorneys.  Divorce Stipulation, pp. 44, 56 (Leinbach Decl., Ex. 12).   Edward Klimerman represented Arie in connection with the negotiation and execution of the Divorce Stipulation.  Sagi 3/20/14 Dep. Tr. at 38:5-16, 39-42:21; Divorce Stipulation, pp. 44, 52-53, 56 (Leinbach Decl., Exs. 16, 12).   In response to subpoenas, as narrowed by agreement of the parties, Dentons US LLP undertook a search of its internal emails defined by Sagi counsel as

> ...emails to/cc/from, on the one hand, Mr. Klimerman and/or his assistant, Deborah Klempf, and on the other hand, any of the following persons, Sagi Genger, Orly Genger, and/or Carter Ledyard (most likely Carol Robinson Scheff) concerning the October 30, 2004 Agreement, November 10, 2004 Agreement, or the subject matters covered therein (i.e., post-divorce financial support for Dalia by Sagi and/or Dalia), from August 1-December 1, 2004.

8/26/14 Email From Sagi Counsel (Leinbach Decl., Ex. 24).   Denton's search recovered no emails responsive to this search.  10/15/14 Email From Dentons (Leinbach Decl., Ex. 24).

19.    Dalia did not produce any emails or other communications between herself (or her lawyers) and Arie (or Arie's lawyers) prior to execution of the Divorce Stipulation concerning: (i) the Sagi Promise Document; (ii) the November Document; or (iii) any Dalia right to clawback any asset or amount distributed to her children pursuant to the Divorce Stipulation, or any reference to post-divorce financial support of Dalia by Sagi or Orly being a condition of the divorce (hereafter, a "Dalia Clawback").  See Dalia Subpoena; Dalia Response to Subpoena (Leinbach Decl., Exs. 25, 26).   The documents under Dalia's control include (or included) the G&G documents.  See attachments to 10/8/14 Greenbaum Letter (Leinbach Decl., Ex. 22).

20.    Sagi did not produce any emails or other communications between himself and Arie or Arie's lawyers prior to execution of the Divorce Stipulation concerning: (i) the Sagi

Promise Document; (ii) the November Document; or (iii) a Dalia Clawback.  See Demand for Sagi Documents; Sagi Production (Leinbach Decl., Exs. 27, 28).

21.    Neither Sagi nor Dalia produced any contemporaneous document showing that the Sagi Promise Document or the November Document was ever forwarded or provided to Arie (or his counsel) prior to the execution of the Divorce Stipulation.  (Leinbach Decl. ¶ 27 and Ex. 28).

22.    Neither Sagi nor Dalia produced any contemporaneous document showing that the Sagi Promise Document or the November Document was ever forwarded or provided to Orly prior to the execution of the Divorce Stipulation.  (Leinbach Decl. ¶ 27 and Ex. 28); *see also* 11/13/14 Orly Decl. ¶ 10 (Reply Decl., Ex. 80).

23.    Neither Sagi nor Dalia produced any contemporaneous document showing that a Dalia Clawback was discussed between Arie and Dalia (or any of their respective myriad counsel) prior to the execution of the Divorce Stipulation.  (Leinbach Decl. ¶ 27 and Ex. 28).

24.    Neither Sagi, nor Dalia, nor Arie[4] produced any drafts of the Divorce Stipulation that referenced the Sagi Promise Document, the November Document, or a Dalia Clawback.  (Leinbach Decl. ¶ 30).[5]

25.    *Arie's files from his divorce contain a draft divorce stipulation dated September 27, 2004 containing a Section 9(b)(iii), which provided:*

---

[4]  *Sagi never served Arie Genger with a subpoena in this action. (Reply Decl. ¶ 2)*

[5]  Dalia has claimed "privilege" over several drafts of the Divorce Stipulation and the Sagi Promise Document.  See S&W Dalia Privilege Log (Leinbach Decl., Ex. 29); Carter Ledyard Privilege Log (Leinbach Decl., Ex. 64).  By doing so, Dalia has acknowledged that these drafts were not shared with Arie.  See, e.g., Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993) (the "voluntary disclosure of work product to an adversary waives the privilege as to other parties").

> *Each of Sagi and Orly Genger and the trustee(s) of the*
> *aforementioned trusts will acknowledge in writing that he or she*
> *will promptly, upon request of Dalia Genger, pay to her an amount*
> *equal to 412.5 shares of TRI Stock (or such lesser number as she*
> *shall request), such value to be determined [as Sagi Genger, Orly*
> *Genger and Dalia Genger shall agree].*

*9/27/04 Draft Stipulation, p.13 (Reply Decl., Ex. 66).   Section 9(b)(iii) of the draft stipulation*

*only allows Dalia to seek an amount equal to 412.5 shares of TRI Stock – instead of the 794.40*

*shares of TRI stock referenced in the Sagi Promise Document.   Id.; Sagi Promise Document,*

*Operative Complaint, Ex. A (Leinbach Decl., Ex. 1).   The September 27, 2004 draft stipulation*

*further provides:*

> *Following the foregoing transfers of the TRI Stock, the Wife*
> *[Dalia] will have no ownership interest in TRI, subject to her*
> *rights as contemplated by Section 9(b)(iii).*

*9/27/04 Draft Stipulation, p. 14 (emphasis added) (Reply Decl., Ex. 66).*

26.     *Subsequent drafts of the divorce stipulations remove Section 9(b)(iii) from*

*the stipulation.   Specifically, a draft divorce stipulation dated October 13, 2004 no longer*

*contains a Section 9(b)(iii) at all.   10/13/04 Draft Stipulation, p. 13 (Reply Decl., Ex. 67).   The*

*October 13, 2004 drafts also removed the qualification from Dalia's continued interest in TRI*

*Stock, stating:*

> *Following the foregoing transfers of the TRI Stock, the Wife will*
> *have no ownership interest in TRI, ~~subject to her rights as~~*
> *~~contemplated by Section 9(b)(iii).~~*

*10/13/04 Draft Stipulation, p. 13 (Reply Decl., Ex. 67).*

27.     *The final Divorce Stipulation that Dalia and Arie signed does not contain*

*a Section 9(b)(iii).   Divorce Stipulation, pp. 12-14 (Leinbach Decl., Ex. 12).   In addition, the*

*final Divorce Stipulation states without reservation that "[f]ollowing the foregoing transfers of*

*the TRI Stock, the Wife will have no ownership interest in TRI."   Divorce Stipulation, p. 14*

*(Leinbach Decl., Ex. 12).*

28.     The Divorce Stipulation is 58 pages long (plus exhibits).   Divorce Stipulation (Leinbach Decl., Ex. 12).   It contains no reference to the Sagi Promise Document.   Id. It contains no reference to the November Document.   Id.   It contains no reference to any "Dalia Clawback."   Id.

29.     The Divorce Stipulation states:

> "HE OR SHE [Arie Genger or Dalia Genger] UNDERSTANDS THAT THIS AGREEMENT WILL BE BINDING ON HIM OR HER IN ALL CIRCUMSTANCES."

Divorce Stipulation, p. 56 (capitalization in original) (Leinbach Decl., Ex. 12).

30.     The Divorce Stipulation states it "shall be binding and obligatory upon the heirs, personal representatives, administrators, executors and assignees of the parties herein." Divorce Stipulation, p. 51 (Leinbach Decl., Ex. 12).

31.     The Divorce Stipulation contains an "Entire Understanding Clause," which states:

**ENTIRE UNDERSTANDING**

> This Agreement contains the entire understanding of the parties who hereby acknowledge that between them there have been and are no representations, warranties, covenants or undertakings (whether written or oral, express or implied) with respect to the subject matter hereof including, without limitation, all rights or claims arising at law, in equity or pursuant to the parties' marital

relationship <u>other than those expressly set forth herein or in the transaction contemplated hereby or entered into concurrently herewith</u>.

Divorce Stipulation, p. 53 (Leinbach Decl. Ex. 12).

     32.    The Divorce Stipulation contains a releases section, in which Dalia Genger broadly releases Arie Genger and his heirs:

> 2.  The Wife hereby remises, releases and forever discharges the Husband, the Husband's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, which the [Wife][6], the [Wife]'s heirs, executors, administrators, successors and assigns ever had or now has against the [Husband], for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all "separate property" and all "marital property" as those terms are defined in Section 236(B) of the Domestic Relations Law or arising out of the marital relationship, except for (a) any amounts that may be due pursuant to the audits referred to in Article XII and (b) any cause of action for Divorce, Annulment or Separation and any defenses thereto.

Divorce Stipulation, p. 34 (Leinbach Decl., Ex. 12).

     33.    The Divorce Stipulation expressly references other documents that were contemplated as being part of the Divorce Stipulation. For example, the Divorce Stipulation expressly refers to irrevocable proxies that the Orly Genger 1993 Trust and Sagi Genger 1993 Trust must execute concurrently with receiving TRI shares. Divorce Stipulation, pp. 13-14

---

[6]   In an obvious scrivener's error, the words "Husband" and "Wife" were mistakenly swapped three times in this paragraph IX(2) of the Divorce Stipulation. This error has been corrected in this memorandum and the corrected words marked by [brackets].

(Leinbach Decl., Ex. 12).

34.     *Because Orly would not be in New York on October 30, 2004, Edward Klimmerman was appointed as attorney-in-fact for Orly, so he could sign any documents on her behalf that required her signature that day.  Indemnity Agreement[7], Divorce Stipulation With Exhibits (Reply Decl., Ex. 65).  In this regard, on October 30, 2004, he signed an "Indemnity Agreement (SG/OG)" on Orly's behalf as my attorney-in-fact, which document is appended as the last attachment to the Divorce Stipulation.  Id.*

35.     *Sagi has never alleged the Divorce Stipulation is ambiguous.  See Operative Complaint at ¶ 8; Prior Complaint at ¶ 8 (Leinbach Decl., Exs. 1, 59).*

## C.     **The TRI Shares**

- ### **The Contemplated TRI Share Transfers to Arie and The Sagi and Orly Trusts**

36.     The Divorce Stipulation provides that TPR Investment Associates, Inc.'s ("TPR") 52.85% ownership interest in Trans-Resources, Inc. ("TRI")[8] be transferred (19.43% each) to the Orly Genger 1993 Trust (the "Orly Trust") and Sagi Genger 1993 Trusts (the "Sagi Trust"), with the remainder (13.99%) going to Arie.  Divorce Stipulation, pp. 12-14 (Leinbach Decl., Ex. 12).

37.     The Divorce Stipulation expressly states "[f]ollowing the foregoing transfers of the TRI Stock, the Wife will have no ownership interest in TRI." Divorce

---

[7]  *The Indemnity Agreement is the last six pages of the Divorce Stipulation with exhibits.  Divorce Stipulation With Exhibits (Reply Decl, Ex. 65).*

[8]  The remaining 47.15% was owned by Glenclova Investment Company and TR Investors, LLC, who were controlled by Jules Trump, Eddie Trump, and Mark Hirsch (collectively, the "Trump Group").

Stipulation, p. 14 (Leinbach Decl., Ex. 12).

38.     On October 26, 2004, pursuant to Art. II(9)(c) of the Divorce Stipulation, the TPR Board approved the transfer of the TRI shares.  See TPR Board Resolution (Leinbach Decl., Ex. 30).  The TPR Board Resolution does not reference the Sagi Promise Document, the November Document, or any Dalia Clawback.  Id.

39.     On October 30, 2004, pursuant to the TPR Board Resolution, TPR executed a letter agreement (the "Transfer Agreement") requiring TPR to transfer its TRI shares to the Orly Trust, Sagi Trust, and Arie on October 30, 2004.  Transfer Agreement (Leinbach Decl., Ex. 31).  The Transfer Agreement does not reference the Sagi Promise Document, the November Document, or any Dalia Clawback.  Transfer Agreement (Leinbach Decl., Ex. 31).

40.     As of October 26, 2004, and fully executed on October 30, 2004, and pursuant to Art. II, 9(a)(ii) of the Divorce Stipulation, the Orly Trust and Sagi Trust, by their Trustees, entered into voting proxy agreements.  These voting proxy agreements sought to provide Arie with the power to vote the Orly Trust and Sagi Trust TRI Shares during his lifetime. Voting Proxy Agreement (Leinbach Decl., Ex. 31).

41.     When the Divorce Stipulation and Transfer Document were executed all members of the Genger family (Arie, Dalia, Sagi and Orly) believed the transfers of the TRI Shares to Arie, the Orly Trust and Sagi Trust were valid and enforceable. Orly 9/20/11 Compl. ¶ 57; Sagi/TPR 4/25/13 Answer ¶ 57; Sagi 1/16/14 Dep. Tr. at 178:12-25 (Leinbach Decl., Exs. 32, 33, 14).

42.     As part of the divorce, Sagi Genger was appointed CEO of TPR.  TPR

Shareholders Agreement, Section 2.2 (Leinbach Decl., Ex. 10). Sagi promised to do all that was

necessary to effectuate the transfer of TRI shares. Specifically the Transfer Document, signed by

Sagi as TPR CEO states:

> In case, at any time hereinafter, any further action is necessary or
> desirable to carry out the purpose of this Letter Agreement, each of
> the parties hereto shall take or cause to be taken all necessary
> action, including, without limitation, the execution and delivery of
> such further instruments and documents which may be reasonably
> requested by any party for such purpose or otherwise to complete
> or perfect the transactions contemplated hereby.

Transfer Agreement (Leinbach Decl., Ex. 31).

- **TPR's Sale Of The Supposedly Transferred TRI Shares to the Trump Group**

43.     On August 22, 2008, Sagi, as President of TPR, and Rochelle Fang, as

Trustee of the Sagi Trust,[9] sold the Sagi Trust TRI Shares to the Trump Group for $26.7 million.

See Stock Purchase Agreement (Leinbach Decl., Ex. 34). Paragraph 10 of the Stock Purchase

Agreement states:

> 10. Valid Transfer. If at any time following the Closing Date, it is
> determined that Seller [the Sagi Trust] is not the record and
> beneficial owner of the Shares as of the date hereof by virtue of the
> transfer of the Shares to it by TPR being deemed to have been void
> or for any other reason, and that all right, title and interest in and to
> the Shares is held by TPR, . . . the parties hereby agree that (a) this
> Agreement and the transactions contemplated hereby shall be
> deemed to have been entered into and consummated with TPR, (b)
> the Purchasers shall retain all right, title and interest in and to the
> Shares as if purchased from TPR pursuant to this Agreement . . .

Id. ¶ 10.  Accord TRI Investors, LLC v. Genger, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010)

("That [Stock] Purchase Agreement included a provision indicating that, if the share transfer to

---

[9]   Rochelle Fang is Sagi's mother-in-law. Orly 9/20/11 Compl. ¶ 8; Sagi/TPR 4/25/13 Answer ¶ 8 (Leinbach Decl.,
      Exs. 32, 33).

the Sagi Trust were found void, then the share purchase would be between the Trump Group and

TPR, which Sagi Genger controlled by 2008.").

     44.     On August 22, 2008, Sagi, as President of TPR, sold the Arie TRI Shares

and the Orly Trust TRI Shares to the Trump Group, on condition that TPR – and not Arie or the

Orly Trust – be determined to be the record and beneficial owners of those TRI Shares;

> In connection with the transactions contemplated by the Purchase
> Agreement, if at any time following the Closing Date, it is
> determined that Arie Genger is not the record and beneficial owner
> of the 794.40 shares of Common Stock of the Company
> purportedly transferred to him by TPR in October, 2004 and/or that
> Orly Genger 1993 Trust is not the record and beneficial owner of
> the 1,102.80 shares of Common Stock of the Company purportedly
> transferred to such Trust by TPR in October, 2004, and that TPR is
> the record or beneficial owner of any such shares, in either or both
> cases by virtue of the transfer of such shares being deemed to have
> been void or for any reason (the shares being so affected being
> referred to herein as the "Affected Shares") then (a) upon the
> written request from the Purchasers, TPR shall promptly take all
> necessary action to effect the transfer of all Affected Shares . . . to
> the Purchasers [the Trump Group].

August 22, 2008 Side Letter Agreement (Leinbach Decl., Ex. 35). Sagi (via TPR) sold the Orly

Trust TRI Shares to the Trump Group for approximately $10.3 million. Id.; see also Sagi

1/17/14 Dep. Tr. at 478:10-23 (Leinbach Decl., Ex. 37). Pursuant to the Side Letter Agreement,

TPR would receive the approximately $10.3 million in proceeds from the sale of the Orly Trust

TRI Shares. Side Letter Agreement; Sagi 1/17/14 Dep. Tr. at 478:10-23 (Leinbach Decl., Exs.

35, 37).

     45.     TPR and the Sagi Trust later entered into a Release amongst themselves.

In that Release, TPR and the Sagi Trust stated, in pertinent part, as follows.

> WHEREAS, the prospective parties to the SPA specifically
> acknowledged that it is possible that the Trust might not be the

14

record and beneficial owner of the Shares by virtue of a prior of [sic] transfer of Shares to it by TPR Investment Associates, Inc., a Delaware corporation ("TPR") being deemed to have been void, and as such all the rights, title, and interest in and to the Shares are held by TPR, and therefore the parties have agreed that, in such case, the SPA will be deemed to have been entered into and consummated by TPR, in lieu of the Trust; and

* * *

2.   Upon surrender of such assets in the original value of $6,850,000 (the "Surrender") TPR hereby releases the Trust...

3.   TPR hereby relinquishes any and all rights it might have to the Remainder owed to the Trust from the various parties to the SPA...

Release (Leinbach Decl., Ex. 36).

46.      Pursuant to these documents, all signed by Sagi, if a Court determined the Divorce Stipulation transfer of TRI Shares was void, then it was TPR who owned all the TRI Shares and sold all the TRI Shares to the Trump Group.  See Stock Purchase Agreement, Side Letter Agreement, and Release (Leinbach Decl., Exs. 34, 35, 36).

- **The Court Decisions Finding the TRI Shares Were Never Transferred from TPR**

47.      On August 25, 2008, the Trump Group commenced a special limited *in rem* proceeding under Title 8, Section 225 of the Delaware Code against Arie to determine the composition of TRI's Board of Directors, titled TR Investors, LLC v. Genger, C.A. No. 3994-VCS (the "3994 Action").  1/2/13 Decision and Order at 5 (Leinbach Decl., Ex. 38).  Neither Orly nor the Orly Trust were parties to this Delaware action.  TR Investors, LLC v. Genger, C.A. No. 3994-VCS, 2010 Del. Ch. LEXIS 153, *1 (Del. Ch. July 23, 2010) (Leinbach Decl., Ex. 39).  Sagi Genger testified on behalf of the Trump Group.  See id., 2010 Del. Ch. LEXIS 153, *35, n.75 (citing Sagi testimony).

15

48.     On July 23, 2010, the Delaware Chancery Court rendered a decision in the 3994 Action (the "Merits Decision"), finding that, because Arie had failed to prove prior notice to the Trump Group before the transfer of TRI shares pursuant to the Divorce Stipulation and Transfer Agreement, the TRI Share transfers were void <u>ab</u> <u>initio</u> pursuant to the TRI Stockholders Agreement between TPR and the Trump Group and, as a result, the Orly Trust TRI Shares had reverted to TPR.  <u>See</u> <u>TR Investors, LLC</u>, 2010 Del. Ch. LEXIS 153, at *5; 1/2/13 Decision and Order at 5 (Leinbach Decl., Exs. 39, 38):

> In 2004, Genger caused TPR to transfer its shares in Trans-Resources, subject to an irrevocable proxy in his favor, to his children's trusts (the "2004 Transfers"), under a settlement in the contentious divorce between him and his wife. Because those trusts were not permitted transferees, the 2004 Transfers violated the terms of the Stockholders Agreement. <u>Under the terms of the Stockholders Agreement, that violation rendered the transfers ineffective</u> and gave the Trump Group the right to acquire the shares that were transferred.

<u>TR Investors, LLC</u>, 2010 Del. Ch. LEXIS 153, at *3 (emphasis added) (Leinbach Decl., Ex. 39); <u>see</u> <u>also</u> <u>id.</u>, at *67 ("Because the 2004 Transfers violated the Stockholders Agreement, Arie Genger and the Orly Trust have been found to not be the record or beneficial owners of the shares transferred to them.").  Despite these findings, the Chancery Court held that, because Orly and the Orly Trust were not properly before the Court, it would decline to issue an Order with regard to the Orly Trust TRI Shares.  <u>Id.</u>

49.     On August 9, 2010, the Delaware Chancery Court amended its July 23, 2010 decision in the 3994 Action finding that it could rule as to the Orly Trust TRI Shares.  The Chancery Court determined that the transfer of the Arie TRI Shares and Orly Trust TRI Shares pursuant to the Divorce Stipulation were void for the same reason and, accordingly, that the Arie

TRI Shares and Orly Trust TRI Shares belonged to TPR, and the Trump Group were entitled to purchase those shares pursuant to the Side Letter Agreement.  <u>TR Investors, LLC v. Genger</u>, 2010 Del. Ch. LEXIS 170, *13 (Del. Ch. Aug. 9, 2010) (Leinbach Decl., Ex. 40).   Per the Delaware Chancery Court:

> That [judicial] determination is whether the Arie and Orly Shares are validly owned by Arie Genger and the Orly Trust. Again, the answer is no, they are not. The transfers were invalid. That left the Trump Group with the right to purchase the Shares from TPR, … neither of those transferees ever had a legitimate interest in the shares.

<u>Id.</u>, *12.

50.    *On August 18, 2010, the Delaware Chancery Court entered a Final Judgment Order in the 3994 Action, pursuant to its Merits Decision and the August 9, 2010 Decision, ordering as follows:*

> *TPR is the record and beneficial owner of the all Trans-Resources shares not presently owned by the Plaintiffs.*
>
> *Arie Genger and the Orly Genger Trust <u>are not (and have not been since at least the date of execution of the Stockholders Agreement) the record or beneficial owners of any Trans-Resources shares</u>.*
>
> *No Trans-Resources shares owned by Plaintiffs or owned of record by TPR are subject to any proxy of any kind in favor of Arie Genger.*
>
> *All of the transfers of shares of the authorized and issued stock of Trans-Resources that Arie Genger purported to cause TPR to make in 2004 (to himself, the Sagi Genger 1993 Trust, and the Orly Genger 1993 Trust) were in violation of the Stockholders Agreement).*
>
> *As a result, <u>the transfers were void, the purportedly transferred shares continued to be owned by TPR</u>, and Investors and Glenclova [part of the Trump Group] had the right under Section*

*3.2 of the Stockholders Agreement to buy all of the shares purportedly transferred by TPR.*

*Final Judgment Order ¶¶ 8-12 (emphases added) (Reply Decl., Ex. 70).*

51.     After the Delaware Chancery Court's July 23, 2010 and August 9, 2010 decisions, Sagi and TPR (controlled by Sagi) have consistently argued in the New York state courts, the New York federal courts, and in Delaware that the Orly Trust never received shares of TPR, because the supposed transfer to the Orly Trust of those shares were void <u>ab initio</u>.  For example, in August 2010, Sagi verified to the New York state court:

> Orly Genger does not have standing to sue in connection with the TRI shares because Vice Chancellor Strine of the Chancery Court of the State of Delaware has recently ruled that the shares at issue belong to TPR Investment Associates, Inc., not the Orly Genger 1993 Trust.

Sagi 8/25/10 Verified Answer, First Affirmative Defense; <u>see also id.</u> ¶¶ 28, 29, 30, 80, 81, 83, 84 (Leinbach Decl., Ex. 5).

52.     By Decision dated July 18, 2011, Delaware Supreme Court overturned the "Side Letter Decision," in the 3994 Action ruling, in relevant part, that the Delaware Chancery Court lacked personal jurisdiction over the Orly Trust, and thus lacked the power to decide who was entitled to beneficial ownership of the Orly Trust TRI Shares.  <u>Genger v. TR Investors, LLC,</u> 26 A.3d 180, 202-203 (Del 2011) (Leinbach Decl., Ex. 41).   The Delaware Supreme Court affirmed, however, the Chancery Court's "Merits Decision."  <u>Id.</u>

53.     *In its Decision in the 3994 Action, the Delaware Supreme Court stated that the Side Letter would only be triggered if the transfers of TRI Shares to the Orly Trust contemplated by the Divorce were determined to be legally void, and, in that event, "the legal*

*and beneficial ownership of those shares would be deemed to have remained with TPR":*

> *That same day, the Trump Group entered into a separate agreement (the "Side Letter Agreement") with TPR (represented by its controller, Sagi), wherein the Trump Group acquired an option to purchase the Trans–Resources shares purportedly transferred to Genger and to the Orly Trust in the 2004 Transfers. <u>The Side Letter Agreement would be triggered only if the 2004 Transfers were judicially determined to be legally void. In that event, the legal and beneficial ownership of those shares would be deemed to have remained with TPR.</u> The only signatories to the Side Letter Agreement were the Trump Group and TPR. The Orly Trust was not a signatory, nor was [Arie] Genger.*

<u>*Genger v. TR Investors, LLC*</u>, *26 A.3d at 187 (emphasis added) (Leinbach Decl., Ex. 41).*

54.     *On August 19, 2011, the Delaware Chancery Court issued a Revised Final Judgment Order in the 3994 Action.  Revised Final Judgment Ordered (Reply Decl., Ex. 71).*

*Like the prior Final Judgment Order, the Delaware Chancery Court ordered:*

> *TPR is the record and beneficial owner of the all Trans-Resources shares not presently owned by the Plaintiffs.*

> *Arie Genger and the Orly Genger Trust <u>are not (and have not been since at least the date of execution of the Stockholders Agreement) the record or beneficial owners of any Trans-Resources shares</u>.*

> *No Trans-Resources shares owned by Plaintiffs or owned of record by TPR are subject to any proxy of any kind in favor of Arie Genger.*

> *All of the transfers of shares of the authorized and issued stock of Trans-Resources that Arie Genger purported to cause TPR to make in 2004 (to himself, the Sagi Genger 1993 Trust, and the Orly Genger 1993 Trust) were in violation of the Stockholders Agreement).*

> *As a result, <u>the transfers were void, the purportedly transferred shares continued to be owned by TPR</u>, and Investors and Glenclova [part of the Trump Group] had the right under Section 3.2 of the Stockholders Agreement to buy all of the shares purportedly transferred by TPR.*

*Revised Final Judgment Order ¶¶ 8-12.*

55.     On October 4, 2011, Dalia, purportedly acting as Trustee of the Orly Trust, commenced a lawsuit in Delaware Chancery Court seeking a determination with regard to the Orly Trust TRI Shares (the "Dalia Delaware Action").  Dalia Delaware Compl. (Leinbach Decl., Ex. 42).  By commencing the action in Delaware, Dalia provided the Delaware Chancery Court with jurisdiction over the Orly Trust.  Id. (Leinbach Decl., Ex. 42).[10]

56.     *When the restrains were lifted over the Dalia Delaware Action, TPR (controlled by Sagi) filed an Amended Answer and Counterclaim to Dalia's Complaint.  In the counterclaim, TPR claimed that it had always owned the TRI Shares that were meant to be transferred to the Orly Trust pursuant to the Divorce Stipulation:*

> *In an action styled TR Investors, LLC, et al. v. Genger, C.A. No. 3994-CS (the "3994 Action"), the Court determined and found, among other things, that (i) the transfer of the TRI Shares violated TRI's Stockholders Agreement, (ii) the transfer was void and the stock reverted to TPR, and (iii) the Trump Group had the right to buy the improperly transferred TRI Shares from TPR.*

> *In August 2008, by separate agreement (the "Letter Agreement"), the Trump Group and TPR permissibly compromised and settled the Trump Group's right to purchase the TRI Shares that reverted back to TPR.*

*TPR Counterclaim to Dalia Delaware Complaint ¶¶ 2-3 (Reply Decl., Ex. 68). TPR also stated that its president, Sagi had actual and apparent authority to sell the TRI Shares:*

---

[10] Because this maneuver by Dalia was a transparent attempt to have the proceeds of the Orly Trust TRI Shares given to TPR/Sagi, Orly obtained two temporary restraining orders in New York state court on October 26, 2011 and November 9, 2011 (later continued by an April 10, 2012 Interim Decision) preventing Dalia, TPR and the Trump Group from prosecuting the Dalia Delaware Action.  See Orders Restraining Dalia Delaware Action (Leinbach Decl., Ex. 43).  These restraints were lifted as part of Orly's individual settlement with the Trump Group.  See 2d Am. Stipulation of Dismissal (Leinbach Decl., Ex. 44).

> As of at least August 2008, when the Letter Agreement was
> negotiated and entered into, and at all times thereafter, Sagi
> Genger, the President of TPR, had and has the actual and
> apparent authority to cause TPR to enter into the Letter Agreement
> and to sell the TRI Shares to the Trump Group.

Id. ¶ 4.  TPR argued that, upon selling the TRI Shares, TPR was the owner of the proceeds of

those TRI Shares.

> As a result of the February 2011 Closing...TPR became the owner
> of the $10,314,005 plus accrued interest which is currently being
> held in escrow, representing the proceeds of the sale of the TRI
> Shares (the "Sale Proceeds").

Id. ¶ 6.  Finally, TPR argued that the Orly Trust had no right to the proceeds of the TRI Shares

because it had no right to the underlying TRI Shares:

> The Orly Trust has no right to the Sale Proceeds.  In the action
> styled Pedowitz & Meister LLP, v. TPR Investment Associates, Inc.
> et al., No. 11 Civ. 5602 (JFK) – a case to which all of the Trump
> Group, TPR, the Orly Trust, and Orly Genger were parties – the
> U.S. District Court found that: "if the 2004 transfer of shares to ...
> the Orly Trust is found to be invalid, then TPR had the right to sell
> the shares to the Trump Group, and TPR would be entitled to the
> interpleaded funds."

> As noted above, <u>this Court held in the 3994 Action that the 2004
> transfer of the TRI Shares to the Orly Trust was invalid</u>.  The Orly
> Trust, derivatively through Orly Genger as beneficiary, thereafter
> sought to relitigate the issue of beneficial ownership in the action
> styled Arie Genger et al. v. Sagi Genger et al., Index No.
> 651089/2010 (the "New York Action").  The New York County
> Supreme Court, however, dismissed those of Orly Genger's claims
> by which she sought a beneficial ownership finding contrary to the
> findings in the 3994 Action, on the ground that this Court's
> findings and rulings also bind Orly Genger, who was appearing on
> behalf of the Orly Trust.

Id. ¶ 7-8 (emphasis added).

21

57.     When the restraints were lifted, Dalia (as Trustee of the Orly Trust) and TPR (controlled by Sagi) drafted and entered into a Stipulation between them, that was "So Ordered" by the Delaware Chancery Court.  The So-Ordered Delaware Stipulation stipulated and agreed to the validity of the TPR sale of the Orly Trust TRI Shares to the Trump Group, and to the Trump Group's ownership "(beneficially, of record, and otherwise)" of the Orly Trust TRI Shares.  So-Ordered Delaware Stipulation at ¶ 2 (Leinbach Decl., Ex. 45).  The So-Ordered Delaware Stipulation stated that among the findings "essential to the Court's determinations and findings" in the 3994 Action was "(ii) the transfers were void and the stock reverted to TPR, and (iii) the Trump Group had the right to buy all of the improperly transferred [TRI] stock from TPR", including the Orly Trust TRI Shares.  Id. at 1-2.

- **Dalia and Sagi's Successful Argument to this Court (Keenan, J.) that the Proceeds of the Sale of the Orly Trust Shares by TPR Should Be Paid to TPR**

58.     In November 2013, TPR commenced an action in this court before the Honorable John F. Keenan seeking an order transferring the $10.3 million in proceeds from the sale of the Orly Trust TPR Shares (the "Proceeds").  Repeatedly, TPR argued that it was entitled to the Proceeds because the Orly Trust TRI Shares had never belonged to the Orly Trust:

> Namely, the 2004 transfer of shares to Arie and the Orly Genger 1993 Trust (the "Orly Trust") were found to be invalid [by the Southern District Court], and the shares rightfully sold by TPR to the Trump Group.

TPR Brief at 2 (Leinbach Decl., Ex. 46); accord id. at 4 ("TPR adamantly denies that there is anything 'unjust' about it receiving proceeds for the sale of its own corporate assets").

> TPR's claim could not be more straightforward.  TPR once owned 1,102.8 shares of TRI.  TPR sold those shares for $10.3 million.

> The courts have now confirmed that TPR owned and had the right to sell those TRI shares, which this Court previously held to be the "condition precedent" to disbursing the sale proceeds to TPR. In short, everything which could be litigated has now been litigated, and so the time has come for the escrow agent to pay TPR.

TPR Reply Brief (Leinbach Decl., Ex. 47).

59.     During the oral argument before Judge Keenan, TPR counsel John Dellaportas argued that TPR was the owner of the sale Proceeds because the Orly Trust had never received the Orly Trust TRI Shares:

> They also said that Chancellor Strine's ruling, paragraph 2, speaks only as the buyer and not the seller. Absolutely incorrect. What Chancellor Strine ruled in paragraph 2 was, "The Trump Group, having closed on the purchase of the so-called Orly Trust shares" -- here's the important part -- "pursuant to and under the terms of the side letter agreement between TPR and the Trump Group." That's the ruling. The side letter agreement is in the record. That's a contract whereby we sold those shares to them. Exactly the ruling your Honor said we needed to get in order to get our proceeds.
>
> We've gotten the ruling that the Court asked us to get. We would now like our proceeds. Thank you very much, your Honor.

4/29/14 Hearing Tr. at p. 34:3-16 (TPR Counsel Dellaportas) (Leinbach Decl., Ex. 48). At that same oral argument, Dalia counsel stated: "We [Dalia] don't object if this Court would direct the escrow[ed millions] be given to TPR." Id. at 13.

60.     By decision dated May 15, 2014, Judge Keenan ruled, based upon TPR's arguments, that the $10.3 million in proceeds should be transferred to TPR. TPR Investment Associates, Inc. v. Pedowitz & Meister LLP, 2014 U.S. Dist. LEXIS 67116, *23 (S.D.N.Y May 15, 2014) (Leinbach Decl., Ex. 49)

61.     On May 15, 2014, TPR received the Proceeds.   Escrow Agent Letter (Leinbach Decl., Ex. 50).

**D.     *Sagi's Successful Arguments in the New York TRI Action that the Transfers of TRI Shares Were Void***

62.     *In July 2010, Arie and Orly commenced an action in New York County Supreme Court titled Arie Genger et al. v. Sagi Genger et al, Index No. 651089/2010 (the "New York TRI Action") seeking damages from various defendants including Sagi and TPR arising from TPR/Sagi's sale of the TRI Shares that were meant to be transferred to Arie and the Orly Trust pursuant to the Divorce Stipulation and Transfer Agreement.  (Reply Decl. ¶ 10).*

63.     *Sagi moved to dismiss the New York TRI Action, arguing "the Delaware courts have found that the 2004 Transfer [of TRI Shares] were unenforceable." Sagi Reply Brief at 5 (Reply Decl., Ex. 72).*

64.     *TPR also moved to dismiss the New York TRI Action, arguing, based the Delaware Court's rulings against Arie, that the Orly Trust <u>never owned TRI Shares</u>:*

> *TPR is the record owner of all [TRI] shares not presently owned by the [Trump Group].*
>
> *Arie Genger and the <u>Orly Genger Trust are not (and have not been since the date of execution of the Stockholders Agreement) the record owners of any [TRI] shares</u>.*

*TPR Reply Brief at 4 (emphasis added) (quoting Revised Final Judgment (Reply Decl., Ex. 73)).*

65.     *Based in part upon Sagi and TPR's arguments, the New York County Supreme Court dismissed certain of Arie and Orly's claims against TPR and Sagi. <u>See Genger v.</u>*

24

*Genger, 2013 N.Y. Misc. LEXIS 185, \*57-60 (N.Y. Sup. Ct. Jan. 3, 2013) (dismissing causes of action against Sagi and TPR).*

66.     *When the New York County Supreme Court's decision on dismissal was appealed to the Appellate Division, First Department, TPR and Sagi once again argued based upon the Final Judgment and Revised Final Judgment that "TPR is the 'record owner of all [TRI] shares not presently owned' by the Trump Group, and that Arie and the Orly Trust 'are not and have not been since at least the date of the execution of the Stockholders Agreement the record owners of any [TRI] shares." TPR/Sagi Appellate Brief at 13 (Reply Decl., Ex. 74). Moreover, TPR/Sagi argued that, based upon the Revised Final Judgment ruling, Orly's claims for unjust enrichment against TPR were not valid. Id. at 55-56.*

67.     *TPR/Sagi also argued in their appeal brief that, based upon the Delaware Supreme Court's ruling, if the transfer of the Orly Trust's TRI Shares contemplated by the Divorce Stipulation were judicially determined to be void:*

> *..the legal and beneficial ownership of those [TRI] shares would be deemed to have remained with TPR...*

*Id. at 3 (emphasis added) (quoting Genger v. TR Investors, LLC, 26 A.3d 180, 187 (Del 2011) (Leinbach Decl., Ex. 41).*

68.     *Finally, in their reply appeal brief, TPR/Sagi argued that, based upon the So-Ordered Stipulation TPR and Dalia had created and executed, TPR was the beneficial owner of the Orly Trust's TRI Shares and the proceeds from the Side Letter Agreement sale:*

> *After considering submissions from Orly, on August 30, 2013, Chancellor Strine entered a final Order adjudicating TPR (and not*

> the Orly Trust) to be the beneficial owner of the Orly Trust Shares. *Dalia Genger v. TR Investors, LLC et al.*, C.A. No. 6906-CS (Del. Ch. Ct. Aug. 30, 2013).  *Accordingly, even were the Court to consider nonrecord material from the Dalia Genger action, the only different would be to cause Orly's claims to be precluded on res judicata grounds for the very same reason that Arie's claims are precluded.*

*TPR/Sagi Reply Appeal Brief at 14 (emphases in original) (Reply Decl., Ex. 75).*

69.      *By Decision and Order dated July 24, 2014, the Appellate Division, First Department reversed the trial court's January 3, 2013 Amended Decision and Order in part, by, among other things dismissing Orly's remaining claims against TPR.  Genger v. Genger, 2014 N.Y. App. Div. LEXIS 5390, *17 (1st Dept. July 24, 2014) (Reply Decl., Ex. 76).  In dismissing Orly's unjust enrichment claim against TPR, the Appellate Division referenced the So-Ordered Stipulation that TPR and Dalia executed to find that Orly had no claim to the Orly Trust TRI Shares:*

> Moreover, under the 2008 agreement between TPR and the Trump Group, the sale could only take place after a judicial determination that TPR is the record and beneficial owner of the Orly Trust's TRI shares.  When the complaint was filed, it had only been determined that TPR was the shares' record owner, but the Delaware Chancery Court has now also ruled that TPR is the shares' beneficial owner (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

*Id.*, *2014 N.Y. App. Div. LEXIS 5390, at *13.*

E.      **Dalia's *Additional Admissions that the TRI Share Transfers Were Void***

70.      *On October 21, 2010, Dalia commenced an action against Arie titled Dalia Genger, as Trustee on behalf of the Orly Genger 1993 Trust, and Dalia in her individual*

26

*capacity v. Arie Genger*, Index No. 113862/2010 (the "Dalia New York Action").  Dalia New

York Action Summons and Complaint (Reply Decl., Ex. 77).

> 71.     In the Dalia New York Action, Dalia asks for judgment against Arie "for

the valie of 1,102.80 shares of TRI Stock" that Arie failed to cause TPR to transfer to the Orly

Trust:

> > On August 18, 2010, the Delaware Chancery Court issued a Final
> > Judgment Order in <u>TRI Investors, et al. v. Arie Genger</u>, Civil Court
> > Action Number 3994-VCS, which held that the October 29, 2004,
> > transfers of TRI stock to the Orly Trust, the Sagi Trust and to Are
> > violated the TRI Stockholders Agreement and were void because
> > the Trump Group was not given written notice of the transfers and
> > the Orly Trust and the Sagi Trust were non-permitted transferees.
> > Thus, the Court determined that therefore those 3,000 shares of
> > TRI stock were owned by TPR.
> >
> > <u>Arie's failure to cause TPR to validly transfer 1,102.80 shares of
> > TRI Stock to the Orly Trust was a breach of the Stipulation
> > Agreement with Dalia Genger</u>.
> >
> > <u>Arie's failure to cause TPR to validly transfer 1,102.80 shares of
> > TRI Stock to the Orly Trust damaged the Orly Trust in the amount
> > of the value of those shares</u>.

Dalia New York Action Complaint ¶¶ 22, 24 (emphases added) (Reply Decl., Ex. 77).

> 72.     On September 12, 2014 Dalia wrote a letter to the New York County

Surrogate's Court averring that the Orly Trust had never received TRI shares pursuant to the

Divorce Stipulation, or any funds:

> > As several courts have now held that the <u>Trust never received the
> > intended transfer of shares in Trans-Resources, Inc., we do not see
> > how the Trust will ever be put in funds</u>.

9/12/14 Dalia Letter To Surrogate's Court (Reply Decl., Ex. 78).

**F.      Material Facts Relating to the Sagi Promise Document**

73.      On October 18, 2004, Sagi's attorney sent Sagi drafts of the language for a promise document (hereafter, the "Drafts").  See 10/18/04 Email (Leinbach Decl., Ex. 58).  No emails or other contemporaneous communications have been produced showing that these Drafts were ever shared with Arie, Arie's lawyers, or Orly prior to execution of the Divorce Stipulation. See Undisputed Facts 11-18.

74.      The Drafts had a signature block for Orly, and provided for the promise of support to Dalia to be joint and several between Orly and Sagi.  See 10/18/04 Email (Leinbach Decl., Ex. 58).  No signed version of the Drafts has been produced in this matter.  Leinbach Decl. ¶ 60.

75.      On October 30, 2004, Dalia and Sagi signed the Sagi Promise Document. See Sagi Promise Document, Operative Complaint, Ex. A (Leinbach Decl., Ex. 1).  Contrary to the Drafts, Orly is not a signatory to the Sagi Promise Document, and there is no signature block for her.  Id.  Contrary to the Drafts, the Sagi Promise Document does not provide for any promise to pay by Orly.  Id.  The only promise to pay is Sagi's promise to pay: "You [Dalia] may request in writing that I [Sagi] make payment to you as provided in this letter.  Promptly upon receipt of the request, I [Sagi] will pay to you …." Id.; see also id. ("This letter confirms our understanding with respect to certain payments that I [Sagi] am prepared to make to you …").

76.      The Sagi Promise Document specifically identifies the "receipt" by the Sagi and Orly Trusts of TRI Shares "for our [Orly and Sagi's benefit]" as the supposed "consideration" for the Sagi Promise Document:

This letter confirms our understanding with respect to certain

> payments that I am prepared to make to you in <u>consideration of the</u> <u>following:  My sister Orly and I are benefiting by the receipt of a</u> <u>total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or</u> <u>beneficial interests in those shares, by trusts for our benefit</u>. In reliance on this letter and in consideration of the trusts' receipt of these shares and other consideration, you are giving up valuable marital rights, and you desire further assurance that you will have sufficient funds to support your lifestyle.

Sagi Promise Document.

77.     The only other value Sagi purports to have received in consideration of his promise to his mother in the Sagi Promise Document is his happiness as a son, seeing his parent's conclude their divorce proceedings.  Operative Complaint at ¶ 8; Prior Complaint at ¶ 8 (Leinbach Decl., Exs. 1, 59).

78.     Dalia did not identify the Sagi Promise Document as a marital asset during the marital arbitration she brought pursuant to the Divorce Stipulation in or around 2007.  <u>See</u> List of Marital Assets; Final Marital Arbitration Award (Leinbach Decl., Exs. 55, 13);<u> accord</u> Affidavit of Franklin B. Velie, former Dalia attorney (Leinbach Decl., Ex. 60).

79.     *The Divorce Stipulation attached various documents as exhibits to the Divorce Stipulation.  The Sagi Promise Document is not one of those attached exhibits.  <u>See</u> Divorce Stipulation With Exhibits (Reply Decl., Ex. 65).*

80.     *Sagi has never alleged the Sagi Promise Document is ambiguous.  <u>See</u> Operative Complaint at ¶ 8; Prior Complaint at ¶ 8 (Leinbach Decl., Exs. 1, 59).*

### G.     **Material Facts Relating to the November Document**

81.     The record before the Court contains no evidence that the November Document was drafted before November 10, 2004. Sagi Decl. ¶ 6; (Leinbach Decl. ¶ 53 and Ex.

51).

82.     The November Document was not executed by anyone until on or after November 10, 2004.  11/10/04 Email from Sagi to Orly (Leinbach Decl., Ex. 52).

83.     By the time the November 10 Document was drafted, the Divorce Stipulation was signed and was binding "IN ALL CIRCUMSTANCES" on Dalia, Arie, Orly, and Sagi.  See Divorce Stipulation, pp. 51, 56 (Leinbach Decl., Ex. 12).

84.     Sagi testified he obtained and maintained possession of the original copy of the November Document.  Sagi Dep. Tr. at 94:23-95:20; Parnes Decl. ¶¶ 8, 10 (Leinbach Decl., Exs. 16, 53).

85.     Sagi has never produced a copy of the November Document with an original Orly signature.  Only the Sagi signature is an original signature; the Orly signature is a photocopy of a signature.[11]  Leinbach Decl. ¶56.

86.     *Sagi has never alleged the November Document is ambiguous.*  *See* *Operative Complaint at ¶ 8; Prior Complaint at ¶ 8 (Leinbach Decl., Exs. 1, 59); see also Sagi* *Memorandum of Law in Support of his Motion for Summary Judgment [Docket No. 36] ("this* *case is about a clear and unambiguous one-page written agreement between Sagi and Orly").*

## H.   Sagi's Failure to Give Orly an Opportunity to Defend

---

[11] Orly has retained an ink expert, *Valery Aginsky,* to review the November Document, but Sagi counsel have not yet given the ink expert access to the November Document or the Sagi Promise Document.  After cancelling an October 14, 2014 examination of those documents on October 2, 2014, the next date provided by Sagi counsel was October 30, 2014 (Leinbach Decl. ¶ 56 and Ex. 54).  *Orly's ink expert's tests were inconclusive.  The ink on the November Document was "not aging," and, as a result, the expert could only determine that Sagi's ink signature on the November Document was "at least six (6) months old."  11/13/14 Letter From Valery Aginsky (Reply Decl., Ex. 79).*

87.     Sagi first provided Orly counsel with a copy of Dalia Genger's written demand for $200,000 on January 29, 2014.  1/29/14 Email (Reply Decl., Ex. 56).

88.     Sagi first demanded $100,000 from Orly on February 17, 2014.  Compl. ¶ 13; Orly Decl. ¶ 10 (Leinbach Decl., Exs., 1, 57); *see also 11/13/14 Orly Decl. ¶ 11 (Reply Decl., Ex. 80).*

89.     On or about February 3, 2014, Sagi purports to have paid Dalia $200,000. Sagi Reply Decl., Ex. H (Leinbach Decl., Ex. 61).

90.     Sagi never told Orly he was paying Dalia $200,000 before February 17, 2014.  Orly Decl. ¶ 10 (Leinbach Decl., Ex. 57); *see also 11/13/14 Harris Decl. ¶¶ 3, 6; 11/13/14 Orly Decl. ¶ 11. (Reply Decl., Exs. 80, 81).*

91.     By February 17, 2014, Sagi knew that Orly disputed the validity and enforceability of the Sagi Promise Document and the November Document.  Lance Harris Decl. ¶ 5; (Leinbach Decl., Ex. 62); *see also 11/13/14 Harris Decl. ¶ 5 (Reply Decl., Ex. 81).*

92.     Sagi first sued Orly for breach of contract on February 18, 2014, the day after his purported demand to Orly.  <u>See</u> Prior Complaint (Leinbach Decl., Ex. 59).

Dated:  New York, New York
        November 14, 2014          ZEICHNER ELLMAN & KRAUSE LLP

                                   By: _____
                                       Yoav M. Griver
                                       Bryan D. Leinbach
                                       Attorneys for defendant Orly Genger
                                       1211 Avenue of the Americas
                                       New York, New York 10036
                                       (212) 223-0400

31