UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAGI GENGER, | Civ. No.:  14-5683 (KBF) |
| Plaintiff, | |
| - against - | |
| ORLY GENGER, | |
| Defendant. | |

**ORLY GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO
SAGI GENGER'S MOTION FOR SUMMARY JUDGMENT**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

COUNTERSTATEMENT OF MATERIAL FACTS ..................................................... 1

ARGUMENT ................................................................................................................ 1

I.   SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT
     (BUT ORLY GENGER IS) BECAUSE THE SAGI PROMISE
     DOCUMENT AND NOVEMBER DOCUMENT BOTH FAIL FOR
     LACK OF CONSIDERATION ............................................................................. 1

     A.   There Is No Consideration For Either The Sagi Promise Document
          Or The November Document Because The Undisputed Facts Show
          The Orly Trust Never Received TRI Shares in 2004 .................................. 2

     B.   There Is No Consideration For Either The Sagi Promise Document
          Or The November Document Because The Undisputed, Admissible
          Evidence Shows Dalia Did Not Condition The Divorce Stipulation
          On A Clawback Right .................................................................................. 7

     C.   There Is No Consideration For Either The Sagi Promise Document
          Or The November Document Because The Services Rendered From
          A Child To A Parent Out Of Love And Affection Is Not
          Consideration As A Matter Of New York Law ........................................... 12

     D.   There Is No Consideration For The November Document Because
          Past Consideration Is No Consideration ................................................... 13

II.  SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT
     (BUT ORLY GENGER IS) BECAUSE THE NOVEMBER DOCUMENT
     IS NOT ENFORCEABLE DUE TO A MUTUAL MATERIAL
     MISTAKE OF FACT ........................................................................................... 17

III. SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT
     BECAUSE WHETHER SAGI GENGER GAVE ORLY GENGER THE
     REQUIRED OPPORTUNITY TO DEFEND BEFORE PAYING DALIA
     GENGER'S DEMAND IS A DISPUTED ISSUE OF FACT ............................... 19

IV.  SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT
     (BUT ORLY GENGER IS) ON SAGI GENGER'S EQUITABLE CLAIM
     FOR PROMISSORY ESTOPPEL ....................................................................... 22

CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Adelphia Recovery Trust v. Goldman Sachs & Co.,
    748 F.3d 110 (2d Cir. 2014)........................................................................6

Armour & Co. v. Celic,
    294 F.2d 432 (2d Cir. 1961)......................................................................11

Ballard v. Parkstone Energy, LLC,
    664 F.Supp.2d 325 (S.D.N.Y. 2009)........................................................20

Beitner v. Becker,
    34 A.D.3d 406 (2d Dept. 2006) .................................................................1

Big East Entertainment, Inc. v. Zomba Enterprises, Inc.,
    453 F. Supp.2d 788 (S.D.N.Y. 2006)........................................................16

Bohlen Indus., Inc. v. Flint Oil & Gas, Inc.,
    106 A.D.2d 909 (4th Dept. 1984) .............................................................11

Braten v. Bankers Trust Co.,
    60 N.Y.2d 155 (1983) ...............................................................................14

Briarwood Farms, Inc. v. Toll Bros., Inc.,
    2011 U.S. App. LEXIS 25595 (2d Cir. Dec. 22, 2011) ............................22

Brunt v. Rauschenberg,
    799 F. Supp. 1467 (S.D.N.Y. 1992)..........................................................14

Butcher v. Gerber Products Company,
    8 F.Supp.2d 307 (S.D.N.Y. 1998) ...................................................1, 14, 15

BWA Corp. v. Alltrans Exp. U.S.A., Inc.,
    112 A.D.2d 850 (1st Dept. 1985)..............................................................16

Carvel Corp. v. Diversified Management Group, Inc.,
    930 F.2d 228 (2d Cir. 1990)......................................................................16

Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa, S.A.,
    56 F.3d 359 (2d Cir. 1995)..........................................................................6

Chase Manhattan Bank v. 264 Water St. Assocs.,
    222 A.D.2d 229 (1st Dept. 1995)..............................................................20

Christensen v. Pettersen,
    239 A.D. 735 (1st Dept. 1933)......................................................................14

Commander Oil Corp. v. Advance Food Service Equip.,
    991 F.2d 49 (2d Cir. 1993)..........................................................................16

Commodities Futures Trading Comm'n v. Walsh,
    17 N.Y.3d 162 (2011) ..................................................................................13

Commodities Futures Trading Comm'n v. Walsh,
    2014 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 28, 2014).........................13

Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust,
    74 A.D.3d 32 (1st Dept. 2010)...................................................................20

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010).......................................................................22

Enh, Inc. v. International Diffusion SRL,
    97 Civ. 3202 (LAP), 1997 U.S. Dist. LEXIS 7665 (S.D.N.Y. May 30, 1997).......................24

French v. New York State Dep't of Educ.,
    476 Fed. Appx. 468 (2d Cir. 2011).............................................................24

Genger v. Genger,
    2014 N.Y. App. Div. LEXIS 5390 (1st Dept. July 24, 2014).....................5

Genger v. TR Investors, LLC,
    26 A.3d 180 (Del. 2011) ..........................................................................3, 4

Goldstein v. AccuScan, Inc.,
    2 N.Y.3d 811 (2004)....................................................................................7

Gutman v. Gutman,
    31 A.D.3d 709, 819 N.Y.S.2d 771 (2d Dept. 2006) .................................15

HGCD Retail Services, LLC v. 44-45 Broadway Realty Co.,
    37 A.D.3d 43 (1st Dept. 2006)....................................................................9

ICN Pharmaceuticals, Inc. v. Bristol-Myers Co.,
    245 A.D.2d 182 (1st Dept. 1997)................................................................7

In re Adelphia Recovery Trust,
    634 F.2d 678 (2d Cir. 2011).........................................................................6

In re Estate of Camac,
    2 Misc.3d 894 (N.Y. Sur. Ct. 2004)..........................................................12

In re Estate of Concetta Ciadiello,
    2007 N.Y. Misc. LEXIS 2326 (N.Y. Sur. Ct. 2007)................................................12

In re Roman Crest Fruit, Inc.,
    35 Bankr. 939 (Bankr. S.D.N.Y. 1983) ...............................................................11

Intellivision v. Microsoft Corp.,
    484 Fed. Appx. 616 (2d Cir. 2012).......................................................................6

Kastil v. Carro,
    145 A.D.2d 388 (1st Dept. 1988).........................................................................14

Kimco of New York, Inc. v. Devon,
    163 A.D.2d 573 (2d Dept. 1990) ...........................................................................6

Lampros v. Banco Do Brasil, S.A.,
    2013 U.S. App. LEXIS 22316 (2d Cir. Nov. 4, 2013)........................................22

Levine v. 860 West Tower, Inc.,
    96 Civ. 6124 (LAP), 1999 U.S. Dist. LEXIS 4430 (S.D.N.Y. March 31, 1999) .....................9

Lockheed Martin Corp. v. Retail Holdings, N.V.,
    639 F.3d 63 (2d Cir. 2011)..........................................................................7, 8, 14

Lucas v. Oxigene, Inc.,
    94 Civ. 1691 (MBM), 1995 U.S. Dist. LEXIS 12575 (S.D.N.Y. Aug. 30, 1995)............10, 12

Madeira v. United Talmudical Acad. of Kiryas Yoel,
    351 F.Supp.2d 162 (S.D.N.Y. 2004)......................................................................6

Marine Midland Bank-Southern v. Thurlow,
    53 N.Y.2d 381 (1981) ...........................................................................................9

McRay v. Citrin,
    270 A.D.2d 191 (1st Dept. 2000)........................................................................12

Mitchell v. Mitchell,
    82 A.D.2d 849 (2d Dept. 1981) .......................................................................9, 12

Mizuna, Ltd. v. Crossland Federal Savings Bank,
    90 F.3d 650 (2d Cir. 1995)...............................................................................9, 10

Nau v. Vulcan Rail & Constr. Co.,
    286 N.Y. 188 (1944) ............................................................................................15

New Hampshire v. Maine,
    532 U.S. 742 (2001)...............................................................................................6

Nobel Insurance Co. v. Hudson Iron Works, Inc.,
    51 F. Supp.2d 408 (S.D.N.Y. 1999)..................................................................17

North Fork Bank & Trust Co. v. Bernstein & Gershman,
    201 A.D.2d 472 (2d Dept. 1994) ..................................................................10

Omni Quartz v. CVS,
    287 F.3d 61 (2d Cir. 2002)..........................................................................9

Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates,
    50 A.D.2d 226 (1st Dept. 1975), aff'd on other grounds, 41 N.Y.2d 1045 (1977) ................20

Pershall v. Elliott,
    249 N.Y. 183 (1928) ..........................................................................12, 14

Pimpinello v. Swift & Co.,
    253 N.Y. 159 (1930) ............................................................................11

Precision Instrument Mfg. Co. v. Automotive Maint. Machinery Co.,
    324 U.S. 806 (1945)............................................................................24

Princeton Club of New York,
    2014 U.S. Dist. LEXIS 38560, *9 (S.D.N.Y. March 24, 2014) .............................22

Readco. Inc. v. Marine Midland Bank,
    81 F.3d 295 (2d Cir. 1996)....................................................................22

Republic Insurance Co. v. Nobel Insurance Co.,
    2 F.Supp.2d 548 (S.D.N.Y. 1998) ...........................................................17

Rodriguez v. Mower,
    56 A.D.3d 857 (3d Dept. 2008) ...............................................................18

Rose v. Elias,
    177 A.D.2d 415 (1st Dept. 1991)..............................................................12

Schmidt v. Magnetic Head Co.,
    97 A.D.2d 151 (2d Dept. 1983) ................................................................9

Slatt v. Slatt,
    64 N.Y.2d 966 (1985) ...........................................................................9

TPR Investment Associates v. Pedowitz & Meister LLP,
    2014 U.S. Dist. LEXIS 67116 (S.D.N.Y. May 15, 2014)........................................4

Umscheid v. Simmacher,
    106 A.D.2d 380 (2d Dept. 1984) ..............................................................15

United States of America v. West Productions Ltd.,
  2001 U.S. Dist. LEXIS, 3665 (S.D.N.Y. March 30, 2001) ......................................................7

United States v. Hardwick,
  523 F.3d 94 (2d Cir. 2008)....................................................................................................1

United States v. Williams,
  02-CR-1372 (RPP), 2014 U.S. Dist. LEXIS 97367 (S.D.N.Y. July 17, 2014) ......................18

W.W.W. Assocs., Inc. v. Giancontieri,
  77 N.Y.2d 157 (1990) ..................................................................................................... *passim*

Wells Fargo Bank, Northwest, N.A. v. TACA Int'l Airlines, S.A.,
  247 F.Supp.2d 352 (S.D.N.Y. 2002)................................................................................ *passim*

**STATUTES**

N.Y. Gen. Obligations Law § 5-1105 .........................................................................................15

**OTHER AUTHORITIES**

18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 4477 (1981)................6

1 Corbin on Contracts § 32 at 125 (1963)...................................................................................11

BLACK'S LAW DICTIONARY 814 (7th Ed. 2000) ....................................................................17, 21

Fed. R. Civ. P. 56(e) .................................................................................................................1

Summary judgment is appropriate if there is no "disputed material facts in light of the substantive law." Butcher v. Gerber Products Company, 8 F.Supp.2d 307, 313 (S.D.N.Y. 1998); Fed. R. Civ. P. 56(e). Here, disputed material issues of fact prevent summary judgment in Sagi's favor.[1] There are, however, no disputed material issues of fact preventing summary judgment in Orly's favor.

## COUNTERSTATEMENT OF MATERIAL FACTS

The relevant material facts are set forth in two accompanying documents, incorporated herein by reference. The first document is Orly's Response to Sagi's purported Statement of Undisputed Facts (the "Orly Response"). The second document is Orly's Counterstatement of Material Facts and supporting exhibits (the "CSF").

## ARGUMENT

I.  **SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT (BUT ORLY GENGER IS) BECAUSE THE SAGI PROMISE DOCUMENT AND NOVEMBER DOCUMENT BOTH FAIL FOR LACK OF CONSIDERATION**

"All contracts must be supported by consideration." Beitner v. Becker, 34 A.D.3d 406, 407 (2d Dept. 2006). In turn, "consideration retains its contract law meaning of a bargained for exchange." United States v. Hardwick, 523 F.3d 94, 100 (2d Cir. 2008). Sagi contends that Orly received "two real benefits." Sagi Br. at 10. *First*, Sagi contends Orly received a "financial windfall" in the form of "her mother's conveyance of her marital rights in the TRI shares to the [Orly] Trust by virtue of the Oct. 30, 2004 Promise." Id. *Second*, Sagi contends Orly "received an emotional and psychological benefit in helping to bring about an end to her parent's bitter

---

[1] For example, since he has no documents showing that there was a meeting of the minds regarding any Dalia Clawback right before the Divorce Stipulation was signed and became binding upon Dalia, Sagi relies on a purported October 30, 2004 phone call to his sister in Fiji to support the supposed meeting of the minds. See Sagi Statement of Undisputed Facts, No. 4. There were no witnesses to this supposed phone call (Sagi Dep. Tr. 30:8-32:22 (Reply Decl., Ex. 89)), and Orly disputes that this call ever happened. See Orly Response to Sagi Statement of Undisputed Facts, No. 4; Orly Affidavit ¶ 5 (Reply Decl., Ex. 80).

divorce."  Id.  Neither of these two contentions survives contact with the undisputed facts and substantive law.

### A.   There Is No Consideration For Either The Sagi Promise Document Or The November Document Because The Undisputed Facts Show The Orly Trust Never Received TRI Shares in 2004

Sagi contends consideration exists because the Orly Trust obtained a "financial windfall" by "receipt of those [TRI] shares."  Sagi Br. at 10; Operative Compl. ¶ 8.  This is simply not true.  The Orly Trust never received the TRI shares, and never received any proceeds.

For years, Sagi (with Dalia's support) has consistently and successfully argued – to this Court, to the New York State Courts, and to the Delaware Courts – that any purported TRI share transfer from TPR to the Orly Trust was ineffective, that the Orly Trust never received any TRI shares, and that TPR (which is controlled by Sagi) continued to own those shares.  See CSF ¶¶ 55-72.  It is now established that, pursuant to the Side Letter Agreement Sagi and TPR reached with the Trump Group in August 2008, TPR sold the Orly Trust TRI Shares for $10.3 million.  The entire $10.3 million is now in TPR's possession by Order of this Court.  CSF ¶¶ 58-61.

Sagi may contend the TRI shares somehow belonged to the Orly Trust and the Sagi Trust from 2004 until the decision of the Delaware Chancery Court.  Any such contention would be legally meritless.  In TR Investors, LLC v. Genger, C.A., No. 3994-CS (the "3994 Action"), the Delaware courts made judicial findings and orders – findings and orders later used by Sagi to enrich TPR at the Orly Trust's expense – that expressly preclude any contention that the 2004 transfers actually occurred:

> Arie Genger and the Orly Genger Trust are not (and have not been since at least the date of execution of the Stockholders Agreement [in 2001]) the record or beneficial owners of any Trans-Resources shares.

> All of the transfers of shares of the authorized and issued stock of Trans-Resources that Arie Genger purported to cause TPR to make in 2004 (to himself, the Sagi Genger 1993 Trust, and the Orly Genger 1993 Trust) were in violation of the Stockholders Agreement).
>
> As a result, the transfers were void, the purportedly transferred shares continued to be owned by TPR, and Investors and Glenclova [part of the Trump Group] had the right under Section 3.2 of the Stockholders Agreement to buy all of the shares purportedly transferred by TPR.

Revised Final Judgment Order in 3994 Action ¶¶ 9, 11-12 (Reply Decl., Ex. 71); Final Judgment

Order in 3994 Action ¶¶ 9, 11-12 (same) (Reply Decl., Ex. 70).

> Likewise, the Delaware Supreme Court recognized in the 3994 Action that:
>
> The Side Letter Agreement would be triggered only if the 2004 Transfers were judicially determined to be legally void. In that event, the legal and beneficial ownership of those shares would be deemed to have remained with TPR.

Genger v. TR Investors, LLC, 26 A.3d 180, 187 (Del. 2011) (Leinbach Decl., Ex. 41).

> In August 2013, Sagi (for TPR) and Dalia (for the Orly Trust) entered into a "So-

Ordered" Delaware Stipulation stipulating that

> the [2004 Divorce Stipulation] transfers were void and the stock reverted to TPR, and ... the Trump Group had the right to buy all of the improperly transferred Trans-Resources stock from TPR. These determinations and findings were essential to the [Delaware Chancery] Court's determinations and findings in the 3994 Action.

So-Ordered Delaware Stipulation at 1-2 (Leinbach Decl., Ex. 44).

> In November 2013, TPR commenced an action in this court before the Honorable

John F. Keenan seeking an order transferring the $10.3 million in proceeds from the sale of the

Orly Trust TPR Shares pursuant to the Side Letter Agreement (the "Proceeds").  Repeatedly,

TPR argued that it was entitled to the Proceeds because the Orly Trust TRI Shares had never

belonged to the Orly Trust:

> Namely, the 2004 transfer of shares to Arie and the Orly Genger 1993 Trust (the "Orly Trust") were found to be invalid [by the Southern District Court], and the shares rightfully sold by TPR to the Trump Group.

TPR Brief at 2 (Leinbach Decl., Ex. 46); accord id. at 4 ("TPR adamantly denies that there is anything 'unjust' about it receiving proceeds for the sale of its own corporate assets"). In turn, Dalia supported Sagi and TPR's efforts to obtain the Proceeds: "We [Dalia] don't object if this Court would direct the escrow[ed millions] be given to TPR." 4/29/14 Hearing Tr. at 13 (Leinbach Decl., Ex. 48).

Importantly, TPR argued to this Court (and others) that it validly sold the TRI Shares to the Trump Group under the Side Letter Agreement. 4/29/14 Hearing Tr. at 34 (TPR Counsel Dellaportas) ("The side letter agreement is in the record. That's a contract whereby we [TPR] sold those shares to them.") (Leinbach Decl., Ex. 48). As determined by the Delaware Supreme Court, however, such a Side Letter sale could only occur if the 2004 transfers were "judicially determined to be legally void," meaning that the "legal and beneficial ownership of those shares would be deemed to have remained with TPR." TR Investors, LLC, 26 A.3d at 187.

Based on TPR/Sagi and Dalia's arguments, this Court (Keenan, J.) found that TPR was "entitled to the Proceeds it received from the Trump Group *in consideration of* those [Orly Trust] shares." See TPR Investment Associates v. Pedowitz & Meister LLP, 2014 U.S. Dist. LEXIS 67116, *15 (S.D.N.Y. May 15, 2014) (emphasis added). That same day, TPR was wired the $10.3 million in proceeds. (Leinbach Decl., Ex. 50).[2]

Sagi, TPR, and Dalia also used their Delaware Stipulation to convince the First Department to dismiss Orly's remaining claims in the New York TRI Action:

---

[2] TPR also sold the Sagi Trust TRI Shares and Arie TRI Shares to the Trump Group, for a total of approximately $34 million.

4

> Moreover, under the 2008 agreement between TPR and the Trump
> Group, the sale could only take place after a judicial determination
> that TPR is the record and beneficial owner of the Orly Trust's TRI
> shares.  When the complaint was filed, it had only been determined
> that TPR was the shares' record owner, but the Delaware Chancery
> Court has now also ruled that TPR is the shares' beneficial owner
> (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR
> Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

Genger v. Genger, 2014 N.Y. App. Div. LEXIS 5390, *13 (1st Dept. July 24, 2014) (Reply

Decl., Ex. 76).

    For her part, Dalia is currently suing Arie Genger, both individually and on behalf

of the Orly Trust, in New York Supreme Court, alleging that Arie must pay her and the Orly

Trust the value of the TRI Shares because of his "failure to cause TPR to validly transfer" the

TRI shares to the Orly Trust.  See Dalia New York Action Complaint, ¶¶ 22, 24 (Reply Decl.,

Ex. 77); CSF ¶¶ 70-71.  She has also recently argued to the New York Surrogate's Court that "as

several courts have now held that the Trust never received the intended transfer of shares in

Trans-Resources, Inc., we do not see how the Trust will ever be put in funds."  9/12/14 Dalia

Letter To Surrogate's Court (Reply Decl., Ex. 78) (emphasis added).

    Judicially, logically, and even morally, Sagi and Dalia cannot have it both ways.

Because they have successfully claimed – and are continuing to claim – in other courts

(Delaware Chancery Court, New York State Courts, and this Court) that the TRI Shares and its

Proceeds are not, and have never been, actual assets of the Orly Trust (see CSF ¶¶ 55-72), they

cannot properly claim here that Orly "received" shares of TRI and a "financial windfall," and

must now pay Dalia half of that windfall.  Indeed, given the above history, Sagi and Dalia are

judicially estopped from claiming the TRI shares were ever successfully transferred to either Trust.[3]

The doctrine of judicial estoppel, or estoppel against contrary statements, precludes a party from playing fast and loose with the Court and judicial system by "framing his pleadings in a manner inconsistent with a position taken in a prior judicial proceeding." Kimco of New York, Inc. v. Devon, 163 A.D.2d 573, 574 (2d Dept. 1990). Where a party's "former position has been adopted in some way by the court in the earlier proceeding" (In re Adelphia Recovery Trust, 634 F.2d 678, 695-96 (2d Cir. 2011)), that party can be judicially stopped from assuming a contrary position thereafter "simply because his interests have changed." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (applying judicial estoppel to dismiss claim inconsistent with prior position in earlier litigation). Madeira v. United Talmudical Acad. of Kiryas Yoel, 351 F.Supp.2d 162 (S.D.N.Y. 2004) (dismissing complaint on summary judgment, and holding plaintiff was judicially estopped from alleging the landowner owned the property for purposes of establishing liability, as plaintiff had previously stipulated in a judicial proceeding that the developer owned the property); Intellivision v. Microsoft Corp., 484 Fed. Appx. 616, 622 (2d Cir. 2012) ("The use of judicial estoppel by district courts to preclude inconsistent assertions about ownership of property is routine"; affirming grant of summary judgment on judicial estoppel grounds).[4]

---

[3] Sagi is in privity with TPR, and its positions properly attributable to him. See, e.g., Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa, S.A., 56 F.3d 359, 368 (2d Cir. 1995) (party is in privity with former litigant where "party controlled or substantially participated in the control of the presentation on behalf of a party in the prior action" and its interests were "identical to the interests" of former litigant). There is no real dispute that TPR – which is located in Sagi's Connecticut home – is under Sagi's control. He has so testified, and the New York and Delaware Courts has so found. Indeed, not only does Sagi control TPR, he owns it. See CSF ¶¶ 5-7 (and exhibits, court decisions, and testimony cited).

[4] See also 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 4477, p. 782 (1981) ("absent a good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"); Adelphia Recovery Trust v. Goldman Sachs &

This is the paradigmatic judicial estoppel case.  Having successfully adopted the position that the 2004 transfers were legally void <u>ab initio</u> in prior and current actions (<u>see</u> CSF ¶¶ 55-72), none of Sagi, TPR, or Dalia can properly contend before this Court in this case that the Orly Trust obtained a "financial windfall" or "received" the TRI shares in 2004.

**B.    There Is No Consideration For Either The Sagi Promise Document Or The November Document Because The Undisputed, Admissible Evidence Shows Dalia Did Not Condition The Divorce Stipulation On A Clawback Right**

Dalia and Arie were divorced in October 2004, pursuant to a heavily negotiated and lawyered Divorce Stipulation.  <u>See</u> CSF ¶ 9.  Sagi and Dalia now contend Dalia would never have signed the Divorce Stipulation, or transferred the TRI shares, had she not been promised a clawback right up to 50% of the value of the TPR shares.  Sagi Br. at 10.  The Divorce Stipulation, however, is unambiguous and contains no clawback provision.  Absent ambiguity, no parol evidence may be admitted to vary or supplement the terms of a written contract and insert such a clawback right into the Divorce Stipulation.

"When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms."  <u>Lockheed Martin Corp. v. Retail Holdings, N.V.</u>, 639 F.3d 63, 69 (2d Cir. 2011) (citations and internal quotation marks omitted); <u>W.W.W. Assocs., Inc. v. Giancontieri</u>, 77 N.Y.2d 157, 162 (1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."); <u>Goldstein v. AccuScan, Inc.</u>, 2 N.Y.3d 811, 812 (2004) (same).  Here there is no ambiguity, and

---

<u>Co.</u>, 748 F.3d 110 (2d Cir. 2014) (affirming grant of summary judgment on judicial estoppel grounds; dismissed claim would have required inconsistent judicial finding as to who owned property at issue);  <u>United States of America v. West Productions Ltd.</u>, 2001 U.S. Dist. LEXIS, 3665, 14-15 (S.D.N.Y. March 30, 2001) (granting summary judgment on judicial estoppel grounds); <u>ICN Pharmaceuticals, Inc. v. Bristol-Myers Co.</u>, 245 A.D.2d 182, 186 (1st Dept. 1997) (holding that defendant was bound by the doctrine of judicial estoppel from taking a position before the New York County Supreme Court that was inconstant from a position taken in a prior arbitration).

no clawback.[5]  To the contrary:

- The Divorce Stipulation specifically provides that the Divorce Stipulation was immediately binding on Dalia and her heirs "IN ALL CIRCUMSTANCES" "as of October 26, 2004." Divorce Stipulation at 51, 56 (Reply Decl., Ex. 65).

- The Divorce Stipulation specifically provides that "[f]ollowing the foregoing transfers of the TRI Stock, the Wife will have no ownership interest in TRI." Id. at 14.

- The Divorce Stipulation contained an "Entire Understanding" Clause (id. at 53) acknowledging that the Divorce Stipulation "contains the entire understanding of the parties":

### ENTIRE UNDERSTANDING

This Agreement contains the entire understanding of the parties who hereby acknowledge that between them there have been and are no representations, warranties, covenants or undertakings (whether written or oral, express or implied) with respect to the subject matter hereof including, without limitation, all rights or claims arising at law, in equity or pursuant to the parties' marital relationship other than those expressly set forth herein or in the transaction contemplated hereby or entered into concurrently herewith.

(emphasis added).   Dalia chose to sign the Divorce Stipulation containing the foregoing language.  Having chosen to do so, she is bound by it.  Lockheed, supra; Giancontieri, supra; Accuscan, supra.

Neither Dalia nor Sagi can properly shoehorn in a clawback right not contained within the Divorce Stipulation itself, much less properly claim that this clawback right was "an express condition to her agreement to sign the divorce papers [and] relinquish her right to the TRI shares." Sagi Br. at 10.  The Sagi Promise Document is not mentioned in the Divorce Stipulation, nor is it appended as an exhibit thereto.  See Divorce Stipulation (Reply Decl., Ex. 65).

---

[5]   On a summary judgment motion, the Court decides whether contractual ambiguity exists.  Wells Fargo Bank, Northwest, N.A. v. TACA Int'l Airlines, S.A., 247 F.Supp.2d 352 (S.D.N.Y. 2002).  Notably, however, Sagi has never asserted that the Divorce Stipulation, Sagi Promise Document, or November Document are ambiguous.

To insert a clawback would improperly "blue pencil" both the Entire Understanding Clause and Dalia's agreement that "[f]ollowing the foregoing transfers of the TRI Stock, [she] will have no ownership interest in TRI." This in turn, would violate the rule that "contracts should be so construed as to give effect to every word and expression contained therein." Levine v. 860 West Tower, Inc., 96 Civ. 6124 (LAP), 1999 U.S. Dist. LEXIS 4430, *10 (S.D.N.Y. March 31, 1999).

Likewise, a court may not rewrite into a contract conditions the parties did not insert or, under the guise of construction, add or excise terms. Slatt v. Slatt, 64 N.Y.2d 966, 967 (1985); Schmidt v. Magnetic Head Co., 97 A.D.2d 151 (2d Dept. 1983) ("courts may enforce contracts, but not rewrite them"); Mitchell v. Mitchell, 82 A.D.2d 849 (2d Dept. 1981) (courts "will not imply a contract term that the parties failed to insert"); HGCD Retail Services, LLC v. 44-45 Broadway Realty Co., 37 A.D.3d 43, 51 (1st Dept. 2006) ("courts may not fashion a new contract under the guise of contract construction").

Dalia and Sagi's attempt to substitute their affidavits and purported oral understandings for the actual terms of the Divorce Stipulation also violate the Parol Evidence Rule. "It is well-established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract," Wells Fargo Bank, Northwest, N.A. v. TACA Int'l Airlines, S.A., 247 F.Supp.2d 352 (S.D.N.Y. 2002) (quoting Omni Quartz v. CVS, 287 F.3d 61, 64 (2d Cir. 2002)), or to "prove an oral condition precedent that contradicts or varies" the contract's written terms. Mizuna, Ltd. v. Crossland Federal Savings Bank, 90 F.3d 650, 659 (2d Cir. 1995); Giancontieri, 77 N.Y.2d at 162 ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary a writing."); Marine Midland Bank-Southern v. Thurlow, 53 N.Y.2d 381, 387 (1981)

(Where the parties have reduced an agreement to an integrated writing, the parol evidence rule prohibits introduction of any purported evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the provisions of the writing.); North Fork Bank & Trust Co. v. Bernstein & Gershman, 201 A.D.2d 472, 473 (2d Dept. 1994) (same).  Indeed, if the clawback was as important as Dalia and Sagi now claim, it was incumbent upon her to include it, mention it, or append it to the Divorce Stipulation.  Because she failed to do so, Dalia's collateral understanding cannot be enforced.  See, Mizuna, 90 F.3d at 660; Wells Fargo, 247 F.Supp.2d at 369; Lucas v. Oxigene, Inc., 94 Civ. 1691 (MBM), 1995 U.S. Dist. LEXIS 12575, *12 (S.D.N.Y. Aug. 30, 1995) (parol evidence rule exists to prevent a party from signing a contract "and then claiming he was induced to sign it by contrary oral representations").

Even if the Court were to allow parol evidence, contemporaneous parol evidence conclusively contradicts the self-serving declarations of Sagi, Dalia, and Sagi's personal attorney.  Specifically:

- A proposed clawback was included in a September 27, 2004 draft of the Divorce Stipulation.  It was removed on October 13, 2004.  CFS ¶¶ 25-27 (and Reply Decl., Exs. 66-67).  Notably, part of the proposed (and rejected) language stated "Following the foregoing transfers of the TRI Stock, the Wife will have no ownership interest in TRI, subject to her rights as contemplated by Section 9(b)(iii) [the proposed clawback right]".  This "subject to" language was removed, and Dalia's lack of any continuing rights to the TRI Shares made entire.[6]

- On October 18, 2004, Sagi's attorney sent Sagi drafts of the language for a promise document (hereafter, the "Drafts").  See 10/18/04 Email (Leinbach Decl., Ex. 58).  The Drafts had a signature block for Orly, and provided for the promise of support to Dalia to be joint and several between Orly and Sagi.  Id.  No signed version of the Drafts has been produced in this matter.  Leinbach Decl. ¶ 60.  No emails or other contemporaneous communications have

---

[6]   Notably, the proposed clawback was for only 25% per child.  See 9/27/2004 Draft (Reply Decl., Ex. 66).  This split accords with Sagi informing Orly on November 10, 2004, that he had unilaterally altered his deal with his mom: "Since you were in Fiji, I promised to mom her full share interest in TRI instead of only half." 11/10/04 Email from Sagi to Orly (Leinbach Decl., Ex. 52).  Of course, if Orly did not know of the change, there was no meeting of the minds (indeed no offer communicated for Orly to accept) until November 10, 2004.  Sagi tries to paper over this hole in his case by asserting that he had a private phone call with Orly where he told her about the change.  The fact of this phone call is disputed by Orly (11/13/14 Orly Decl. ¶ 5 (Reply Decl., Ex. 80)) and is nowhere referenced (as one would expect) in Sagi's November 10, 2004 Email to Orly.

been produced showing that these Drafts were ever shared with Arie, Arie's lawyers, or Orly prior to execution of the Divorce Stipulation. See CFS ¶¶ 21-22, 73-74.

- • That Orly would be outside the United States on October 30, 2004 was known, and Edward Klimerman was appointed as Orly's attorney-in-fact to sign any documents related to, or necessary for, the Divorce Stipulation. 11/13/14 Orly Decl. ¶ 6 (Reply Decl., Ex. 80). Klimerman did sign one document as Orly's attorney-in-fact, which document is appended as the attachment to the Divorce Stipulation With Exhibits, last six pages (Reply Decl., Ex. 65). While available at the closing to do so, Mr. Klimerman did not sign any "clawback" document on Orly's behalf.

In the end, self-serving affidavits cannot be used to vary or add to the terms of a written document, or create a material issue of fact preventing summary judgment in Orly's favor. Dalia entered into the Divorce Stipulation knowing that (i) she was giving up all rights in the TRI shares; (ii) there was no clawback right in the final version of the Divorce Stipulation; (iii) there was an Entire Understanding Clause; and (iv) the Divorce Stipulation was binding on her and her heirs "IN ALL CIRCUMSTANCES." Her decision to sign under those circumstances is binding upon her, and conclusively rebuts any contention that the TRI Shares or the divorce itself was "consideration" for either the Sagi Promise Document or the November Document. The consideration for Dalia signing the divorce papers and relinquishing her right to the TRI shares is exclusively contained in the plain language of the Divorce Stipulation. See Pimpinello v. Swift & Co., 253 N.Y. 159, 162-63 (1930) ("[t]hat his mind never gave assent to the terms expressed is not material").[7]

---

[7] In an apparent (failed) effort to make Dalia's signing of the Divorce Stipulation somehow contingent on Orly signing a document not even created until days later, Sagi claims "the underlying divorce papers were not delivered to the Court for approval, but instead were held in escrow, until Orly executed a related document embodying her earlier oral promise to reimburse Sagi for 50% of his support payments to Dalia." Sagi Br. at 2. This "non-deliver" fact, even if true, is irrelevant. Dalia was bound to the Divorce Stipulation "IN ALL CIRCUMSTANCES" upon signing it on October 30, 2004. The Divorce Stipulation so provides. See Divorce Stipulation at 56 (Reply Decl., Ex. 65). The law so provides. See, e.g., Bohlen Indus., Inc. v. Flint Oil & Gas, Inc., 106 A.D.2d 909, 910 (4th Dept. 1984) ("We reject defendants' argument that a written contract does not become effective until delivery.") (citation omitted); Armour & Co. v. Celic, 294 F.2d 432, 435 (2d Cir. 1961) ("We know of no principle of law which makes the validity of a contract contingent upon its delivery."); In re Roman Crest Fruit, Inc., 35 Bankr. 939, 944 (Bankr. S.D.N.Y. 1983) (no "delivery" requirement for unsealed contracts); 1 Corbin on Contracts § 32 at 125 (1963) (effectiveness of ordinary contract is defined in terms of

**C.   There Is No Consideration For Either The Sagi Promise Document Or The November Document Because The Services Rendered From A Child To A Parent Out Of Love And Affection Is Not Consideration As A Matter Of New York Law**

It is well-settled New York law that love and affection (or the "emotional and psychological benefit" derived therefrom) does not constitute consideration. "Services that are usually rendered by family members ... out of love and affection, or without expectation of compensation, are presumed to have been rendered gratuitously and do not constitute consideration ... unless the presumption is overcome by convincing proof ... to pay for specified services that were performed in exchange for the promise." In re Estate of Concetta Ciadiello, 2007 N.Y. Misc. LEXIS 2326, *6 (N.Y. Sur. Ct. 2007); McRay v. Citrin, 270 A.D.2d 191, 191 (1st Dept. 2000) (where "[t]he sole consideration given to support defendant's promise to pay plaintiff a yearly sum of money [was] plaintiff's promise of 'love and affection'" this "did not suffice as a predicate for enforcement of the executory agreement"); Rose v. Elias, 177 A.D.2d 415, 416 (1st Dept. 1991) (affirming trial court's ruling that love and affection are insufficient consideration); In re Estate of Camac, 2 Misc.3d 894, 898 (N.Y. Sur. Ct. 2004) ("'[l]ove and affection' (especially between a child and a parent) do not constitute consideration" (citation omitted)); see also Pershall v. Elliott, 249 N.Y. 183, 188 (1928) ("[a] previous moral obligation is insufficient as a consideration to support an action to enforce an executory contract") (citation

---

offer and acceptance, not delivery). Further, a supposed oral promise by Orly to indemnify Sagi cannot be used to vary or add to the unambiguous terms of the Sagi Promise Document, which obligates only Sagi and does not reference any obligation by Orly. See W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary a writing.") Wells Fargo Bank, Northwest, N.A. v. TACA Int'l Airlines, S.A., 247 F.Supp.2d 352 (S.D.N.Y. 2002) ("It is well-established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract"); Mitchell v. Mitchell, 82 A.D.2d 849 (2d Dept. 1981) (courts "will not imply a contract term that the parties failed to insert"); Lucas v. Oxigene, Inc., 94 Civ. 1691 (MBM), 1995 U.S. Dist. LEXIS 12575, *12 (S.D.N.Y. Aug. 30, 1995) (parol evidence rule exists to prevent a party from signing a contract "and then claiming he was induced to sign it by contrary oral representations").

omitted).[8]

In any event, the document that actually resolved and settled all issues in Arie and Dalia's divorce action" was the Divorce Stipulation. See Divorce Stipulation, p. 1 (Reply Decl., Ex. 65) (so stating). That Divorce Stipulation, however, already had been signed by Arie and Dalia, and was binding upon them, well before the November Document was created or signed by Orly. Id. at p. 56. Thus, any "emotional and psychological benefit" derived from the end of the divorce process was not derived from the November Document (or even the Sagi Promise Document), but by the Divorce Stipulation.

### D.   There Is No Consideration For The November Document Because Past Consideration Is No Consideration

The November Document is between Sagi and Orly. November Document (Leinbach Decl., Ex. 1). Sagi provide no consideration of any kind to Orly for the November Document. The TRI shares were not Sagi's shares to give. The divorce was not Sagi's divorce. In this regard, Sagi's convenient claim that the Sagi Promise Document was a condition precedent to the divorce fails under basic rules of contract interpretation and the Parol Evidence Rule. See Argument, Point I (B).

Moreover, there can be no consideration here because, by November 10, 2004, the TRI Shares had been transferred (Transfer Agreement (Leinbach Decl., Ex. 31) and the Divorce

---

[8]   Sagi's reliance upon Commodities Futures Trading Comm'n v. Walsh, 17 N.Y.3d 162 (2011) ("Walsh I") and Commodities Futures Trading Comm'n v. Walsh, 2014 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 28, 2014) ("Walsh II"). (Sagi Br. at 10) is misplaced. Walsh addresses a narrow, limited exception where non-economic consideration between spouses can be "fair consideration" for a spousal separation agreement. See Walsh I, 17 N.Y.3d at 175-176 (certain forms of non-economic consideration which may be considered "fair consideration" for a spousal separation agreement incorporated into divorce decree); Walsh II, 2014 U.S. Dist. LEXIS 29094, at *28 (ex-wife's non-economic contributions during 23 years of marriage, such as "rais[ing] the children, supervis[ing] home renovations, manag[ing] the family's finances and relinquish[ing] a lucrative career" was fair consideration for property received in divorce). The November Document is not a property settlement and does not distribute marital property. Notably, Sagi does not cite a single case applying this narrow Walsh exception to a child's promise to support his/her parent.

Stipulation binding "as of October 26, 2004" (Divorce Stipulation, p. 1 (Reply Decl., Ex. 65).

Further, the Sagi Promise Document – another unambiguous document which must be enforced

according to its plain terms (Lockheed, 639 F.3d at 69; Giancontieri, 77 N.Y.2d at 162) – does

not reference any obligation by Orly to pay Dalia any amount.[9] To the contrary, the obligation is

consistently and repeatedly Sagi's alone.  See Sagi Promise Document (Leinbach Decl., Ex. 1).

Under these circumstances, Sagi's efforts, some two weeks later, to make Orly liable for 50% of

his gratuitous promise to his mother is unenforceable, because the only possible consideration

here is "past consideration."

It is well-settled that past consideration is no consideration.   Christensen v.

Pettersen, 239 A.D. 735 (1st Dept. 1933) ("something which has been given before the promise

is made, and, therefore, without reference to it, cannot, properly speaking be consideration");

Pershall, 249 N.Y. at 188 ("The doctrine that past consideration is no consideration is well

recognized and universally enforced"); Kastil v. Carro, 145 A.D.2d 388, 389 (1st Dept. 1988)

(granting defendant's summary judgment motion because "past consideration is no

consideration"); Butcher v. Gerber Products Co., 8 F.Supp.2d 307, 320 (S.D.N.Y. 1998)

("promise supported by past consideration is unenforceable because … since the detriment had

already been incurred. It cannot be said to have been bargained for in exchange for the

promise"); Brunt v. Rauschenberg, 799 F. Supp. 1467, 1471 (S.D.N.Y. 1992) (dismissing claims

based on past consideration as it is "elementary that past consideration is not consideration")

(citation omitted).[10]

---

[9]   The Parol Evidence Rule applies even in the absence of a merger clause.  See Braten v. Bankers Trust Co., 60 N.Y.2d 155 (1983).

[10]   That past consideration is no consideration also successfully distinguishes Sagi's claim that there is consideration here because he suffered a detriment by promising to support Dalia (Sagi Br. at 12).  As noted in Butcher v. Gerber Products Co., 8 F.Supp.2d 307, 320 (S.D.N.Y. 1998) where a detriment has already been incurred it cannot be consideration, because it cannot be said to have been bargained for in exchange for the new promise.

In <u>Gutman v. Gutman</u>, 31 A.D.3d 709, 709-10, 819 N.Y.S.2d 771 (2d Dept. 2006), for example, plaintiffs argued that a waiver of the right to challenge a will's testamentary provision constituted consideration sufficient to form a binding contract. <u>Id.</u> at 709. However, approximately six weeks prior to executing the contract, the parties executed a separate waiver as to any such challenge of the testamentary provision. <u>Id.</u> at 709-10. Accordingly, the Second Department held the contract was unenforceable due to the absence of consideration:

> "Generally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise. That is, since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise."

<u>Id.</u> at 710. <u>See also</u> <u>Butcher</u>, 8 F.Supp.2d at 320 (follow up letter unenforceable as it provided no additional consideration to an employee who signed it, just recitation of consideration already provided). Here too, Sagi could offer nothing to his sister, and already had promised his mother. The November Document is not supported by consideration for this additional reason.[11]

Equally meritless is Sagi's contention that the Sagi Promise Document and November Document have consideration because they are "interrelated" with the Divorce Stipulation. (Sagi Br. at 2).[12]

---

This is what happened here. Sagi incurred his detriment on October 30, 2004, and it existed whether or not Orly agreed to indemnify him later. Under those circumstances, Sagi's detriment is "past consideration" and is no consideration for the November Document.

[11] A narrow exception to the general rule that past consideration is no consideration is set forth in N.Y. Gen. Obligations Law § 5-1105. This exception, however, does not apply here. *First*, § 5-1105 does not apply because the Sagi Promise Document also fails for lack of consideration. *Second*, § 5-1105 requires that the writing "contain an unequivocal promise to pay a sum certain at a date certain." <u>Umscheid v. Simmacher</u>, 106 A.D.2d 380, 381 (2d Dept. 1984). The November Document does not meet that requirement.

[12] Sagi also contends (Sagi Br. at 11) that the Sagi Promise Document and the November Document are enforceable together, citing <u>Kurtz v. United States</u>, 156 F. Supp. 99 (S.D.N.Y. 1957) and <u>Nau v. Vulcan Rail & Constr. Co.</u>, 286 N.Y. 188 (1944). His citation is unavailing. In both cases, the contracts which were signed at different times expressly referenced each other, and thus the later-signed document was found within the four corners of the first-signed document. Here, Sagi's unambiguous promise stands alone, and he cannot vary it by reference to some oral understanding. <u>See Nau</u>, 286 N.Y. at 199 (stating that "if the court finds as a matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the

As discussed above (Argument, Point I (B)), Sagi's claim wrongfully ignores both the four corners of the Divorce Stipulation and the Parol Evidence Rule.   When separate contracts form a single integrated transaction, they have certain indicia, i.e., (i) the agreements reference one another; (ii) the agreements are executed by the same parties; (iii) the agreements are executed for the same purpose; and (iv) the agreements are executed contemporaneously. See Commander Oil Corp. v. Advance Food Service Equip., 991 F.2d 49, 53 (2d Cir. 1993); Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 233 (2d Cir. 1990) ("instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together."); BWA Corp. v. Alltrans Exp. U.S.A., Inc., 112 A.D.2d 850, 852 (1st Dept. 1985) (same).

None of these indicia are met here: (i) the Divorce Stipulation does not reference the Sagi Promise Document, or the November Document, and the Sagi Promise Document does not reference the November Document; (ii) the Divorce Stipulation is signed by Arie and Dalia, the Sagi Promise Document by Dalia and Sagi, and the November Document by Sagi and Orly; (iii) the Divorce Stipulation was executed to end a divorce action, the Sagi Promise Document provided funds to Dalia under certain conditions, and the November Document indemnified Sagi; (iv) the November Document was both created and signed eleven days after the Divorce Stipulation and Sagi Promise Document were executed.   Under these circumstances, the three documents are not interrelated.   See, e.g., Big East Entertainment, Inc. v. Zomba Enterprises, Inc., 453 F. Supp.2d 788, 799 (S.D.N.Y. 2006) (two agreements not found to be interrelated because two agreements were not executed by the same parties and each agreement had a separate purpose; granting summary judgment dismissing complaint).

---

decision of the case."); cases cited above at Argument, Point I (B) (all holding that parol evidence cannot be used to vary or add to an unambiguous contract).

Moreover, the separate Sagi Promise Document and November Document agreements cannot be part of a single integrated transaction where, as here, their inclusion would markedly alter the plain terms of the Divorce Stipulation.  See Nobel Insurance Co. v. Hudson Iron Works, Inc., 51 F. Supp.2d 408, 413 (S.D.N.Y. 1999) (documents do not form interrelated transaction where certain documents are "at best, inconclusive, unexecuted, one-sided documents to markedly alter the terms and plain meaning of" other agreements; granting summary judgment dismissing complaint); Republic Insurance Co. v. Nobel Insurance Co., 2 F.Supp.2d 548, 549 (S.D.N.Y. 1998) (documents do not form interrelated transaction where "the plain and unambiguous terms of an executed contract is to be drastically altered by reference to letters that that do not even qualify as contracts in the own right"; granting summary judgment dismissing complaint).

Here, the fully-integrated Divorce Stipulation does not contain a clawback, and an attempt to include one in it was rejected.  CFS ¶¶ 25-28; (Reply Decl., Ex. 66, 67).  To incorporate a clawback into the Divorce Stipulation by reference, as Sagi suggests, would "drastically alter" the Divorce Stipulation and should not be permitted.  See Republic Insurance, 2 F.Supp.2d at 549.  Indeed, integration of the Sagi Promise Document or the November Document is expressly prohibited by the "ENTIRE UNDERSTANDING" clause of the Divorce Stipulation, because they are not "expressly referenced," "expressly contemplated by," or "entered concurrently with" the Divorce Stipulation.  Divorce Stipulation, p. 53 (Leinbach Decl., Ex. 12).

## II.   SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT (BUT ORLY GENGER IS) BECAUSE THE NOVEMBER DOCUMENT IS NOT ENFORCEABLE DUE TO A MUTUAL MATERIAL MISTAKE OF FACT

A "mutual mistake of fact" is "a mistake that is shared and relied on by both parties to a contract." BLACK'S LAW DICTIONARY 814 (7th Ed. 2000).  A contract based upon a

material mutual mistake of fact is subject to rescission.  <u>Rodriguez v. Mower</u>, 56 A.D.3d 857,

858 (3d Dept. 2008) (granting summary judgment on contract claim based on mutual mistake of

fact); <u>United States v. Williams</u>, 02-CR-1372 (RPP), 2014 U.S. Dist. LEXIS 97367, *16

(S.D.N.Y. July 17, 2014) (voiding plea agreement based upon mutual mistake of fact).

> In order to obtain such relief [rescission], it must be shown that the
> mistake in question is mutual, substantial, material and exists at the
> time the contract is entered.  The effect of rescission is to declare
> the contract void from its inception and to put or restore the parties
> to status quo.

<u>Rodriguez</u>, 56 A.D.3d at 858; <u>Williams</u>, 2014 U.S. Dist. LEXIS 97367, at *16 (same).

The November Document is subject to rescission because it is based upon a

mutual mistake of fact.  Any agreement reached in 2004 was premised on the Genger family

belief that Orly and Sagi were being treated equally in the divorce, with each one getting

equivalent amounts of TRI shares.  By the time of Dalia's "demand" in 2014, the transfers had

been determined to be void <u>ab</u> <u>initio</u> and Sagi (via TPR) had obtained all the shares and all the

value.  <u>See</u> CSF ¶¶ 43-69.  Notably, Judge Keenan's decision to provide the Proceeds to TPR,

and the First Department's decision to hold that Orly had no claim to the Orly Trust TRI Shares

or the Proceeds, were both driven by a Stipulation drafted by Sagi and Dalia to create precisely

that result.  <u>See</u> CSF ¶¶ 55-69.

When the Divorce Stipulation (and related Transfer Document) were executed,

however, Dalia, Sagi and Orly "each reasonably believed that the 2004 Transfers provided for in

the Stipulation of Settlement were valid and enforceable."  Orly 9/20/11 Compl. ¶ 57; Sagi

4/25/13 Answer ¶ 57; Sagi 1/16/14 Dep. Tr. at 178:12-15 (Leinbach Decl., Exs. 32, 33, 14);

Dalia Complaint in <u>Dalia Genger v. Arie Genger</u>, Index No. 113862/2010 (Reply Decl., Ex. 77).

Under Sagi's theory of the case, the transfer of TRI shares from TPR to the Orly and Sagi Trusts

was a <u>material</u> component of the November Document (as well as the Sagi Promise Document)

that Dalia, Sagi and Orly <u>relied</u> upon.  Operative Complaint ¶¶ 8-9 (Leinbach Decl., Ex. 1).  Sagi

identifies Orly's "receiving" the TRI Shares as the supposed consideration for the Sagi Promise

Document and the November Document.  <u>Id.</u> ¶ 8.  Indeed, the Sagi Promise Document expressly

states that the promise is based on Sagi's understanding that equal amounts of TRI Shares would

be received by Orly and Sagi's respective trusts:

> This letter confirms our understanding with respect to certain
> payments that I am prepared to make to you <u>in consideration of the</u>
> <u>following.  My sister Orly and I are benefiting by the receipt of a</u>
> <u>total of 794.40 shares of Transf-Resources, Inc. ("TRI"), or</u>
> <u>beneficial interests in those shares, by trusts for our benefit</u>.  In
> reliance on this letter and <u>in consideration of the trust's receipt of</u>
> <u>these shares</u> and other consideration, you are giving up valuable
> marital rights, and you desire further assurance that you will have
> sufficient funds to support your lifestyle.
>
> If you, in your sole and absolute discretion, from time to time
> desire funds to support your lifestyle, you may request in writing
> that I make payment to you as provided in this letter.  Promptly
> upon receipt of this request, I will pay to you (1) an amount equal
> to all dividends, distributions, proceeds or other payments
> attributable to 794.40 shares of TRI (adjusted for any splits or
> similar action) that have previously been paid to Orly, me or any
> trust for the benefit of either of us, less any amounts previously
> paid to you pursuant to this letter, or (2) any lesser amount
> indicated in your request.

Sagi Promise Document (Leinbach Decl., Ex. 1) (emphases added).

That equal receipt of TRI Shares benefiting both Sagi and Orly never happened.

Rather, the transfers were determined to be void <u>ab initio</u> and only Sagi benefited.  CSF ¶¶ 43-

69.  Under the principle of mutual mistake of fact, the November Document is subject to

rescission and, as a result, Sagi's breach of contract claim fails as a matter of law.

**III.  SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE**
**WHETHER SAGI GENGER GAVE ORLY GENGER THE REQUIRED**
**OPPORTUNITY TO DEFEND BEFORE PAYING DALIA GENGER'S DEMAND**
**IS A DISPUTED ISSUE OF FACT**

An indemnitee cannot seek reimbursement from an indemnitor unless the

indemnitee first notifies the indemnitor of a potentially covered claim and gives it an opportunity to defend. See Chase Manhattan Bank v. 264 Water St. Assocs., 222 A.D.2d 229, 231 (1st Dept. 1995) (one who "fails to notify an indemnitor about an impending settlement proceeds at his own risk"); Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975), aff'd on other grounds, 41 N.Y.2d 1045 (1977). If it fails to do so, the indemnitee "must establish that [it] would have been liable and that there was no good defense to the liability." Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 74 A.D.3d 32, 39 (1st Dept. 2010) (citation omitted); Moving Br. at 18.[13]

On January 22, 2014, Dalia demanded $200,000 from Sagi. Dalia Demand (Leinbach Decl., Ex. 56). On February 3, 2014, Sagi made a check payable to Dalia in the amount of $200,000, which was cashed on February 6, 2014. Sagi Check and Statement (Leinbach Decl., Ex. 61). Orly avers Sagi never gave her or her counsel any notice, or a chance to defend, before paying Dalia, even though Sagi knew Orly was disputing the validity and enforceability of the Sagi Promise Document. See Orly Decl. ¶ 10 (Leinbach Decl., Ex. 57); 11/13/14 Orly Decl. ¶ 11 (Reply Decl., Ex. 80); 11/13/14 Harris Decl. ¶¶ 3-6 (Reply Decl., Ex. 81); Harris Decl. ¶ 5 (Leinbach Decl., Ex. 62); 1/24/14 Email (Leinbach Decl., Ex. 63); CSF ¶¶ 87-92. Sagi claims otherwise. This, therefore, is a disputed material issue of fact preventing summary judgment in Sagi's favor because paying a demand without adequate notice and opportunity to defend waives Sagi's indemnification claim. See Ballard v. Parkstone Energy, LLC, 664 F.Supp.2d 325, 330-31 (S.D.N.Y. 2009) (late notice resulted in waiver of buyer's

---

[13]   The November Document had an express notice provision. November Document (Leinbach Decl., Ex. 1). Even if it had no notice provision, however, "the implied covenant of good faith warrants reading into the contractual procedure a requirement that notice be given within a reasonable time so as to afford a meaningful opportunity of participation." Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975).

indemnification claims).

Sagi's self-serving assertion (Sagi Br. at 13) that notice and opportunity to defend does not matter, because "there is no viable defense" to the Sagi Promise Document, is incorrect. Viable defenses do exist, including a lack of consideration, and no "meeting of the minds." See Argument, Points I and II. To reiterate one point, there is no consideration where, as here, (i) Dalia tried to, but failed, to make a clawback part of the consideration for divorcing Arie and divorced him anyway (CSF ¶¶ 25-28); (ii) Dalia and Sagi successfully convinced a number of Courts, in part through a Stipulation they wrote and got "so-ordered" by the Delaware Chancery Court, that the TRI share transfers were void, which allowed TPR to get both the TRI shares and all proceeds from those shares (id. ¶¶ 55-72); (iii) Dalia concedes the Orly Trust never received any TRI shares or funds (id. ¶¶ 70-72); and (iv) Dalia is currently suing Arie for $10 million dollars because of his failure to transfer the TRI shares to the Orly Trust in 2004 (id. ¶¶ 70-71). Demonstrably, Sagi's Promise lacks consideration, and is unenforceable by Dalia. Orly should have been given a proper opportunity to raise this defense before Sagi paid Dalia.

Equally unsupported, is Sagi's assertion that the law of indemnity does not apply because the November Document is not an indemnity obligation, but "a contribution obligation" (Sagi Br. at 14). The November Document expressly states that Orly "agree to indemnify, defend, and hold me harmless, for and against one-half (1/2) of any and all…Claims." Compl., Ex. B (Moving Decl., Ex. 2). This matches the Black's Law Dictionary definition of indemnity: "1. A duty to make good any loss, damage, or liability incurred by another. 2. The right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty." Black's Law Dictionary 616 (7th ed. 2000). Conversely, Sagi does not cite a single case to support his argument that the law of indemnity does not apply.

Finally, Sagi's claim (Sagi Br. at 14) that Orly repudiated the November Document in a February 18, 2014 email (attached to May 29 Sagi Decl. as Ex. E) fails. *First*, even if Orly's statement constituted repudiation (it did not), by February 18, 2014 Sagi already had paid Dalia $200,000, without informing Orly he was about to pay or allowing Orly an opportunity to defend. *Second*, "[a] 'repudiation can be determined to have occurred only when it is shown that 'the announcement of an intention not to perform was positive and unequivocal.'" Briarwood Farms, Inc. v. Toll Bros., Inc., 2011 U.S. App. LEXIS 25595, *5 (2d Cir. Dec. 22, 2011) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 112 (2d Cir. 2010)). Orly asking Sagi to "Please stop lying about me and about the history" (2/18/14 Email) is not a "positive and unequivocal" repudiation of anything.

## IV.   SAGI GENGER IS NOT ENTITLED TO SUMMARY JUDGMENT (BUT ORLY GENGER IS) ON SAGI GENGER'S EQUITABLE CLAIM FOR PROMISSORY ESTOPPEL

"To make out a claim for promissory estoppel, a plaintiff must prove (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee; and (3) unconscionable injury to the relying party as a result of the reliance." Princeton Club of New York, 13 Civ. 8747 (KBF), 2014 U.S. Dist. LEXIS 38560, *9 (S.D.N.Y. March 24, 2014) (quoting Readco. Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)); Lampros v. Banco Do Brasil, S.A., 2013 U.S. App. LEXIS 22316, *3 (2d Cir. Nov. 4, 2013) (promissory estoppel claim fails in the absence of reasonable reliance). Here, Sagi cannot establish that he reasonably and foreseeably relied upon Orly's alleged promise in paying Dalia.

On February 6, 2014, when Sagi paid Dalia $200,000 he was already aware that Orly disputed the validity and enforceability of the Sagi Promise Document and November Document – and rightfully so. See Argument Points I to III. Sagi was further aware that he and his mother have, for many years and via many courts, repudiated the 50-50 split among Sagi and

Dalia that was contemplated by the family, so that Sagi could have and control all of the TRI shares and all of the resulting proceeds. Given all this, Sagi could not have reasonably and foreseeably relied upon any alleged promise at the time he paid Dalia, and there is no equitable basis for forcing Orly to pay half of everything, when her brother and mother have made sure she receives nothing. Thus, Sagi's claim for promissory estoppel fails.

Sagi's promissory estoppels claim also fails because of Sagi's unclean hands. Specifically, Sagi, as President of TPR, promised to do all that was necessary to effectuate the transfer of TRI shares to his sister:

> In case, at any time hereinafter, any further action is necessary or desirable to carry out the purpose of this Letter Agreement, each of the parties hereto shall take or cause to be taken all necessary action, including, without limitation, the execution and delivery of such further instruments and documents which may be reasonably requested by any party for such purpose or otherwise to complete or perfect the transactions contemplated hereby.

Transfer Agreement (Leinbach Decl., Ex. 31). Instead of taking "any further action necessary to" effectuate the transfer of TRI shares, Sagi instead executed the Side Letter Agreement agreeing to sell the Orly Trust's TRI shares. Side Letter Agreement (Leinbach Decl., Ex. 35).

Thereafter, Sagi successfully argued to this Court that TPR – and not the Orly Trust – was the owner of the Orly Trust TRI shares, and that TPR – and not the Orly Trust – should received the $10.3 million in proceeds for those shares. Under these circumstances, Sagi is foreclosed from seeking any equitable relief:

> A plaintiff need not have led a blameless life in all respects in order to invoke equitable relief, but cannot have engaged in underhanded behavior related to the matter in which he seeks the relief. On the other hand, with respect to that matter, conduct that falls short of what is criminal or tortious can transgress equitable standards. Id. Equity affords wide discretion to the court refusing to aid the "unclean litigant." The court is "not bound by any formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Keystone Driller Co. v.

General Excavator Co., 290 U.S. 240, 246, 78 L. Ed. 293, 54 S. Ct. 146 (1933). For example, in Fratelli Lozza (USA) Inc. v. Lozza (USA), 789 F. Supp. 625, 636 (S.D.N.Y. 1992), the court denied the equitable remedy of rescission to a plaintiff that was itself in breach of the agreement on which its lawsuit rested. Acting on similar [*5] principles, the Court of Appeals in Bandes v. Harlow & Jones, Inc., 852 F.2d 661 (2d Cir. 1988) upheld the district court's determination that the former managers of an expropriated Nicaraguan company that had enjoyed state favoritism under a prior regime had unclean hands that barred them from laying claim to the entire interpleaded fund owed to the company. Id. at 668.

Enh, Inc. v. International Diffusion SRL, 97 Civ. 3202 (LAP), 1997 U.S. Dist. LEXIS 7665, 4-5 (S.D.N.Y. May 30, 1997); see also French v. New York State Dep't of Educ., 476 Fed. Appx. 468, 472 (2d Cir. 2011) (granting summary judgment because of plaintiff's unclean hands), and quoting Precision Instrument Mfg. Co. v. Automotive Maint. Machinery Co., 324 U.S. 806, 814 (1945) (the doctrine of "[un]clean hands . . . closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.").

## CONCLUSION

Having first taken for himself all the Orly Trust TRI shares and their millions in proceeds, Sagi now turns around and claims his gratuitous promise to his mother still must be borne 50-50 by his sister. Sagi is wrong. For each and every one of the reasons set forth above, Orly Genger respectfully requests the Court (i) deny Sagi's motion for summary judgment, (ii) grant Orly motion for summary judgment, dismissing the complaint with prejudice; and (iii) grant Orly such other and further relief as the Court deems just and proper.

Dated:   New York, New York
        November 14, 2014           ZEICHNER ELLMAN & KRAUSE LLP

                                  By: _____
                                     Yoav M. Griver
                                     Bryan D. Leinbach
                                     Attorneys for defendant Orly Genger
                                     1211 Avenue of the Americas
                                     New York, New York 10036
                                     (212) 223-0400