UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
SAGI GENGER,                                                        :
                                                                    :
                                  Plaintiff,        :        1:14-cv-05683 (KBF)
                                                                    :
                   -against-                        :
                                                                    :
ORLY GENGER,                                                  :
                                                                    :
                                  Defendant.       X
--------------------------------------------------------------------- 

**PLAINTIFF SAGI GENGER'S RESPONSE TO DEFENDANT
ORLY GENGER'S LOCAL RULE 56.1 STATEMENT**

1.      Sagi objects to Orly's Statement No. 1 on the ground that it is irrelevant.  To the

extent a response is required, it is undisputed that Orly Genger ("Orly") is an accomplished

artist.  *See* Answr. Decl.[1] Exhibit ("Exh.") KK.

2.      Disputed.  Orly is a graduate of Brown University who in 2004 ran a business

called White Box LLC.  Answr. Decl. Exh. PP (Deposition of Orly Genger in *Orly Genger v.*

*Sagi Genger*, No. 100697/08 (Sup. Ct. N.Y. Cnty.) taken on May 9, 2012 at 72:19-78:11); Exh.

CCC (Orly's Curriculum Vitae).  Orly did not rely upon Sagi, but rather obtained independent

advice before executing the Indemnity dated November 10, 2004 (the "Nov. 10, 2004

Indemnity").  Answr. Decl. Exh. B (Declaration of David Parnes, dated May 29, 2014, ¶ 8).

3.      Undisputed.

---

[1]      The facts herein are drawn from the declarations filed in the predecessor case, No. 1:14-cv-
01006, of David Parnes, executed on May 29, 2014 ("Parnes Decl."), Sagi Genger, executed on May 29,
2014 ("May 29 Sagi Decl."), Dennis Ryan, executed on May 29, 2014 ("Ryan Decl."), Sagi Genger,
executed on July 7, 2014 ("July 7 Sagi Decl."), and Dalia Genger, executed on July 7, 2014 ("Dalia
Decl."), and are annexed to the Declaration of John Dellaportas, dated November 14, 2014 ("Answr.
Declaration"), filed herein as Exhibits B-F, respectively.

4.      Undisputed, except it is disputed that Arie Genger ("Arie") founded TPR, upon information and belief.

5.      Undisputed that Dalia Genger ("Dalia") is Sagi and Orly's mother.  It is disputed that Arie and Dalia remained married until October 26, 2004.  Arie and Dalia's divorce was finalized when the court issued the Divorce Judgment on January 7, 2005.  Answr. Decl. Exh. G (Divorce Judgment dated Jan. 7, 2005).  It is disputed that Dalia is "worth millions of dollars." Sagi denies knowledge of Dalia's current net worth, but admits that the Divorce Stipulation and Final Arbitration Award discuss Arie's and Dalia's financial state of affairs in 2004 and 2008. Since then, Orly has raised several meritless lawsuits against Dalia which has forced Dalia to incur substantial legal fees.  *See, e.g.,* Answr. Decl. Exh. J.  Orly's statements in footnote 2 are both irrelevant and disputed because any restriction set forth in the Securities Exchange Commission Consent Judgment expired on April 28, 2011.  *See* Leinbach Decl. Exh. 11 (SEC Consent Judgment, dated April 28, 2006 at 5-6).

6.      Disputed.  Arie and Dalia's divorce was not finalized until January 5, 2005 when the Divorce Judgment was entered by the Court.  *See* Answr. Decl. Exh. G (Divorce Judgment, dated Jan. 7, 2005).

7.      Disputed.  As part of the negotiation of Arie and Dalia's divorce, Arie and Dalia entered a Stipulation of Settlement, "made as of October 26, 2004," which they executed on October 28, 2004 and October 30, 2004 respectively, but their divorce was not fully finalized until January 7, 2005.  *See* Answr. Decl. Exh. N (Divorce Stipulation at 57); Exh. G (Divorce Judgment, dated Jan. 7, 2005).

8.      Sagi objects to Orly's Statement No. 8 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to paragraph 1(a) on page 44 referenced in the Divorce Stipulation itself for the true and correct contents thereof.  *See id.*

9.      Sagi objects to Orly's Statement No. 9 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to paragraph 1(b) on page 44 referenced in the Divorce Stipulation itself for the true and correct contents thereof.  *See id.*

10.      Undisputed.

11.      Sagi objects to Orly's Statement No. 11 on the ground that it is irrelevant.  To the extent a response is required, undisputed.

12.      Sagi objects to Orly's Statement No. 12 on the ground that it is irrelevant.  To the extent a response is required, it is disputed.  Marilyn B. Chinitz stated that she "do[es] not have access to the Barbara Firm's files concerning its representation of Dalia Genger" and that Dalia "discharged the Barbara Firm before the execution of the Divorce Stipulation dated as of October 26, 2004, as well as  the Promise Contract and Indemnity Agreement."  *See* Leinbach Decl. Exh. 19 (Declaration of Maryilyn B. Chintz, dated October 9, 2014 and filed at 1:14-cv-05683, Doc. 40-8, ¶¶ 3-5).  Ms. Chintz further stated that she "was not involved with the Promise Contract and Indemnity Agreement.  *Id.* ¶ 5.

13.      Sagi objects to Orly's Statement No. 13 on the ground that it is irrelevant.  To the extent a response is required, it is disputed.  Sheldon Greenbaum, Esq. of Goldman & Greenbaum, P.C. did not state that he has no knowledge of the Oct. 30, 2004 Promise or Nov. 10, 2004 Indemnity, as represented by Orly.  Leinbach Decl. Exh. 22 (Letter from Sheldon Greenbaum to Yoav Griver, dated October 8, 2014 and filed at 1:14-cv-05683-KBF, Doc. 41-1 on Oct. 21, 2014).  Instead, Mr. Greenbaum stated that "Goldman & Greenbaum, P.C. has no

documents responsive to the following numbered requests contained in your subpoena: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14." *Id.*

14.     Sagi objects to Orly's Statement No. 14 on the ground that it is irrelevant.  To the extent a response is required, it is undisputed that Sonnenschein Nath & Rosenthal LLP (now Dentons US LLP) and Edward Klimerman, a partner at the firm, were Arie's former attorneys.  It is undisputed that Edward Klimerman represented Arie in the negotiation and execution of the Divorce Stipulation.  *See* Answr. Decl. Exh. N.  It is undisputed that Denton's search recovered no emails responsive to a request from Sagi's counsel quoted in paragraph 14 of Orly's 56.1 Statement because the firm apparently had no emails retained from that period.  Notwithstanding Denton's failure to locate such emails, Denton agreed to authenticate the Nov. 10, 2004 Indemnity annexed to its email.  *See* Answr. Decl. Exh. SS.

15.     Sagi objects to Orly's Statement No. 15 on the ground that it is irrelevant.  To the extent a response is required, Sagi denies knowledge of the allegations regarding what documents were (or were not) in Dalia's control and refers to the representations made by her attorney in response to Orly's subpoena.  *See* Leinbach Decl. Exh. 26 (Dalia Genger's Response to Subpoena, dated September 15, 2004 and filed at 1:14-cv-05683-KBF, Doc. 41-5).

16.     Sagi objects to Orly's Statement No. 16 on the ground that it is irrelevant.  To the extent a response is required, it is disputed because Sagi produced an email from Denton dated November 10, 2004 attaching an unsigned version of the Nov. 10, 2004 Indemnity in final form.  Answr. Decl. Exh. MMM.   Denton agreed to authenticate that version.  *See* Answr. Decl. Exh. SS.  In addition, Sagi produced a redacted version of an email exchange between himself and David Parnes, dated Oct. 18, 2004, concerning the Oct. 30, 2004 Promise and Nov. 10, 2004

4

Indemnity, as Exhibit Q Part 4 annexed to the Declaration of Mary C. Pennisi, dated September 11, 2014. *See also* Answr. Decl. Exh. UU.

17. Sagi objects to Orly's Statement No. 17 on the ground that it is irrelevant. To the extent a response is required, it is undisputed. However, Sagi avers that because Arie was not a party to either the Oct. 30, 2004 Promise or the Nov. 10, 2004 Indemnity, there was no reason to communicate with Arie or his counsel about these documents. In addition, Sagi notes that the Divorce Stipulation was made as of October 26, 2004, so it would have been impossible to transmit the Nov. 10, 2004 Indemnity or Oct. 30, 2004 Promise that post-dated the Divorce Stipulation prior to the execution of the Divorce Stipulation. *See* Answr. Decl. Exhs. AAA and BBB. Finally, it is noted that the Nov. 10, 2004 Indemnity was prepared and circulatd by Arie's own attorney, Edward Klimerman, and so it is difficult to believe that Arie was unaware of that document.

18. Disputed in so far as the Nov. 10, 2004 Indemnity was executed after the Divorce Stipulation and the Oct. 30, 2004 Promise was executed concurrently therewith, it would have therefore been impossible to transmit executed versions of them before the execution of the Divorce Stipulation. Moreover, in October 2004, Orly was yachting off of the coast of Fiji and only accessible via satellite phone. *See* Answr. Decl. Exhs. AAA and BBB.; *see also* Parnes Decl. Exh. B, ¶ 5; Pennisi Decl. Exh. A, Tr. 30:8-30:18, 43:18-43:22; Exh. G (Divorce Judgment, dated Jan. 7, 2005); Exh. H at 0008-0010.

19. Sagi objects to Orly's Statement No. 19 on the ground that it is irrelevant. Undisputed. Sagi avers, however, that Arie was party to neither the Nov. 10, 2004 Indemnity nor the Oct. 30, 2004 Promise, so Arie would not have been privy to any discussions concerning them prior to the execution of the Divorce Stipulation. *See* Answr. Decl. Exhs. AAA and BBB.

20.      Sagi objects to Orly's Statement No. 20 on the ground that it is irrelevant. Disputed, in that drafts of the Divorce Stipulation reference other documents "entered into concurrently herewith" of which the Oct. 30, 2004 Promise was one such document.  As for the Nov. 10, 2004 Indemnity, it did not exist as of the time of the Divorce Stipulation, so the Stipulation plainly would not have referenced it.  *See* Answr. Decl. Exh. N.

21.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.   Disputed, in that the Divorce Stipulation references other documents "entered into concurrently herewith" of which the Oct. 30, 2004 Promise was one such document.  As for the Nov. 10, 2004 Indemnity, it did not exist as of the time of the Divorce Stipulation, so the Stipulation plainly would not have referenced it.  *See* Answr. Decl. Exh. N.

22.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

23.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

24.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

25.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

26.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

27.      Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

28.     Sagi refers to the Divorce Stipulation itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. N.

29.     Sagi objects to Orly's Statement No. 29 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the TPR Board Resolution itself for references cited therein for the true and correct contents thereof.  *See* Leinbach Decl. Exh. 30 .

30.     Sagi objects to Orly's Statement No. 30 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the agreement, dated October 30, 2004, itself for references cited therein for the true and correct contents thereof.  *See* Leinbach Decl. Exh. 31 .

31.     Sagi objects to Orly's Statement No. 31 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the Irrevocable Proxies executed on October 29 and 30, 2004 themselves and the Voting Trust Agreement for references cited therein for the true and correct contents thereof.  *See id*.

32.     Undisputed that Sagi and Dalia believed the transfers of the TRI shares to Arie, the Orly Trust and Sagi Trust were valid and enforceable in 2004.  Sagi lacks knowledge of Orly's belief of the transfers' validity in 2004.  Disputed that Arie believed in good faith that the transfers were valid and enforceable, as courts in both New York and Delaware have found otherwise.  *See* Answr. Decl. Exhs. J, M, Q, R, S, T.

33.     Sagi objects to Orly's Statement No. 33 on the ground that it is irrelevant.  To the extent a response is required, Sagi disputes that Sagi was appointed CEO of TPR "[a]s part of the divorce."  It is disputed that "Sagi promised to do all that was necessary to effectuate the transfer of TRI shares."  Sagi refers to section 2.2 of the TPR Shareholders Agreement for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. O.  Sagi refers to

the Transfer Agreement for references cited therein for the true and correct contents thereof.  *See* Leinbach Decl. Exh. 31.

34.    Sagi objects to Orly's Statement No. 34 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the Stock Purchase Agreement, dated August 22, 2008, for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. P.  It is undisputed that Rochelle Fang is Sagi's mother-in-law.

35.    Sagi objects to Orly's Statement No. 35 on the ground that it is irrelevant.  To the extent a response is required, Orly's characterization of the TRI shares sale pursuant to the Stock Purchase Agreement and Letter Agreement, both dated August 22, 2008, is disputed.  Among other inaccuracies, TPR did not have to be determined to be both the record <u>and</u> beneficial owner of the shares, as Orly maintains in Statement No. 35, but rather only one or the other.  Sagi refers to the Stock Purchase Agreement and Letter Agreement, both dated August 22, 2008 for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exhs. P and YY.  Moreover, Orly's characterization of the $10.3 million is disputed.  *See* Answr. Decl. Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)); *see also* Exh. J *Genger*, 990 N.Y.S.2d at 502. Subsequently, the Delaware Supreme Court determined that TPR was the record owner, but reversed the Chancery Court's finding on beneficial ownership.  Answr. Decl. Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)); *see also* Exh. T (*Genger v. TR Investors, LLC*, 26 A.3d 180, 189 (Del. 2011)); Exh. U (Revised Final Judgment Order (Final Order) (Del. Ch. Ct. Aug. 19, 2011)).  Instead, Orly later stipulated away her rights to beneficial ownership to the Trump Group for a cash settlement.  *Id.*; *see also* Exh. Y (No. 651089/2010, NYSCEF 471 at 2 (N.Y.

Sup. Ct. N.Y. Cnty. June 19, 2013)); Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)).

36.     Sagi objects to Orly's Statement No. 36 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the Release for references cited therein for the true and correct contents thereof.  *See* Leinbach Decl. Exh. 36 (Release, dated September 23, 2008).

37.     Sagi objects to Orly's Statement No. 37 on the ground that it is irrelevant.  To the extent a response is required, Orly's Statement No. 37 is disputed.  Under the Letter Agreement, if it were judicially determined that TPR was the record or beneficial owner of the TRI shares, then TPR would receive approximately $10.3 million in proceeds from the sale of the Orly Trust TRI shares to the Trump Group.  *See* Answr. Decl. Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)); *see also* Exh. J (*Genger*, 990 N.Y.S.2d at 502 ("<u>The Trump Group's rights under the Letter would be triggered only if the 2004 transfers were judicially determined to be void, and as a result the legal and beneficial ownership of the TRI shares reverted to TPR</u>.") (emphasis added)).  Those funds were placed in escrow until such a judicial determination was made.  *Id.* Subsequently, the Delaware Supreme Court determined that TPR was the record owner, but reversed the Chancery Court's finding on beneficial ownership.  Answr. Decl. Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)); *see also* Exh. T (*Genger v. TR Investors, LLC*, 26 A.3d 180, 189 (Del. 2011)); Exh. U (Revised Final Judgment Order (Final Order) (Del. Ch. Ct. Aug. 19, 2011)).  Instead, Orly later stipulated away her rights to beneficial ownership to the Trump Group for a settlement.  *Id.*; *see also* Exh. Y (No. 651089/2010, NYSCEF 471 at 2 (N.Y. Sup. Ct. N.Y. Cnty. June 19, 2013))**;** Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*,

No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)).  On May 15, 2014, Judge Keenan of this Court determined that the issue of record and beneficial ownership was "dead" after the Delaware courts determined TPR was the record owner of the TRI shares of the Orly Trust and Orly stipulated away any rights she had to beneficial ownership by acknowledging that the Trump Group was the beneficial owner.  *See* Answr. Decl. Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2, *5 (S.D.N.Y. May 15, 2014)).

38.     Sagi objects to Orly's Statement No. 38 on the ground that it is irrelevant.  To the extent a response is required, Orly's Statement No. 38 is undisputed insofar as it represents that the Trump Group commenced an *in rem* proceeding under Title 8, Section 225 of the Delaware Code against Arie on August 25, 2008.  It is also undisputed that neither Orly nor the Orly Trust were parties to the Delaware action.  However, it is disputed that Sagi testified on behalf of the Trump Group.  Sagi actually testified as an individual fact witness at trial, just like Orly served as an individual fact witness at trial.

39.     Sagi objects to Orly's Statement No. 39 on the ground that it is irrelevant.  To the extent a response is required, Sagi avers that the Delaware Chancery Court's finding that the TRI Share transfers of 2004 were void ab initio was reversed on appeal.  *See* Answr. Decl. Exh. T (*Genger v. TR Investors, LLC*, 26 A.3d 180, 189 (Del. 2011)).  Sagi further refers to the opinion rendered by the Delaware Chancery Court on July 23, 2010 for the findings and references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. R  (*TR Invs., LLC v. Genger*, C.A. No. 3994-VCS, 2010 WL 2901704, at *1 (Del Ch. July 23, 2010)) and S (*TR Investors, LLC v. Genger*, No. CIV. A. 3994-VCS, 2010 WL 3279385, at *3 (Del. Ch. Aug. 9, 2010) *rev'd*, 26 A.3d 180 (Del. 2011)).

40.     Sagi objects to Orly's Statement No. 40 on the ground that it is irrelevant.  To the extent a response is required, Sagi avers that the Delaware Chancery Court's finding that the TRI Share transfers of 2004 were void ab initio was reversed on appeal.  *See* Answr. Decl. Exh. T (*Genger v. TR Investors, LLC*, 26 A.3d 180, 189 (Del. 2011)).  Sagi further refers to the opinion rendered by the Delaware Chancery Court on August 9, 2010 for the findings and references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. S (*TR Investors, LLC v. Genger*, No. CIV. A. 3994-VCS, 2010 WL 3279385, at *3 (Del. Ch. Aug. 9, 2010) *rev'd*, 26 A.3d 180 (Del. 2011)).

41.     Sagi objects to Orly's Statement No. 41 on the ground that it is irrelevant.  To the extent a response is required, Orly's Statement No. 41 is disputed, as neither Sagi nor TPR has ever argued in any forum that the 2004 transfers were void *ab initio*.  While the Trump Group sued on the theory that the 2004 transfers were "void *ab initio*," the Trump Group did not ultimately prevail on that point.  The original opinion from the Delaware Chancery Court held that "the transfers were void [and] the purportedly transferred shares continued to be owned by TPR," *see* Answr. Decl. Exh. S (*TR Investors, LLC,* 2010 WL 3279385, at *3), but that judgment was reversed on appeal.  The Delaware Supreme Court held that, because TPR was not a party, the Chancery Court only had jurisdiction to determine TPR's record, but not its beneficial, ownership.  Answr. Decl. Exh. T *Genger*, 26 A.3d at 189).  On remand, the Delaware Chancery Court then entered a "Revised Final Judgment Order," which struck the above language from the original judgment and replaced it with this: "[T]he transfers were void [and] the purportedly transferred shares continued at all times to be owned of record by TPR."  Answr. Decl. Exh. U ¶ 12.

11

42.     Sagi objects to Orly's Statement No. 42 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the opinion rendered by the Delaware Supreme Court for the findings and references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. T (*Genger v. TR Investors, LLC*, 26 A.3d 180, 189 (Del. 2011)).

43.     Sagi objects to Orly's Statement No. 43 on the ground that it is irrelevant.  To the extent a response is required, Orly's Statement No. 43 is undisputed insofar as Dalia in her capacity as Trustee commenced a lawsuit seeking a determination concerning the TRI shares. However, Orly's characterization of Dalia's capacity as Trustee as "purported" is disputed, as its jurisdictional statement, which has no basis in law.  In addition, Sagi disputes the allegation made at the outset of footnote 7 to Statement No. 43 as being counsel's invention which is not reflected in any of the judicial decisions Orly then proceeds to cite.

44.     Sagi objects to Orly's Statement No. 44 on the ground that it is irrelevant.  To the extent a response is required, Sagi refers to the So-Ordered Delaware Stipulation of the Delaware Chancery Court for the references cited therein for the true and correct contents thereof.  Answr. Decl. Exh. HHH.  Sagi further avers that in July 2013, Orly settled a lawsuit concerning the sale of the TRI shares with the Trump Group in New York State Court, agreeing to "cooperate" and "cause" her trust to release its TRI-related claims against the Trump Group.  Answr. Decl. Exh. LL.  Orly then had her counsel write the Delaware Court, where her trust was suing the Trump Group over the same shares, "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust."  Answr. Decl. Exh. MM.  Satisfied that Orly no longer wanted her trust to pursue ownership over the TRI shares, the Delaware Court dismissed her trust's claims with prejudice in the So-Ordered Delaware Stipulation.  Answr.

Decl. Exh. HHH.  Orly sold her economic rights to the TRI shares that her mother gave her trust in 2004, and while Orly will not reveal the sale price, her own attorney and one for the Trump Group have stated that Orly was paid cash.  Answr. Decl. MM and GG.

45.     Sagi objects to Orly's Statement No. 45 on the ground that it is irrelevant.  To the extent a response is required, Orly's Statement No. 45 is disputed in its representation that "TPR argued that it was entitled to the Proceeds because the Orly Trust TRI shares never belonged to the Orly Trust."  In November of 2013, TPR commenced an action before the Honorable John F. Keenan in this Court seeking the release of $10.3 million in proceeds from the sale of the Orly Trust TPR Shares after the Delaware court determined that record ownership of the TRI shares reverted back to TPR in 2008 and Orly stipulated away any ownership (record or beneficial) she had remaining in the TRI shares to the Trump Group in a settlement in 2013 (the "Federal Escrow Action").  *See* Answr. Decl. Exh. BB (Complaint filed in *TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK).  TPR moved for summary judgment but never disputed the Orly Trust's receipt of TRI shares in 2004.  Answr. Decl. Exhs. BB, CC, and DD (Complaint, Memorandum of Law in Support of Summary Judgment, Reply Memorandum of Law in Support of Summary Judgment filed in the Federal Escrow Action).  Instead, TPR moved for summary judgment on the basis that Orly forwent any claim she had to record or beneficial ownership therein in the 2013 Stipulation of Settlement with the Trump Group, and that these issues had been decided for the purpose of releasing the TRI Share Proceeds under the Escrow Agreement, as summarized by Judge Keenan:

> TPR opposes Orly's motion to dismiss and moves for summary judgment.
> Its position is largely predicated on my Omnibus Opinion [in *Glenclova*],
> which stated that "if the 2004 transfer of shares to Arie and the Orly Trust
> is found to be invalid, then TPR had the right to sell the shares to the
> Trump Group, and TPR would be entitled to the interpleaded funds."
> Glenclova, 874 F. Supp. 2d at 303.  Arguing from this language, TPR

asserts that the <u>recent resolution of the beneficial ownership issue compels
a ruling that the interpleaded $10.3 million must be released to TPR</u>.
TPR further contends that the doctrines of collateral estoppel, res judicata, and
judicial estoppel bar Orly from relitigating the rulings in the Omnibus
Opinion. Second, TPR contends that the longstanding New York Supreme
Court case, which the parties continue to litigate, does not include a claim
by Orly for the Proceeds.  Instead, according to TPR, Orly filed a new
action in New York Supreme Court on December 23, 2013 seeking to
compel the Escrow Agent to release the money to her. Third, TPR notes
that Orly is pursuing a claim for unjust enrichment in state court, and
argues that for TPR to be unjustly enriched it must first be enriched—that
is, it must first possess the funds at issue.  Fourth, TPR urges that a stay of
this action would be inappropriate, essentially because it would cause
further delay.

. . .

The beneficial ownership issue is now dead; Orly has settled with the
Trump Group. Therefore, TPR argues, it is now entitled to the Proceeds it
received from the Trump Group in consideration for those shares. TPR
continues, "That is not to say Orly loses her day in Court.... Orly remains
free to pursue her money damages, such as they are, in the New York
Supreme Court." (TPR Br. at 3; *see also id*. at 4 ("TPR should receive the
proceeds which unquestionably belong to it, while Orly can seek to litigate
the equities of that in state court.").)

Answr. Decl. Exh. AA (*TPR Inv. Associates, Inc.*, 2014 WL 1979932, at *3, *5 (emphasis
added)).  Sagi further refers to the Complaint, Memorandum of Law, and Reply Memorandum of
Law he filed in the Federal Escrow Action for the references cited therein for the true and correct
contents thereof.  *See* Answr. Decl. Exhs. BB, CC, and DD (Complaint, Memorandum of Law in
Support of Summary Judgment, Reply Memorandum of Law in Support of Summary Judgment
filed in the Federal Escrow Action).

46.     Sagi objects to Orly's Statement No. 46 on the ground that it is irrelevant.  To the
extent a response is required, Orly's Statement No. 46 is disputed in that it misrepresents TPR's
argument because TPR never argued that the "Orly Trust had never received the Orly Trust TRI
shares."  Sagi refers to the hearing transcript dated April 29, 2014 for the true and correct

statements referenced therein, which does not include any argument that the Orly Trust never received TRI shares but instead argued that the Delaware Court already determined ownership of the TRI shares conclusively, ownership had reverted back to TPR in 2008, the Trump Group therefore rightfully purchased the TRI shares from TPR under the Letter Agreement, and TPR was entitled to $10.3 million held in escrow pending a judicial determination of such ownership rights accordingly.  Answr. Decl. Exh. GGG.

47.     Sagi objects to Orly's Statement No. 47 on the ground that it is irrelevant.  To the extent a response is required, Orly's Statement No. 47 is disputed in its characterization of Judge Keenan's ruling.  On May 15, 2014, Judge Keenan issued an Opinion and Order finding that Orly stipulated away any rights to the TRI shares to the Trump Group, as follows:

> As part of a stipulation dismissing the action in Delaware Chancery Court, the parties to that action—TPR/Sagi, the Trump Group, and Dalia, but not Arie or Orly—agreed that the Trump Group is the rightful owner of the Orly Trust Shares. (Dellaportas Dec. Ex. B ¶ 2.) Additionally, Orly and the Trump Group have settled their claims against each other. Pursuant to that settlement, Orly acknowledged that the Trump Group is the record and beneficial owner of the Orly Trust Shares. (*Id.* Ex. J at 2.)  <u>At long last, the dispute regarding ownership of the Orly Trust Shares is over</u>. . . . <u>Orly has relinquished her claim to the shares as part of her settlement with the Trump Group</u>.  . . . The beneficial ownership issue is now dead; Orly has settled with the Trump Group.

Pennisi Aff. Exh. AA (*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *2-*3, *5 (S.D.N.Y. May 15, 2014)).  Judge Keenan granted summary judgment in favor of TPR, "concluded that beneficial ownership and the Proceeds go hand-in-hand as issues" and held that "[b]ecause the Trump Group is now the undisputed owner of the Orly Trust Shares, TPR is entitled to the Proceeds paid by the Trump Group for those shares." *Id.*, at *6.

48.     Sagi objects to Orly's Statement No. 48 on the ground that it is irrelevant.  To the extent a response is required, it is undisputed that TPR received its Proceeds.

49.     It is undisputed that on October 18, 2004, Sagi's attorney sent Sagi drafts of the language for the Oct. 30, 2014 Promise Document.  It is disputed that no other emails or contemporaneous communications existed to show that drafts thereof were shared with Orly prior to the execution of the Divorce Stipulation. Sagi has testified that he had discussions with Orly and read her drafts of the Oct. 30, 2004 Promise over the telephone. Answr. Decl. Exh. A., Tr. 29:18-29:21, 32:10-32:12, 98:12-99:16; July 7 Sagi Decl. ¶ 5.  Arie was not a party to the Oct. 30, 2014 Promise or Nov. 10, 2004 Indemnity and so there would have been no reason for Sagi to show him those documents.  However, it is undisputed that the Nov. 10, 2004 Indemnity was drafted by Arie's own attorney, Edward Klimerman.

50.     Sagi avers that by definition, a draft of an agreement is not an executed version, and so Statement No. 50 is nonsensical.

51.     It is undisputed that on October 30, 2004, Dalia and Sagi signed the Oct. 30, 2004 Promise, and that Orly was not a signatory to the Oct. 30, 2004 Promise.  However, it is disputed that "the Sagi Promise Document does not provide for any promise to pay by Orly."  The Oct. 30, 2004 Promise was part of an integrated single transaction with the Nov. 10, 2004 Indemnity, which cross-references the Oct. 30, 2004 and expressly includes a promise to pay by Orly to Sagi.  *See* Answr. Decl. Exhs. AAA and BBB.

52.     Sagi refers to the Oct. 30, 2004 Promise itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh. AAA.

53.     Disputed.  Sagi refers to paragraph 8 of the Complaint filed in the action herein itself for references cited therein for the true and correct contents thereof.  *See* Answr. Decl. Exh.

EE.   Paragraph 8 states: "In connection with the divorce, [Sagi] and [Orly] received a total of 794.40 shares of TRI, or beneficial interests in those shares, by trusts for their benefit.   In consideration of their receipt of those shares and other valuable consideration, Dalia gave up valuable marital rights and obtained an agreement from [Sagi] and [Orly] that they would support her from time to time." *Id.*  The "other valuable consideration" that Sagi received refers to ending Arie and Dalia's protracted divorce and achieving familial peace.

54.     Undisputed that Dalia did not identify the Oct. 30, 2004 Promise as a marital asset during the marital arbitration she brought pursuant to the divorce Stipulation in or around 2007, because such marital assets pre-date 2002, as found by the First Department, Appellate Division in another Genger-family action.  Answr. Decl. Exh. DDD (*Genger v. Genger*, 107 A.D.3d 576, 576  (1st Dep't 2013) ("Arie and Dalia's divorce settlement stipulation entitled Dalia to audit Arie's assets and liabilities 'as of the date of commencement of the parties' matrimonial action, i.e., January 31, 2002.'")).  Thus, it should not have been identified.

55.     Undisputed insofar as the record does not contain evidence concerning when the Nov. 10, 2004 Indemnity was drafted.  Sagi avers that it was executed on or around November 10, 2004.  *See* Answr. Decl. Exh. BBB.

56.     Undisputed.

57.     Disputed insofar as the Divorce Stipulation was subject to final judgment by the court when the Nov. 10, 2004 Indemnity was executed, which was not received until January 5, 2005.  Answr. Decl. Exh. G.

58.     Undisputed.

59.     Undisputed.  Sagi avers that the Nov. 10, 2004 Indemnity contains a copy of Orly's signature and an original signature of Sagi.  *See* Answr. Decl. Exh. D (Dennis Ryan

expert report, executed on May 29, 2014).  Sagi also avers that Orly retained an ink expert, who examined both the Oct. 30, 2014 Promise and Nov. 10, 2014 Indemnity and produced no report questioning its genuineness.  Answr. Decl. ¶¶ 67-68.

60.     Undisputed.  Sagi avers that he received Dalia's written demand on January 28, 2014 and provided it to Orly on January 29, 2014.  *See* May 29 Sagi Decl. Exh. I.

61.     Disputed.  On January 29, 2014, at a conference, Sagi discussed Dalia's demand with Orly and her counsel and made clear that he intended to pay Dalia pursuant to the Oct. 30, 2014 Promise.  *See* Answr. Decl. Exh. C (Declaration of Sagi Genger executed on May 29, 2014 ¶ 5).

62.     Disputed.  Sagi paid Dalia $200,000.  *See* Answr. Decl. Exh. C (July 7 Sagi Decl. Exh. H (proof of payment)).

63.     Disputed.  Sagi provided notice to Orly and her counsel that he intended to pay Dalia the $200,000 demanded on January 29, 2014.  *See* Answr. Decl. Exh. C (Declaration of Sagi Genger executed on May 29, 2014 ¶ 6).

64.     Disputed.  Orly relies upon misstatements in a declaration submitted by Lance Harris in which Mr. Harris misrepresents that "Between this January 23, 20014 meeting and February 15, 2014, I had several telephone conversations with Sagi counsel John Dellaportas about the Sagi Promise Document and the November Document."  *See* Leinbach Decl. Exh. 62 (Harris Decl. ¶ 5).  Mr. Dellaportas' phone records demonstrate that Mr. Harris did not have "several telephone conversations" but only one 3.8 minute telephone call on the evening of February 7, 2014 in which Mr. Dellaportas and he discussed another matter.  *See* Answr. Decl. Exh. NN (Reply Declaration of John Dellaportas, dated July 7, 2014, ¶ 4 and Exh. D).  Sagi had no notice of Orly's objection on February 17, 2014.  Orly's counsel later claimed the document

18

was a forgery in April 2014.  Sagi's counsel offered Orly's counsel access to the document and an opportunity for Orly's expert to analyze it, but Orly's counsel declined to do so until September of 2014.  Answr. Decl. ¶ 68 and Exh. FFF (e-mail exchange between Yoav Griver, Esq. and Mary C. Pennisi, Esq., dated July 28, 2014).  Orly's handwriting expert spent two days analyzing both the Oct. 30, 2014 Promise and Nov. 10, 2014 Indemnity and has not concluded that either were a forgery. *Id.*  Likewise, Orly retained an ink expert who has produced no report claiming the Nov. 10, 2004 Indemnity or Oct. 30, 2014 is anything but genuine.  *Id.*

Dated:         New York, New York          Respectfully submitted,
               November 14, 2014

                                            MORGAN, LEWIS & BOCKIUS LLP

                                            By:_____/s/ John Dellaportas_____
                                                 John Dellaportas
                                                 Nicholas E. Schretzman
                                                 Mary C. Pennisi
                                                 101 Park Avenue
                                                 New York, New York 10178-0060
                                                 *Attorneys for Plaintiff Sagi Genger*