UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAGI GENGER,

                        Plaintiff,

        - against -

ORLY GENGER,

                       Defendant.

Civ. No.:  14-5683 (KBF)

**ORLY GENGER'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISQUALIFY JOHN DELLAPORTAS FROM ACTING AS COUNSEL FOR SAGI GENGER AT TRIAL UNDER THE "WITNESS ADVOCATE RULE"**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

## PRELIMINARY STATEMENT

One of the disputed issues at trial will concern certain communications between Attorney Lance Harris ("Harris") and Attorney John Dellaportas ("Dellaportas") between January 23, 2014 and February 15, 2014. Those conversations are disputed -- Dellaportas has gone so far as to brand Harris' recollection of those conversations an "old fashioned lie." Those conversations are important. It is well-settled New York law that Sagi Genger ("Sagi") cannot seek reimbursement from Orly Genger ("Orly") unless he first notified her of a potentially covered claim and gave her an opportunity to defend against that claim. See, e.g., Chase Manhattan Bank v. 264 Water St. Assocs., 222 A.D.2d 229, 231 (1st Dept. 1995).

Sagi avers that he paid Dalia on February 3, 2014, only five days (two business days) after Sagi gave Orly proof of Dalia's demand on January 29, 2014, and less than two weeks after Sagi first provided Orly counsel with a copy of the Sagi Promise Document and November Document on January 23, 2014. Sagi seeks to excuse this hurried timeline by contending he was unaware that Orly objected to Sagi paying the demand. In so contending, Sagi heavily relies on Dellaportas' claim that Harris is wrong, and that Harris never informed Dellaportas by telephone of Orly's many objections to payment. Importantly, Dellaportas is the only Sagi witness to his version of the fact and content of those conversations.

To try and avoid the witness-advocate rule, Dellaportas has not placed himself on his witness list. Instead he intends to call a "representative from Morgan, Lewis and Bockius LLP who can substantiate telephone records of the firm." Apparently, Dellaportas intends to testify at trial about his personal and exclusive knowledge of the contents of those conversations between himself and Harris (and the amount of those conversations) through the questions he

asks that representative, and by the questions he asks Mr. Harris on cross-examination. This tactic is improper. However he seeks to accomplish the feat, Dellaportas cannot be both a witness and an advocate.

## STATEMENT OF FACTS

One of Orly's defenses at trial will be that she was not given a reasonable opportunity to defend against Dalia's demand before Sagi paid that demand. In support, Orly will call Harris who will testify that he informed Sagi (through Dellaportas) that Dalia's claim was flawed and should not be paid. See, e.g., 11/13/14 Harris Decl. ¶ 5 [Docket No. 49-21]. Sagi disputes that proffered testimony, and does so through the testimony of Dellaportas.

On January 23, 2014, Sagi informed Orly and her counsel of the existence of the Sagi Promise Document, the November Document, and of Dalia's purported demand. 11/13/14 Harris Decl. ¶¶ 2-3 [Docket No. 49-21]. Sagi first provided Orly counsel with a copy of Dalia Genger's written demand for $200,000 on January 29, 2014. 1/29/14 Email [Docket No. 43-6]. Eight days later on February 3, 2014, Sagi claims he made a check payable to Dalia in the amount of $200,000, which was cashed on February 6, 2014. Sagi Check and Statement [Docket No. 43-11].

Between January 23, 2014 and February 3, 2014, Sagi did not inform Orly that Sagi was about to pay Dalia's purported demand under the Sagi Promise Document. 11/13/14 Orly Decl. ¶ 10 [Docket No. 49-20]. Sagi paid Dalia even though, during that same time period, Orly counsel informed Sagi counsel that it disputed the validity and enforceability of the Sagi Promise Document and November Document, and asked for the original documents in order to

have them examined <u>before</u> Sagi paid Dalia. 1/24/14 Email [Docket No. 33-6]; 11/13/14 Harris

Decl. ¶¶ 5-6 [Docket No. 49-21].  Specifically, Harris states as follows:

> Between this January 23, 2014 meeting and February 15, 2014, I
> had several telephone conversations with Sagi counsel John
> Dellaportas about the Sagi Promise Document and the November
> Document.  During at least one such telephone call, I told Mr.
> Dellaportas that Orly believed the Sagi Promise Document was
> unenforceable and would not stand up to judicial scrutiny.  Among
> other things, I told Mr. Dellaportas that the Sagi Promise
> Document and November Document did not appear to be
> supported by valid consideration, and were therefore,
> unenforceable.  I also told Mr. Dellaportas that the Sagi Promise
> Document and November Document would likely not stand up to
> judicial scrutiny because, among other things, (i) we had not been
> able to review the original executed documents, (ii) Arie Genger
> had denied that his divorce settlement with his wife included any
> such clawback, (iii) Orly did not remember the November
> Document or any clawback agreement as part of the Divorce
> Stipulation (as defined in the moving brief), (iv) copies of the Sagi
> Promise Document and November Document, while called for,
> was not produced previously in any Genger litigation, and (v)
> Dalia neither disclosed the Sagi Promise Document and/or
> November Document, or listed them as marital assets, during the
> marital arbitration she brought pursuant to the Divorce Stipulation
> in or around 2007.
>
> During my conversations with Mr. Dellaportas between January
> 23, 2014 and February 15, 2014, Mr. Dellaportas never informed
> me that Sagi had paid Dalia pursuant to the Sagi Promise
> Document.  Similarly, Mr. Dellaportas did not tell me, in sum or in
> substance, that Sagi was about to pay Dalia, unless Orly objected
> to the payment.

11/13/14 Harris Decl. at ¶¶ 5-6 [Docket No. 49-21].

Sagi disputes the sworn testimony of Lance Harris.  Thus, on Friday, November

14, 2014, Sagi responded to Orly's Statement of Undisputed Facts in support of Summary

Judgment ("Sagi Counterstatement") as follows:

> 64.    Disputed.  Orly relies upon misstatements in a declaration
> submitted by Lance Harris in which Mr. Harris represents that
> "Between this January 23, 2014 meeting and February 15, 2014, I

had several telephone conversations with Sagi counsel John Dellaportas about the Sagi Promise Document and the November Document." *See* Leinbach Decl. Exh. 62 (Harris Decl.¶ 5). Mr. Dellaportas' phone records demonstrate that Mr. Harris did not have "several telephone conversations" but only one 3.8 minute telephone call on the evening of February 7, 2014 in which Mr. Dellaportas and he discussed another matter. *See* Answr. Decl. Exh. NN (Reply Declaration of John Dellaportas, dated July 7, 2014, ¶ 4 and Exh. D).

Sagi Counterstatement ¶ 64 [Docket No. 55]. Accord Sagi Memo of Law in Opposition to

Summary Judgment at 25 (filed November 14, 2014) [Docket No. 57]; Reply Declaration of

John Dellaportas (filed as Exhibit NN on Friday, November 14, 2014) at ¶ 4 [Docket No. 56-2].

On Monday, November 17, 2014, Sagi provided his Plaintiff's Witness List,

which included a representative to "substantiate telephone records:"

6.      A representative from Morgan, Lewis and Bockius LLP
who can substantiate telephone records of the firm.

Plaintiff's Exhibit List (Declaration of Yoav M. Griver at **Exhibit A**).

While the "representative" may possibly speak as to the telephone records, he/she

cannot speak as to the substance of any of the calls on those records.

## ARGUMENT

Under New York law, an indemnitor cannot seek reimbursement from an

indemnitee unless the indemnitor first notifies the indemnitee of a potentially covered claim and

gives it an opportunity to defend. See Chase Manhattan Bank v. 264 Water St. Assocs., 222

A.D.2d 229, 231 (1st Dept. 1995) (one who "fails to notify an indemnitor about an impending

settlement proceeds at his own risk"); Perkins & Will Partnership v. Syska & Hennessy &

Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975), aff'd on other

grounds, 41 N.Y.2d 1045 (1977).  "[I]t is well established under New York law that, where an indemnitor does not receive notice of an action settled by the indemnitee, 'in order to recover reimbursement [for the settlement], [the indemnitee] must establish that [it] would have been liable and that there was no good defense to the liability.'"  Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust, 74 A.D.3d 32, 39 (1st Dept. 2010) (citation omitted).[1]

Sagi's payment to Dalia before informing Orly that he was paying Dalia, and in disregard of Orly's stated concerns and request that she be given time to examine the documents and consider the matter (see Statement of Facts), prevented Orly from challenging the enforceability of the Sagi Promise Document, and resulted in a waiver of Sagi's indemnification claim as a matter of law.  See Ballard v. Parkstone Energy, LLC, 664 F.Supp.2d 325, 330-31 (S.D.N.Y. 2009).

One of Sagi's responses is to proffer Dellaportas' testimony that Harris did not inform him of Orly's concerns.

Rule 3.7 of the New York Rules of Professional Conduct, provides in relevant part that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."  N.Y. R. Prof'l Conduct § 3.7(a).  While "courts must guard against tactical use of motions to disqualify," and the party "seeking disqualification bears a heavy burden of proving disqualification is necessary," "any doubts are

---

[1]  Even if an indemnity agreement does not contain a notice provision, "the implied covenant of good faith warrants reading into the contractual procedure a requirement that notice be given within a reasonable time so as to afford a meaningful opportunity of participation."  Perkins & Will Partnership v. Syska & Hennessy & Garfinkel, Marenberg & Associates, 50 A.D.2d 226, 231 (1st Dept. 1975).

to be resolved in favor of disqualification." Acker v. Wilger, 12 Civ. 3520 (JMF), 2013 U.S.

Dist. LEXIS 47606, *2-3 (S.D.N.Y. March 29, 2013) (citations omitted).

"The witness-advocate rule is concerned with preventing potential taint *at trial*."

Ross v. Blitzer, 09 Civ. 8666 (HB), 2009 U.S. Dist. LEXIS 119014, *10 (S.D.N.Y. Dec. 21,

2009) (emphasis in original). The Second Circuit Court of Appeals summarized the policies

behind the witness-advocate rule as follows:

> We have identified four risks that *Rule 3.7(a)* is designed to
> alleviate: (1) the lawyer might appear to vouch for his own
> credibility; (2) the lawyer's testimony might place opposing
> counsel in a difficult position when she has to cross-examine her
> lawyer-adversary and attempt to impeach his credibility; (3) some
> may fear that the testifying attorney is distorting the truth as a
> result of bias in favor of his client; and (4) when an individual
> assumes the role of advocate and witness both, the line between
> argument and evidence may be blurred, and the jury confused.
> These concerns matter because, if they materialize, they could
> undermine the integrity of the judicial process.

Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir 2009) (internal citation omitted);

Dorchester Financial Holdings Corp. v. Banco BRJ, S.A., 11-CV-1529 (KMW)(KNF), 2014

U.S. Dist. LEXIS 98088, *15-16 (S.D.N.Y. July 18, 2014) (motion to disqualify counsel based

on witness-advocate rule granted).

Here, as with the attorney who was disqualified in Dorchester, Dellaportas

appears to be the only Sagi witness to the telephone conversation, as such he cannot serve as an

advocate for Sagi.

> An attorney who is likely to be a witness on a significant issue of
> fact cannot perform, simultaneously, an advocate's role at a
> proceeding because performing those two roles: witness and
> advocate creates a conflict. That conflict cannot be resolved by the
> attorney's decision not to testify, since that would place the
> attorney's interest in serving as an advocate above the client's
> interest in presenting helpful testimony. In the circumstance of this

case, the Court finds that Morrow is likely to be a witness on a
significant issue of fact in this action, and cannot serve a dual role
as witness and advocate.

Dorchester, 2014 U.S. Dist. LEXIS 98088, *18-19.  This is true even if Dellaportas attempts to

get his version of the facts in through his cross-examination of Harris or through an unidentified

representative.  Dellaportas will still (1) appear to vouch for his own credibility through the

questions he asks about the phone calls in which he participated; (2) place opposing counsel in a

difficult position when he has to cross-examine Dellaportas to impeach his credibility regarding

his version of the phone calls; and (3) be blurring the line between argument and evidence,

confusing the jury.

## CONCLUSION

While Sagi has many able attorneys who can advocate for him at trial,

Dellaportas' proper place is as a witness.  To attempt to elicit testimony about the number and

substance of the phone calls that took place between him and Harris between January 23, 2014

and February 15, 2014, while being an advocate would violate the witness-advocate rule.

Accordingly, Orly Genger respectfully requests the Court (i) grant her motion to disqualify

Dellaportas as counsel at trial; and (ii) grant Orly such other and further relief as the Court deems

just and proper.

Dated:   New York, New York
         November 18, 2014                    ZEICHNER ELLMAN & KRAUSE LLP


                                              By: _____
                                                  Yoav M. Griver
                                                  Bryan D. Leinbach
                                                  Attorneys for defendant Orly Genger
                                                  1211 Avenue of the Americas
                                                  New York, New York 10036
                                                  (212) 223-0400

7