Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel. 212.309.6000
Fax: 212.309.6001
www.morganlewis.com



**John Dellaportas**
Partner
212.309.6690
jdellaportas@morganlewis.com

November 25, 2014

VIA ECF and HAND DELIVERY

Hon. Katherine B. Forrest, U.S.D.J.
United States Court for the
Southern District of New York
500 Pearl St., Room 1950
New York, NY 10007-1312

Re:     ***Sagi Genger v. Orly Genger***, No. 1:14-cv-05683-KBF

Dear Judge Forrest:

        We represent plaintiff Sagi Genger in the above-referenced matter.   We respectfully submit this letter pursuant to the November 18, 2004 Order of the Court (Doc. No. 64) regarding the potential impact of the Settlement Agreement (Exh. A) produced by defendant Orly Genger upon the claims and defenses at issue in this case.

        We received the Settlement Agreement on Friday evening, shortly after the Second Circuit denied Orly's motion for an emergency stay of enforcement. (Exh. B.)  To be frank, it is difficult to square the actual Agreement with the positions Orly took in this Court prior to its production.   Now that we have all the facts in front of us, Sagi respectfully submits that the Settlement Agreement disposes of Orly's principal defenses, and that he should be granted judgment of liability, with further submissions to be made on damages only.

### <u>Orly's Summary Judgment Arguments</u>

        As the Court held, the Settlement Agreement is most directly relevant to the question of consideration.   The Oct. 30, 2004 Promise, which the Nov. 10, 2004 Indemnity attaches and incorporates by reference, recites that "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), <u>or beneficial interests in those shares</u>, by trusts for our benefit." (Exh. C, emphasis added).  Orly acknowledges that in 2004, Dalia did indeed transfer that beneficial interest into her trust.  However, she claims that later Court rulings undid that transfer, such that the Nov. 10, 2004 Indemnity fails for lack of consideration / judicial estoppel, lack of opportunity to defend, mutual mistake, and unclean hands.

        In support of her own summary judgment motion and in opposition to Sagi's motion, Orly specifically makes the following claims:

Hon. Katherine B. Forrest, U.S.D.J.
November 25, 2014
Page 2 of 3



- **"That equal receipt of TRI Shares benefiting both Sagi and Orly never happened. Rather, … <u>only Sagi benefited</u>."**

- **In a "nightmare for Orly," Judge Keenan held on May 15, 2014 that: "TPR owned all rights to the TRI Shares at issue …. <u>Orly and the Orly Trust have none of the shares, and none of the proceeds</u>."**

- **Thus, "<u>Sagi (via TPR) obtain[ed] all the value – and Orly none</u>."**

(Doc. No. 38 at 1, 3, 18, emphases added; *accord* Doc. No. 53 at 2-7, 17-19).

By contrast, in his own summary judgment papers, Sagi contended that Dalia did in fact convey beneficial ownership in the TRI shares to Orly's trust, and that it was only after Orly sold her and her trust's ownership rights in those shares that Judge Keenan held that: "the dispute regarding ownership of the Orly Trust Shares is over …. Orly has relinquished her claim to the shares as part of her settlement with the Trump Group." *TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP,* 2014 U.S. Dist. Lexis 67116, **6-8 (S.D.N.Y. May 15, 2014).

### The Settlement Agreement

As it turns out, the Settlement Agreement is pretty much as Judge Keenan described it. The Agreement begins by proclaiming that: "the Parties wish to resolve all issues, disputes and disagreements between them, including but not limited to the issue of ownership of all [TRI] shares." (Exh. A. p. 2.)   The settling parties then proceed to resolve that ownership issue by paying Orly, her father Arie, and their two litigation funders (collectively defined therein as the "AG Group") $17,257,001 cash upfront, plus two additional $7,500,000 payments to be made over four years. (*Id.* ¶¶ 2-3.)  Orly's "pauperization" is not imminent.[1]

In exchange for this $32.3 million payday, Orly *et al.* agree: (a) to cause the courts to declare the Trump Group owners of "all right, title and interest (beneficially, of record, and otherwise) to the [TRI] shares"; (b) to testify that, "in her individual capacity and as beneficiary of the Orly Genger 1993 Trust," she had waived all claim to the TRI shares; (c) to indemnify the Trump Group and release them "in all of her capacities," and (d) to cooperate with the Trump Group to effectuate their share ownership. (Exh. A ¶¶ 4, 5(a), 6(a), 8(a).)

In sum, Orly has successfully monetized her mother's 2004 bequest of a beneficial interest in the TRI shares. This is the result contemplated by the Oct. 30, 2004 Promise, which is capped at any "payments attributable to 794.40 shares of TRI that have previously been paid to Orly, [Sagi] or any trust for the benefit of either of [them]." (Exh. C.)   Sagi's $100,000 reimbursement request represents a mere 0.3% of the Trumps' payment to Orly.

---

[1]      In addition to the tranche of TRI shares at issue here, the Settlement Agreement also applies to a second, smaller tranche of shares initially claimed by Arie Genger (the "Arie Shares"). (Exh. A ¶¶ 4(ii).) As the Delaware Chancery Court had already entered Judgment awarding beneficial ownership of the Arie Shares to the Trump Group prior to the Settlement Agreement (Exh. D ¶¶ 10-11), any settlement consideration attributable to the Arie Shares would be *de minimus*.

Hon. Katherine B. Forrest, U.S.D.J.
November 25, 2014
Page 3 of 3



### The Consequences for Orly's Defenses

While this matter began with cries of "forgery," Orly now concedes, at least implicitly, that the signature on the Nov. 10, 2014 Indemnity is hers. Instead, she puts forth four technical / legal arguments as to why she should not be held to her end of the bargain with her brother. As set forth below, the Settlement Agreement negates all four of her defenses.

1. <u>Lack of Consideration/Judicial Estoppel</u>. Orly's main argument is that the agreement "lacks consideration." According to Orly, "Sagi (via TPR) obtain[ed] all the value [for the TRI shares] – and Orly none." (Doc. No. 38 at 2-3.) The Settlement Agreement debunks this claim. Orly is getting $32.3 million for the beneficial ownership rights conveyed to her trust under the Oct. 30, 2004 Promise. (Exh. C.) That TPR obtained from Judge Keenan an order releasing its escrowed proceeds from its sale of its <u>record</u> ownership does not nullify Orly's prior receipt of $32.3 million for her trust's <u>beneficial</u> ownership of those same shares.

2. <u>Mutual Mistake</u>. Orly also argues that the Oct. 30, 2004 Promise suffers from "mutual mistake" since the "equal receipt of TRI Shares benefiting both Sagi and Orly never happened." (Doc. No. 38 at 18.) In truth, Dalia conveyed <u>equal</u> beneficial interests to Orly's and Sagi's trusts, which each then swapped for cash. The Settlement Agreement demonstrates that Dalia's conveyance to Orly's trust will ultimately net Orly around $32.3 million.

3. <u>Lack of Opportunity to Defend</u>. Orly next argues that Sagi should have stiffed their mother and allowed Orly to defend Dalia's claim, because: "Viable defenses [to payment] do exist, including a lack of consideration, and no 'meeting of the minds.'" (Doc. No. 53 at 21.) As set forth above, the Settlement Agreement guts those defenses.

4. <u>Unclean Hands</u>. Lastly, Orly contends that TPR's position before Judge Keenan represents "unclean hands" because it violated his duties under a "Transfer Document." (Doc. No. 38 at 21-23.) This exact same argument was rejected by the N.Y. State Appellate Division (*Genger v. Genger,* 121 A.D.3d 270, 280-81 (1st Dep't 2014)), and Orly's $32+ million payday provides no equitable basis to revisit that ruling. Indeed, if anyone has acted with unclean hands, it is Orly, whose recent statements to the Court have not been a model of candor.

### Limited Further Discovery

Lastly, we note that the Settlement Agreement was requested during the middle of fact discovery. Had Orly produced it when first sought, there would have been time for follow-up discovery. Thus, if the Court cannot grant summary judgment to Sagi on this record, Sagi asks that Orly be directed to promptly produce the balance of materials responsive to his Request for Production No. 5 (*see* Doc. No. 22), and that he be afforded the opportunity to depose one of the Agreement's signatories in advance of the December 15, 2014 trial.

Sincerely,

*/s/*

John Dellaportas

cc: Yoav Griver, Esq. (VIA ECF and EMAIL)