**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------- X
SAGI GENGER,                                                  :
                                                              :
                                        Plaintiff,            :      1:14-cv-05683 (KBF)
                                                              :
                        -against-                             :
                                                              :
ORLY GENGER,                                                  :
                                                              :
                                        Defendant.            X
--------------------------------------------------------------------------


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF SAGI GENGER'S MOTION FOR SUMMARY JUDGMENT**

MORGAN, LEWIS & BOCKIUS LLP
John Dellaportas
Nicholas E. Schretzman
Mary C. Pennisi
101 Park Avenue
New York, New York 10178-0060
Tel.:  (212) 309-6000
Fax:  (212) 309-6001

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 1

I.    ORLY MISREPRESENTS THE DELAWARE COURTS' HOLDINGS ....................... 1

II.   JUDICIAL ESTOPPEL DOES NOT BAR SAGI'S CLAIMS BECAUSE HE
      HAS NOT TAKEN ANY INCONSISTENT POSITIONS ............................................... 3

III.  THE PAROL EVIDENCE RULE DOES NOT BAR EVIDENCE
      CONCERNING THE NOV. 10, 2004 INDEMNITY OR OCT. 30, 2004
      PROMISE ................................................................................................................... 4

IV.   THE AGREEMENTS AT ISSUE ARE INTERRELATED, AND THE TRI
      SHARES DO NOT CONSTITUTE INVALID PAST CONSIDERATION..................... 6

V.    ORLY'S RECEIPT OF EMOTIONAL PEACE BY ENDING THE
      PROTRACTED FAMILY DIVORCE ON JANUARY 7, 2005 PROVIDED AN
      ADDITIONAL FORM OF CONSIDERATION ............................................................. 9

VI.   ORLY'S MUTUAL MISTAKE DEFENSE IS MERITLESS .......................................... 9

VII.  ORLY HAD NO VIABLE DEFENSE TO ASSERT ON SAGI'S BEHALF TO
      DALIA'S DEMAND UNDER THE OCT. 30, 2004 PROMISE .................................... 10

CONCLUSION ..................................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bank of Suffolk County v. Kite,*
    49 N.Y.2d 827 (1980) ..................................................................................................5

*Carrera Casting Corp. v. Cord,*
    106 A.D.3d 422 (1st Dep't 2013) ................................................................................7

*Davey v. Dolan,*
    292 F. App'x 127 (2d Cir. 2008) ................................................................................6

*Garver v. Garver,*
    1997 WL 47801 (S.D.N.Y. Feb. 5, 1997) .............................................................6, 9

*Hicks v. Bush,*
    10 N.Y.2d 488 (1962) ..................................................................................................5

*Holt v. Feigenbaum,*
    52 N.Y.2d 291 (1981) ..................................................................................................7

*Kreuter v. Tsucalas,*
    287 A.D.2d 50 (2d Dep't 2001) ..................................................................................8

*Lee v. Joseph E. Seagram & Sons, Inc.,*
    552 F.2d 447 (2d Cir. 1977) ........................................................................................5

*Mack-Lowe v. Picault-Cadet,*
    33 A.D.3d 504 (1st Dep't 2006) ..................................................................................5

*Maharaj v. Bankamerica Corp.,*
    128 F.3d 94 (2d Cir. 1997) ..........................................................................................4

*Movado Grp., Inc. v. Presberg,*
    259 A.D.2d 371 (1st Dep't 1999) ................................................................................8

*Nachem v. Prop. Mkts. Grp., Inc.,*
    82 A.D.3d 573 (1st Dept. 2011) ..................................................................................7

*Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.,*
    2011 WL 2462588 (S.D.N.Y. June 20, 2011) ...........................................................7

*Rainbow v. Swisher,*
    72 N.Y.2d 106 (1988) ..................................................................................................6

*TPR Inv. Associates, Inc. v. Pedowitz & Meister LLP,*
    2014 WL 1979932 (S.D.N.Y. May 15, 2014). ......................................................3, 4

*Umscheid v. Simmacher*,
   106 A.D.2d 380 (2d Dep't 1984) ............................................................8

*Weinschneider v. Weinschneider*,
   50 A.D.3d 1128 (2d Dep't 2008) .............................................................6

**STATUTES**

CPLR 2104 ...............................................................................................6

New York General Obligations Law section 5-1105 .............................7, 8, 9

## PRELIMINARY STATEMENT

As this Court has noted, this is a narrow and limited case.  (ECF No. 26)  Ten years ago, Sagi and Orly, both of whom have done very well by their mother, made a commitment to help support her in her old age, should she need it.  Sagi has lived up to that commitment; Orly has not.  The issue before this Court is whether Orly's commitment is legally binding.

Since the start of this matter, several of Orly's prior justifications have withered away and died.  Her initial contention that the Nov. 30, 2004 Indemnity was a "forgery" is gone, after a battery of handwriting and ink experts examined the document and confirmed its authenticity.  Apparently, Orly did sign the Nov. 30, 2004 Indemnity after all; she just conveniently forgot about it.  Orly's claimed "pauperization," in turn, has been undone by the revelation that she monetized her ownership interest in the TRI shares for $32.3 million.

By this reply, Sagi addresses Orly's remaining legal contentions raised in opposition to summary judgment (the "Opposition" or "Opp.").  Due to space limitations, Sagi incorporates by reference his November 25, 2014 letter to the Court in which he addressed the Settlement Agreement (ECF No. 84), and focuses instead only on the new arguments in Orly's Opposition.  As set forth below, there is no longer any genuinely disputed issue of material fact, and accordingly Sagi is entitled to judgment of liability as a matter of law.

## ARGUMENT

## I.    ORLY MISREPRESENTS THE DELAWARE COURTS' HOLDINGS

On page 2 of her Opposition, Orly falsely claims that her Trust "never received the TRI shares, and never received any proceeds."  To accommodate her argument, she selectively quotes from a part of the Delaware Supreme Court's opinion that simply describes the "Side Letter Agreement" and does not actually contain the holding of the case.  (Opp. at 3.)

To recap the _actual_ legal precedent, in 2011 the Delaware Supreme Court _reversed_ the Chancery Court's August 2010 ruling "to the extent it adjudicates the beneficial ownership of the Orly Trust [TRI] Shares," holding that the Chancery Court lacked jurisdiction to reverse TPR's 2004 transfer of _beneficial_ ownership in those shares to the Orly Trust.  Declaration of John Dellaportas, dated November 14, 2014 and filed at ECF No. 50 ("Answr. Decl."), Exhibit ("Exh.") J (_Genger v. Genger_, 26 A.3d 270, 201-203 (1st Dep't 2014)).  On remand, the Chancery Court then entered a _Revised_ Judgment implementing the Delaware Supreme Court's ruling.  While the Revised Judgment continued to provide that TPR was the "_record_ owner of all [TRI] shares not presently owned" by the Trump Group, it deleted the Chancery Court's finding from the original Judgment that the Orly Trust had lost its "_beneficial_" ownership of those shares.  _Compare_ Answr. Decl., Exh. U, ¶ 8 _with_ Leinbach Reply Decl. Ex. 70, ¶ 8 (emphases added).  As Dalia only promised under the Oct. 30, 2004 Promise to convey "beneficial interests in those shares," her promise was fulfilled.  _See_ Answr. Decl. Exh. AAA.

Orly only relinquished her claim to the TRI shares in _2013_, pursuant to the Settlement Agreement previously discussed.  Under that Agreement, in exchange for $32.3 million from the Trump Group, Orly released her claim to the TRI shares "in all capacities" and agreed to "cause" the Orly Trust to do the same.  (ECF No 84-1, ¶¶6(a), 8(a)(ii).)  That was significant because the Chancery Court had indicated it "would not proceed [with a determination of beneficial ownership of the TRI shares] without knowing Orly's position." _See_ Answr. Decl., Exh. GG at 42:18-43:20. After she settled, Orly advised the Court that she was "acknowledg[ing] individually and in her capacity as the beneficiary of her trust that the Trump Group are the record and beneficial owners of the TRI shares which had been distributed to the Orly Trust." _See_ Answr. Decl., Exh. MM.  Satisfied that Orly no longer wanted her trust to pursue a

declaratory judgment of beneficial ownership over the TRI shares, the Delaware Court so-ordered a Stipulation dismissing her trust's claims. *See id.*, Exh. HHH.

Thereafter, TPR brought an action in this Court to obtain the release of its $10.3 million in escrowed proceeds from its sale of its record ownership interest in the TRI shares to the Trump Group pursuant to the so-called "Side Letter Agreement." Judge Keenan granted summary judgment in favor of TPR and directed release of those proceeds, based in part on his finding that: "At long last, the dispute regarding ownership of the Orly Trust Shares is over. … Orly has relinquished her claim to the shares as part of her settlement with the Trump Group. …. The beneficial ownership issue is now dead; Orly has settled with the Trump Group." *See \TPR v. Pedowitz & Meister LLP*, 2014 WL 1979932, at *3, *5 (S.D.N.Y. May 15, 2014) (emphasis added). In other words, the Orly Trust only lost its beneficial ownership to the TRI shares when Orly sold that claim to the Trump Group. Obviously, had the 2011 Revised Judgment stripped the Trust of its beneficial ownership in the TRI shares, as Orly now maintains, then the Trump Group would not have paid her $32.3 million for it.

Orly now makes the contrived argument that because she voluntarily monetized her beneficial ownership claim to the TRI shares, that somehow means, in her words: "Sagi got all the shares. Sagi got all the share proceeds." (ECF No 85.) Clearly, this is not so, and no amount of double-talk will make it so. Orly is getting $32.3 million.

## II. JUDICIAL ESTOPPEL DOES NOT BAR SAGI'S CLAIMS BECAUSE HE HAS NOT TAKEN ANY INCONSISTENT POSITIONS

After distorting the rulings of the Delaware courts, Orly next distorts the legal positions taken by TPR in the matter before Judge Keenan. Specifically, she claims that Sagi is "judicially estopped from claiming the TRI shares were ever successfully transferred to either [the Sagi or

Orly] Trust" because Judge Keenan "successfully adopted the position that the 2004 transfers were legally void <u>ab initio</u>". Opp. at 5-7. That was <u>not</u> TPR's position.[1]

In reality, TPR maintained that Orly forsook her claim to beneficial ownership therein pursuant to her 2013 Settlement Agreement with the Trump Group. Indeed, Judge Keenan accurately summarized TPR's position as such in his May 15, 2014 Opinion:

> TPR opposes Orly's motion to dismiss and moves for summary judgment. Its position is largely predicated on my Omnibus Opinion [in *Glenclova*], which stated that "if the 2004 transfer of shares to Arie and the Orly Trust is found to be invalid, then TPR had the right to sell the shares to the Trump Group, and TPR would be entitled to the interpleaded funds." Glenclova, 874 F. Supp. 2d at 303. Arguing from this language, TPR asserts that the <u>recent resolution of the beneficial ownership issue compels a ruling that the interpleaded $10.3 million must be released to TPR</u>.
> . . .
> The beneficial ownership issue is now dead; Orly has settled with the Trump Group. Therefore, TPR argues, it is now entitled to the Proceeds it received from the Trump Group in consideration for those shares. …

*TPR Inv. Assoc*, 2014 WL 1979932, at *3, *5. To the extent there was doubt, it has been put to rest by the plain and unambiguous text of the Settlement Agreement itself, which "resolve[s] all issues, disputes and disagreements between [the settling parties], including but not limited to the issue of ownership of all [TRI] shares." (ECF No 84-1, p. 2.)

In sum, Sagi has not taken inconsistent positions, and so is not judicially estopped. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997) ("[J]udicial estoppel may be applied to bar a party from asserting a factual position in a given proceeding only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner, .... perhaps, for example, by obtaining a judgment. When any of these elements are missing, judicial estoppel does not apply.").

---

[1]   Sagi is TPR's President; he neither owns the company nor serves on its Board of Directors. As explained above, Sagi and TPR have taken no inconsistent positions, and therefore Orly's argument that Sagi and TPR are in "privity" is irrelevant at best.

III.    **THE PAROL EVIDENCE RULE DOES NOT BAR EVIDENCE CONCERNING THE NOV. 10, 2004 INDEMNITY OR OCT. 30, 2004 PROMISE**

Next, Orly argues that "no parol evidence may be admitted to vary or supplement the terms of a written contract and insert [] a clawback right into the Divorce Stipulation."  Opp. at 7.  This statement is a *non sequitur*.  Sagi is not seeking to vary the terms of the Divorce Stipulation.  Neither he nor Orly is a party to that Stipulation.  Rather, under the Oct. 30 Promise and the Nov. 10, 2004 Indemnity, they and Dalia entered into a separate understanding which does not implicate Arie's rights under the Divorce Stipulation one iota.

Even if the Divorce Stipulation somehow had been implicated by this arrangement, the parol evidence rule would not bar Sagi's claims.   First, the Nov. 10, 2004 Indemnity and Oct. 30, 2004 Promise are not "parol evidence"; they are freestanding written agreements.  Second, neither of those documents is inconsistent with the Divorce Stipulation's "Entire Understanding" clause, which: (a) only speaks to the "understanding of the parties" (not Sagi or Orly, who are not parties); and (b) has an express carve-out for agreements such as the Oct. 30, 2004 Promise, which, it is undisputed, was  "entered into concurrently" with the Divorce Stipulation. Answr. Decl., Exh. N (Divorce Stipulation, Art. XXI).

Further, and in any event, "[i]t is well settled that parol evidence may be admissible to establish a condition precedent to the legal effectiveness of a written contract if such condition is not contradictory to, or in variance with, the written terms of the agreement…, and the merger clause, which provides that the written document embodies the entire agreement of the parties, is of no consequence until there is a contract in effect …." *Mack-Lowe v. Picault-Cadet*, 33 A.D.3d 504, 504 (1st Dep't 2006) (citing *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 828 (1980); *Hicks v. Bush,* 10 N.Y.2d 488, 491 (1962)); *see also Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447, 452 (2d Cir. 1977) ("[A]n oral condition precedent to the legal effectiveness of an

otherwise integrated written contract, which is not barred by the parol evidence rule if it is not directly contradictory of its terms.").

## IV.   THE AGREEMENTS AT ISSUE ARE INTERRELATED, AND THE TRI SHARES DO NOT CONSTITUTE INVALID PAST CONSIDERATION

Orly maintains that "there can be no consideration here because, by November 10, 2004, the TRI shares had been transferred . . . and the Divorce Stipulation binding." Opp. at 13-14. This accident of timing, caused by Orly's conveniently timed yacht-trip to Fiji, does not obviate her need to live up to her contractual obligations.

First, as previously briefed (ECF No. 36 at 10-11; No. 57 at 10), the Oct. 30 Promise and Nov. 10, 2004 Indemnity are interrelated, as the latter cross-references and attaches the former. Orly largely ignores this point, instead attacking a straw man that the interrelated Oct. 30, 2004 Promise and Nov. 10, 2004 Indemnity are not further interrelated *with the Divorce Stipulation*, which is not Sagi's position. *See* Answr. Decl., Exh. EE (Compl. ¶¶ 17-18) ("Plaintiff performed all of his obligations under the Oct. 30, 2004 Promise. . . . As part of the same overall agreement, Plaintiff and Defendant entered into the related Nov. 10, 2004 Indemnity.").

Second, the Stipulation of Settlement was not converted into a binding Divorce Judgment until nearly two months later, on January 7, 2005.  Answr. Decl., Exh. G.  In New York, a divorce case is not final until a Court says it is.  *See Weinschneider v. Weinschneider*, 50 A.D.3d 1128, 1129 (2d Dep't 2008); *see also* CPLR 2104 (a stipulation of settlement is not enforceable until the defendant files it "with the county clerk.");  *Garver v. Garver*, 1997 WL 47801, at *4 (S.D.N.Y. Feb. 5, 1997) ("'In general, a final judgment of divorce … has the effect of determining the rights of the parties with respect to every material issue that was actually litigated or might have been litigated.'") (quoting *Rainbow v. Swisher*, 72 N.Y.2d 106, 110 (1988)); *see also Davey v. Dolan*, 292 F. App'x 127, 128 (2d Cir. 2008) (same).  As of the date

on which Orly signed the Nov. 10, 2004 Indemnity, confirming her prior verbal commitment, Dalia and Arie's divorce case was still very much alive.

Lastly, the TRI shares provided valid consideration for the Nov. 10, 2004 Indemnity, notwithstanding that the transfer of those shares had taken place two weeks before Orly formally signed on.  Under New York General Obligations Law section 5-1105:

> A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is [(1)] expressed in the writing and [(2)] is proved to have been given or performed and [(3)] would be a valid consideration but for the time when it was given or performed.

N.Y. Gen. Oblig. Law § 5-1105 (McKinney); *see also Carrera Casting Corp. v. Cord*, 106 A.D.3d 422, 423 (1st Dep't 2013) (a contract can be "supported by past consideration that is clearly and unambiguously expressed in the writing") (citing § 5–1105; *Nachem v. Prop. Mkts. Grp.,* 82 A.D.3d 573, 574 (1st Dep't 2011)); *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, 2011 WL 2462588, at *9 n.9 (S.D.N.Y. June 20, 2011) (same) ("'A promise ... shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.'") (quoting § 5–1105 and finding that services provided prior to the execution of an engagement letter still furnished valid consideration); *Holt v. Feigenbaum*, 52 N.Y.2d 291, 300-01 (1981) ("[E]ven if it is assumed that defendant's promise to indemnify plaintiffs pursuant to the cross-indemnity agreement was obtained after plaintiffs executed their personal guarantees to the bank, defendant's promise would remain enforceable, since the 'past consideration', plaintiffs' guarantees, was clearly identified in the cross-indemnity agreement as part of the consideration for defendant's present promise to indemnify.").

-7-

Here, the TRI shares meet all three requirements for valid past consideration under N.Y. Gen. Oblig. Law § 5-1105:  (1) they are expressly identified in writing in the Nov. 10, 2004 Indemnity, which cross-references and attaches the Oct. 30, 2004 Promise, and is signed by Orly, the promisor;  (2) as noted above, they are proved to have been given; and  (3) they would be valid consideration but for (according to Orly) the time when they were given.

In her Opposition, Orly claims that N.Y. Gen. Oblig. Law § 5-1105 does not apply here because it is limited to a writing that: "contain(s) an unequivocal promise to pay a sum certain at a date certain."  Opp. at 15 n.11 (quoting *Umscheid v. Simmacher*, 106 A.D.2d 380, 381 (2d Dep't 1984)).  *Umschied* is inapposite because it concerned a letter in which the promisor purported to set forth this vague, unquantifiable promise to petitioner: "[Petitioner] takes good care of my animals. Without her help I would be a mess. She gave me many hours of happiness. She did everything so I could live in my home which meant everything for me. I want Julia to be paid for her services when I sell a piece of property." 106 A.D.2d at 380.

Clearly, the Nov. 10, 2004 Indemnity contains a far more definite promise, attaching the Oct. 30, 2004 Promise which explicitly identifies the sum of TRI shares tied to the amount Orly obligated herself to pay and thus contains a "sum certain."  *See, e.g., Kreuter v. Tsucalas*, 287 A.D.2d 50, 53 (2d Dep't 2001) (finding "an unequivocal promise to pay … a sum certain upon satisfaction of [an] outstanding mortgage" where "[t]he December 17th agreement provided that Kreuter's fee would be 40% of the reduction in the current mortgage balance instead of the $10,000 flat fee indicated in the original agreement, and stated that it was estimated that the mortgage would be reduced by $177,997.35, resulting in a commission of $71,198").

The First Department, Appellate Division's opinion in *Movado Grp., Inc. v. Presberg*, 259 A.D.2d 371, 371 (1st Dep't 1999), is particularly instructive.  In that case, the court held

-8-

that: "Defendant's promise to pay all of his company's debts to plaintiff on an 'absolute, unconditional and continuing' basis, in consideration for extension of credit, was a broad commitment, certainly not limited to one opening transaction, as defendant would read it" and therefore was "a written expression of past consideration [that] satisfies General Obligations Law § 5-1105." Moreover, the absence of a specific payment date was not fatal where the future payment by the promisor is conditioned upon a defined future occurrence. *Id.*

Orly's promise is just as unequivocal, and accordingly is equally enforceable.

## V.   ORLY'S RECEIPT OF EMOTIONAL PEACE BY ENDING THE PROTRACTED FAMILY DIVORCE ON JANUARY 7, 2005 PROVIDED AN ADDITIONAL FORM OF CONSIDERATION

Orly next argues that the Divorce Stipulation "actually resolved and settled all issues in" her parents' divorce proceeding. Opp. at 13. This is incorrect because, as noted above only, "'a final judgment of divorce issued by a court having both subject matter and personal jurisdiction has the effect of determining the rights of the parties with respect to every material issue that was actually litigated or might have been litigated.'" *Garver*, *supra*. That judgment did not occur until months after Orly signed the Nov. 10. 2004 Indemnity.

## VI.   ORLY'S MUTUAL MISTAKE DEFENSE IS MERITLESS

Next, Orly argues that the Nov. 10, 2004 Indemnity should be rescinded, because "[a]ny agreement reached in 2004 was premised on the Genger family belief that Orly and Sagi were being treated equally in the divorce, with each one getting equivalent amounts of TRI shares[, and b]y the time of Dalia's 'demand' in 2014, the transfers had been determined to be void <u>ab initio</u> and Sagi (via TPR) had obtained all the shares and all the value." Opp. at 18; *see also, e.g.,* Opp. at 19 (contending that "only Sagi benefited" from the TRI shares). As we now know,

these are deliberate falsehoods.  Under her Settlement Agreement, Orly receives $32.3 million for her trust's beneficial ownership interests in the TRI shares.  (ECF. No. 84.)

## VII.   ORLY HAD NO VIABLE DEFENSE TO ASSERT ON SAGI'S BEHALF TO DALIA'S DEMAND UNDER THE OCT. 30, 2004 PROMISE

Finally, Orly claims that "[v]iable defenses do exist" against Dalia's demand under the Oct. 30, 2004 Promise.  Opp. at 21.  However, the only two purported defenses she identifies are lack of consideration and mutual mistake (*id.*), both of which are premised on her now debunked claim that Sagi got everything, she got nothing, and she is now "pauperized."

Orly further claims that her February 18, 2004 email to Sagi – wherein she told Sagi to "stop lying about me and about the history" – is not a "repudiation of anything."  Opp. at 22. Orly omits the language of Sagi's request which prompted her strident response:

> As I previously indicated to you, I am owed $100k per the November 2004 indemnity for my recent $200k payment to mom.
>
> To hear you question the authenticity of an arrangement you literally begged with sobbing tears to be put in place, was another in a line of unfortunate sworn statements you have made .
>
> Please confirm to me today that you will pay the funds promptly.
>
> I remain open to discussing this or any other matter between us. You have my number ….

May 29 Sagi Decl., Exh. E.  Orly's response to Sagi's request is not ambiguous.  It is a blunt repudiation.  Having repudiated the Nov. 10, 2004 Indemnity, she can no longer invoke its provisions for her benefit.  (ECF No. 36 at 13-14; No. 57 at 23-24.)

## CONCLUSION

Orly is out of excuses.  Having falsely accused her brother of the crime of forgery, having told this Court a tall tale about being a "pauper," and having submitted a rash of meritless legal defenses, the time has now come for Orly to honor her contractual commitment. Sagi should be awarded summary judgment on liability, with damages submissions to follow.

Dated:          New York, New York
                December 5, 2014

                                        Respectfully submitted,

                                        MORGAN, LEWIS & BOCKIUS LLP

                                        By:_____/s/ John Dellaportas_____
                                            John Dellaportas
                                            Nicholas E. Schretzman
                                            Mary C. Pennisi
                                            101 Park Avenue
                                            New York, New York 10178-0060
                                            *Attorneys for Plaintiff Sagi Genger*