UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAGI GENGER,<br><br>       Plaintiff,<br><br>  - against -<br><br>ORLY GENGER,<br><br>       Defendant. | Civ. No.: 14-5683 (KBF) |

## ORLY GENGER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

This case is an attempt to push the camel's nose under the tent flaps. By suing on the Sagi Promise Document[1] and November Document (jointly, the "Documents"), Sagi and Dalia hope to create a pipeline allowing them to siphon money from Orly for the rest of her life. Today's request for $200,000 is only the beginning: their next request will be for millions. Their transparent stratagem must fail.

Sagi and Dalia's claims regarding the Documents are entirely belied by the record. The claimed consideration for Orly's indemnity have either been demonstrated to be an abject lie (Dalia signing the Divorce Stipulation only on condition that Orly provide an indemnity) or to have never happened as a matter of law (the Orly Trust receiving half the TRI shares intended for the two Genger children and proceeds from the sale of those TRI shares). Indeed, Sagi and Dalia have worked together and entered into agreements that transferred ownership (record and beneficial) of those shares from TPR (which Sagi owns and controls) to the Trump Group for $10.3 million. TPR has every penny of that $10.3 million. Sagi's contention that there is still consideration here is incorrect, and fails as a matter of fact and law.

## DISCUSSION

A.  **Sagi Incorrect Contention #1 – Dalia Would Not Have Signed The Divorce Stipulation Without A Clawback Right**

Sagi contends Dalia would not have signed the Divorce Stipulation without the right to clawback funds from the Sagi and Orly. (Sagi Moving Br. at 8, 10). Similarly, Sagi also contends the Documents are not barred by the "Entire Understanding Clause" of the Divorce Stipulation because Arie consented to the clawback right being part of the Divorce Stipulation.

---

[1] All defined terms shall have the same meaning as those in Orly Genger's moving brief [Docket No. 38].

(Sagi Opp. Memo. at 20-21). The record before the Court conclusively shows these contentions are untrue.

The record shows that a proposed clawback was included in a September 27, 2004 draft of the Divorce Stipulation. See 9/24/04 Draft Stipulation (Reply Decl. Ex. 66) [Docket No. 49-6]. That language was expressly removed in a later draft. See 10/13/04 Draft Stipulation (Reply Decl., Ex. 67) [Docket No. 49-7]. Notably, part of the proposed (and rejected) language stated "Following the foregoing transfers of the TRI Stock, the Wife will have no ownership interest in TRI, subject to her rights as contemplated by Section 9(b)(iii) [the proposed clawback right]". This "subject to" language was removed, and Dalia's lack of any continuing rights to the TRI Shares made an express part of the Divorce Stipulation. See id. As Dalia signed the Divorce Stipulation without the clawback language and no continuing right of any kind to TRI (but with an "Entire Understanding" provision), Sagi's contention that such a clawback right was a condition precedent to the Divorce Stipulation is conclusively shown to be untrue.

B.   **Sagi Incorrect Contention #2 – Orly Couldn't Sign A Written Promise Document Because She Was In Fiji**

It is undisputed that (i) the Sagi Promise Document does not mention any promise by Orly, the only promise is by Sagi; (ii) Orly only signed the November Document at least ten days after the Divorce Stipulation was signed and became immediately binding in all circumstances; and (iii) it is well-settled rule that past consideration is no consideration. In a vain attempt to get around these facts, Sagi contends the purported agreement to provide Dalia with a clawback "was only executed in two parts because on October 30, 2004 – the closing date of the Divorce Stipulation – Orly was in the middle of the Pacific Ocean." (Sagi Opp. Br. at 8). That Orly was in Fiji, however, is of no moment.

2

Arie and Orly went to Fiji on October 29, 2004. Because everyone knew that Arie and Orly was going to be away, two things happened. *First*, Arie signed the Divorce Stipulation on October 28, 2004. This fact is key. On October 18, 2004, Sagi attorney David Parnes sent Sagi drafts of the Sagi Promise Document that contained signature lines for both Sagi and Orly to sign. (See Sagi Decl. ¶ 4; Email and 10/18/04 Draft) [Docket Nos. 33-12, 43-6]. There is no reason that Sagi could not have obtained Orly's signature between October 18 and October 29. Indeed, Sagi contends the November Document was drafted, sent to Orly, and executed in a single day. (See Parnes Decl. ¶ 8; Sagi Decl. ¶ 6) [Docket Nos. 33-8, 33-12]. Here, however, not only were the drafts never signed by Orly in the 11 days before she left for Fiji, there is no evidence that Sagi or his agents even sent those drafts to Orly for review, comment, or signature.

*Second*, attorney Ed Klimmerman was assigned to be Orly's attorney-in-fact, so that any documents that required Orly's signature could be signed on October 30, 2004. Indeed, the very last exhibit attached to the Divorce Stipulation is signed by Ed Klimmerman as attorney-in-fact for Orly. See Agreement at 7 (last seven pages of complete Divorce Stipulation) (Reply Decl., Ex. 65). Had Sagi's lone promise of October 20, 204 really been a joint promise by him and Orly, Orly could have signed such a promise before October 29, or Ed Klimerman could have signed such a promise on October 30, 2004, as attorney-in-fact for Orly. That none of this happened demonstrates that the October 30, 2004 Promise was Sagi's alone.

### C. Sagi Incorrect Contention #3 – The Orly Trust Received TRI Shares In 2004 That Only Reverted Back To TPR in 2008

This contention is demonstrably untrue; it is belied by the logic and language of the prior decisions voiding the attempted 2004 transfers to Arie and the two Trusts, and the prior positions taken by Sagi and TPR (a corporate entity controlled by Sagi).

The Delaware Courts repeatedly found that, because Arie Genger violated a 2001 Stockholders Agreement with the Trump Group, the 2004 transfers of TRI shares were deemed to have never happened, and that TPR and the Trump Group recognized this in their 2008 Side Letter Agreement (which Side Letter Agreement provided the basis for the sale of the intended Orly Trust TRI Shares to be sold to the Trump Group for $10.3 million, and for TPR to obtain those sale proceeds):

> That same day, the Trump Group entered into a separate agreement (the "Side Letter Agreement") with TPR (represented by its controller, Sagi), wherein the Trump Group acquired an option to purchase the Trans–Resources shares purportedly transferred to Genger and to the Orly Trust in the 2004 Transfers. <u>The Side Letter Agreement would be triggered only if the 2004 Transfers were judicially determined to be legally void. In that event, the legal and beneficial ownership of those shares would be deemed to have remained with TPR.</u> The only signatories to the Side Letter Agreement were the Trump Group and TPR. The Orly Trust was not a signatory, nor was [Arie] Genger.

Genger v. TR Investors, LLC, 26 A.3d at 187 (emphasis added) (Leinbach Decl., Ex. 41) [Docket No. 46-2]. Similarly, the Appellate Division, First Department, recognized:

> The Trump Group and TPR also entered into a "Side Letter Agreement" giving the Trump Group the option to buy the TRI shares purportedly transferred to Arie and the Orly Trust in 2004. The Trump Group's rights under the side letter would be triggered only if the 2004 transfers were judicially determined to be void,

4

and as a result the legal and beneficial ownership of the TRI shares reverted to TPR.

Genger v. Genger, 2014 N.Y. App. Div. LEXIS 5390, *6 (1st Dept. July 24, 2014).

The Delaware Supreme Court and Appellate Division findings were, in turn, based upon the Side Letter Agreement that Sagi-controlled TPR entered into with the Trump Group providing that TPR sold the TRI shares intended for the Orly Trust to the Trump Group on condition that TPR – and not Arie or the Orly Trust – be determined to be the record and beneficial owners of those TRI Shares;

> In connection with the transactions contemplated by the Purchase Agreement, if at any time following the Closing Date, it is determined that Arie Genger is not the record and beneficial owner of the 794.40 shares of Common Stock of the Company purportedly transferred to him by TPR in October, 2004 and/or that Orly Genger 1993 Trust is not the record and beneficial owner of the 1,102.80 shares of Common Stock of the Company purportedly transferred to such Trust by TPR in October, 2004, and that TPR is the record or beneficial owner of any such shares, in either or both cases by virtue of the transfer of such shares being deemed to have been void or for any reason (the shares being so affected being referred to herein as the "Affected Shares") then (a) upon the written request from the Purchasers, TPR shall promptly take all necessary action to effect the transfer of all Affected Shares . . . to the Purchasers [the Trump Group].

August 22, 2008 Side Letter Agreement (Leinbach Decl., Ex. 35). Similarly, the Stock Purchase Agreement TPR and the Trump Group entered into for the sale of the TRI Shares intended for the Sagi Trust provided:

> 10. Valid Transfer. If at any time following the Closing Date, it is determined that Seller [the Sagi Trust] is not the record and beneficial owner of the Shares as of the date hereof by virtue of the transfer of the Shares to it by TPR being deemed to have been void or for any other reason, and that all right, title and interest in and to the Shares is held by TPR, . . . the parties hereby agree that (a) this

5

> Agreement and the transactions contemplated hereby shall be deemed to have been entered into and consummated with TPR, (b) the Purchasers shall retain all right, title and interest in and to the Shares as if purchased from TPR pursuant to this Agreement . . .

Stock Purchase Agreement ¶10 (Leinbach Decl., Ex. 34)

Similarly, in both its original Final Judgment Order and Revised Judgment Order, the Delaware Chancery Court found that the transfers of TRI shares were deemed to have never occurred because they were void:

> Arie Genger and the Orly Genger Trust <u>are not (and have not been since at least the date of execution of the Stockholders Agreement) the record or beneficial owners of any Trans-Resources shares</u>.

Final Judgment Order ¶ 9 (emphasis added) (Reply Decl, Ex. 70) [Docket No. 49-10].

> Arie Genger and the Orly Genger Trust <u>are not (and have not been since at least the date of execution of the Stockholders Agreement) the record owners of any Trans-Resources shares</u>.

Revised Final Judgment Order ¶ 9 (emphasis added) (Reply Decl., Ex. 71) [Docket No. 49-11]. Conversely, none of the decisions from the Delaware Courts find that the transfers of TRI shares were found to be void only as of 2008, when the decisions were made.

**D. Sagi Incorrect Contention #4 – The Confidential Settlement Agreement Provided Consideration Because It Sold The Orly Trust TRI Shares to the Trump Group on behalf of the Orly Trust**

Sagi's contention is belied by the unambiguous language of the 2013 Confidential Settlement Agreement ("2013 CSA"), and the unambiguous language of the Second Amended Stipulation of Dismissal that resulted from the 2013 CSA). Specifically, nothing in the 2013

6

CSA (i) disavows Orly Trust rights to the TRI shares; (ii) re-sells the Orly Trust TRI shares for additional monies; or (iii) gives the Orly Trust any of the $10.3 million in proceeds.[2]

Further, the 2013 CSA is executed by the "AG Group," which includes Orly Genger as an individual and Orly Trust beneficiary. (2013 CSA at 1). The Orly Trust is a "Sagi Group" member that is not a settling party. (Id. at 3). The 2013 CSA acknowledges that no Orly Trust claims ware released by not including the Sagi Group in any release of claims, and directing the AG Group to take necessary actions to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties" in the future. (Id. at 16). If the 2013 CSA released Orly Trust claims, this provision would be meaningless.

Finally, the 2013 CSA lifts the pre-existing injunction preventing Dalia from prosecuting, as Trustee of the Orly Trust, her Dalia Delaware Action regarding beneficial ownership of the TRI shares against TPR and the Trump Group. (Id. at 5-6).

Importantly, the Second Amended Stipulation of Dismissal follows the 2013 CSA by expressly leaving Orly Trust claims un-settled, and lifting the injunctions that had heretofore prevented the Orly Trust from prosecuting its beneficial ownership claims to the Orly Trust TRI Shares in the earlier-filed Dalia Delaware Action. See So-Ordered Second Amended Stipulation [Docket No. 85-3].

The Court should be aware that even as Sagi (and Dalia) contend the 2013 CSA settled Orly Trust claims in this action, Dalia, as Trustee of the Orly Trust has moved to replace Orly in the New York TRI Action that was partially settled by the 2013 CSA. Dalia bases that

---

[2] On page 2 of the 2013 CSA, the Trump Group merely abandons its claims to the $10.3 million, leaving the Orly Trust's claims (and TPR's claims) to those monies unimpeded.

7

motion on the fact that the Orly Trust claims were not affected by the 2013 CSA, just Orly's right as beneficiary to act on behalf of her Orly Trust. See Notice of Motion filed by Dalia in New York TRI Action, seeking to replace Orly as prosecutor of the Orly Trust claims (12/5/14 Leinbach Decl., **Exhibit 90**).

Finally, at least two Courts have recognized that it is not the 2013 CSA that judicially determined the beneficial ownership of the TRI shares intended for the Orly Trust. Rather, TPR (controlled by Sagi) and the Orly Trust (controlled by Dalia) engineered that ruling by entering into the "So-Ordered" August 30, 2013 Stipulation in Delaware Chancery Court. By the Stipulation (not signed or agreed to by Orly), Sagi-controlled TPR, Dalia as Trustee of the Orly Trust, and the Trump Group agree that the Trump Group beneficially owns the TRI shares at issue and TPR owns the $10.3 million in proceeds from those shares. See 8/13/13 Stipulation ¶ 2 (Leinbach Decl., Ex. 45) [Docket No. 42-10]. This Court (Justice Keenan) previously recognized that it was this August 2013 Delaware Stipulation that determined beneficial ownership of the intended Orly Trust TRI Shares:

> As part of a stipulation dismissing the action in Delaware Chancery Court, the parties to that action -- TPR/Sagi, the Trump Group, and Dalia, but not Arie or Orly -- agreed that the Trump Group is the rightful owner of the Orly Trust Shares. (Dellaportas Dec. Ex. B ¶ 2.)

TPR Investment Associates, Inc. v. Pedowitz & Meister, LLP, 2014 U.S. Dist. LEXIS 67116, *5-6 (May 15, 2014). The Appellate Division, First Department, similarly recognized that it was the August 2013 Delaware Stipulation – and not the 2013 CSA – that determined beneficial ownership and ended Orly's claims to the $10.3 million in proceeds from Sagi/TPR's sale of those shares to the Trump Group:

8

> Moreover, under the 2008 agreement between TPR and the Trump Group, the sale could only take place after a judicial determination that TPR is the record and beneficial owner of the Orly Trust's TRI shares. When the complaint was filed, it had only been determined that TPR was the shares' record owner, but the Delaware Chancery Court has now also ruled that TPR is the shares' beneficial owner (Stipulation & Proposed Order of Dismissal, Dalia Genger v TR Invs., LLC [Del Ch Ct, Aug. 30, 2013] [C.A. No. 6906-CS]).

Genger, 2014 N.Y. App. Div. LEXIS 5390, at *13.

For all these reasons, Sagi's desperate attempt to rely on a 2013 CSA to furnish consideration for 2004 Documents fails as a matter of law and judicial estoppel.

## CONCLUSION

For the reasons herein and in her moving brief, Orly Genger respectfully requests that the Court (i) grant her motion for summary judgment, dismissing the complaint with prejudice; and (ii) grant Orly such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 5, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
Yoav M. Griver
Bryan D. Leinbach
Attorneys for Defendant Orly Genger
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

9