UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/22/17__

SAGI GENGER,

                    Plaintiff,

            -against-

ORLY GENGER,

                    Defendant.

14cv05683 (KBF) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE KATHERINE B. FORREST, U.S.D.J.:**

On March 17, 2015, the Court entered an Amended Judgment in Plaintiff Sagi Genger's

("Plaintiff") favor, which was challenged by Defendant Orly Genger ("Defendant"),

unsuccessfully, both by way of a collateral motion to vacate the judgment, and by appeal to the

Court of Appeals. The Second Circuit's mandate has now issued, and the case has been referred

to this Court for post-judgment matters. Currently before this Court is a motion by Plaintiff

(Dkts. 141, 142, 143 (Plaintiff's motion papers)), seeking (1) to enforce the liability of the surety

on the supersedeas bond posted by Defendant to secure the Amended Judgment pending the

resolution of her appeal, and (2) an award of $172,997.60 in attorneys' fees and costs,

representing one-half of the fees and costs Plaintiff incurred in connection with Defendant's

appeal and the pending motion; Plaintiff claims entitlement to these fees and costs based on the

same contract as gave rise to Defendant's liability in the first instance. By separate Order of this

date, this Court has ruled that, in light of the issuance of the mandate and Defendant's failure to

satisfy the Amended Judgment, the surety must release funds on the posted supersedeas bond, to

cover the amount of that judgment, together with post-judgment interest and the costs taxed by

the Circuit. As for the second portion of Plaintiff's motion, seeking an award of post-judgment

fees and costs, I recommend that the Court grant Plaintiff's application, but only to the extent

that Plaintiff be granted fees in the amount of $64,875.70 and costs totaling $2,733.77, which are less than the amounts requested.

## BACKGROUND

### A.    The Underlying Indemnity Agreement

Defendant's liability in this case was predicated on her breach of an agreement dated November 10, 2004 (the "2004 Indemnity"), by which she agreed to indemnify Plaintiff (her brother) for 50 percent of the funds that he paid to Dalia Genger ("Dalia") (their mother) for Dalia's care, as well as 50 percent of the reasonable attorneys' fees and costs incurred in connection with the parties' agreement. (*See* Declaration of John Dellaportas in Support of Plaintiff's Motion to Enforce Liability on Supersedeas Bond and for an Award of Attorneys' Fees and Expenses, dated Oct. 28, 2016 ("10/28/16 Dellaportas Decl.") (Dkt. 142), Ex. A (2004 Indemnity).) In this regard, the 2004 Indemnity stated that Defendant would

> indemnify, defend, and hold [Plaintiff] harmless, for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . *including [Plaintiff's] reasonable counsel and other professional fees, expenses and costs*, which arise from [Plaintiff's] undertakings in the Promise.

(*Id.* (emphasis added).)

At various points throughout this protracted litigation, Defendant asked the Court to find that the 2004 Indemnity was not a valid and enforceable agreement, but the Court upheld the agreement, and awarded Plaintiff not only one-half of the amount that he had paid to Dalia, but also one-half of the attorneys' fees and costs that the Court found that Plaintiff had reasonably incurred over the course of the suit, up to the date of the Amended Judgment. (*See* Opinion and Order, dated Mar. 9, 2015 ("3/9/15 Order") (Dkt. 112).) Also based on the 2004 Indemnity, the Court further granted Plaintiff one-half of the fees and costs he incurred in opposing Defendant's

2

motion to vacate the Amended Judgment. (*See* Order, dated Feb. 4, 2016 ("2/4/16 Order")) (Dkt. 137).) At this point, it is law of the case that the 2004 Indemnity is enforceable, and the only questions now before the Court are whether the amount of fees and costs incurred by Plaintiff on appeal, and in connection with his current fee application, have been adequately supported and are reasonable. Once the total amount of such reasonable fees and costs is determined, Plaintiff is entitled, under the 2004 Indemnity, to recover half of that amount.

**B.     Plaintiff's Prior Awards of Attorneys' Fees and Costs**

As noted above, the Court has already twice awarded Plaintiff attorneys' fees and costs pursuant to the terms of the 2004 Indemnity. First, on March 9, 2015, the Court found that Plaintiff was entitled to $150,059.01, representing 50 percent of Plaintiff's reasonable fees and costs incurred prior to the issuance of the Amended Judgment. (*See* 3/9/15 Order, at 7.) In issuing its Order granting those fees and costs, the Court examined Plaintiff's counsel's rates and stated hours of work, and performed a lodestar analysis, as discussed further below. The amount granted by the Court for pre-judgment fees and costs was then incorporated into the Amended Judgment. (Dkt. 113.)

Second, on February 4, 2016, the Court granted, without analysis, Plaintiff's unopposed motion for $33,599.64 in additional fees and costs, stated by Plaintiff to represent 50 percent of the fees and costs that he incurred in connection with opposing Defendant's motion to vacate the Amended Judgment. (*See* Dkts. 137 (Order); 134, 135, 136 (Plaintiff's motion papers).)

Plaintiff has also sought reimbursement of his appellate costs by filing two bills of costs, one in the Second Circuit and a duplicative one in this Court, each seeking $3,497.96 for printing costs purportedly incurred in connection with opposing Defendant's appeal. (*See* Dkt. 220 in Appeal No. 15-350 (2d Cir.) (Bill of Costs submitted Oct. 11, 2016, in the Second Circuit);

Dkt. 150 (Bill of Costs submitted Nov. 4, 2016, in this Court[1]); *see also* Declaration of

John Dellaportas in Support of Plaintiff's Bill of Costs Notice of Taxation, dated Oct. 31, 2016

(Dkt. 151).) On October 31, 2016, the Second Circuit taxed costs in Plaintiff's favor in the

amount of $210.60. (Dkt. 146; Dkt. 224 in Appeal No. 15-350 (2d Cir.).) On November 18,

2016, the Clerk of Court of this Court denied Plaintiff any of his requested costs, noting that such

costs were "not allowable" in this Court, as they "were incurred in the U.S.C.A. for the 2nd

Circuit." (Dkt. 154.)

## DISCUSSION

### I.    APPLICABLE LEGAL STANDARDS

Although Plaintiff has a contractual right to recover 50 percent of the attorneys' fees and

costs he incurred in this case, his current fee application, which Defendant has opposed, must be

examined for reasonableness. In her March 9, 2015 Opinion and Order, familiarity with which is

assumed, Judge Forrest set out the legal standards applicable to the review of such applications,

noting that "[a] district court has 'considerable discretion' in determining what constitutes a

reasonable fee award.'" (3/9/15 Order, at 2 (quoting *Arbor Hill Concerned Citizens

Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).) Generally, in

determining whether the amount claimed is appropriate, the "starting point" is "the lodestar – the

product of a reasonable hourly rate and the reasonable number of hours required by the case[,]"

which calculates a "presumptively reasonable fee[.]" *Millea v. Metro-North R.R. Co.*, 658 F.3d

154, 166 (2d Cir. 2011) (citing *Arbor Hill*, 522 F.3d at 183; *Perdue v. Kenny A. ex rel. Winn*, 559

U.S. 542, 552-53 (2010) (internal quotation marks omitted)). While "enhancements may be

---

[1] Plaintiff had attempted to submit his Bill of Costs in this Court on October 28, 2016
(Dkt. 140), but it was rejected as improperly filed, and he therefore refiled it on November 4,
2016 (Dkt. 150).

awarded in rare and exceptional circumstances[,]" there is a "strong presumption" that the lodestar constitutes the proper award. *Perdue*, 559 U.S. at 546.

In determining an attorney's reasonable hourly rate, the court considers the amount "a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. As for the time component of the lodestar, an attorney's stated number of hours should be reduced by the court where it is greater than should have been required to litigate the case effectively, *see Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (time component of lodestar calculation "reflects hours worked that are neither excessive nor duplicative"), or where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10cv05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (holding vague and block-billed time records insufficient to substantiate claimed expenditures of time; collecting cases). In such circumstances, a percentage reduction may be applied as a "practical means of trimming fat" from a fee application. *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1142, 1146 (2d Cir. 1983). In determining whether an excessive amount of time was expended on a matter, the court may also consider the nature and quality of the work submitted by counsel. *See Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).

The party seeking attorneys' fees bears the burden of demonstrating that its claimed fees are reasonable. *Thai-Lao Lignite (Thailand) Co.*, 2012 WL 5816878, at *3 (citations omitted). In support of the fee application, the moving party must submit contemporaneous time records

that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." *Id.* (quoting *Carey*, 711 F.2d at 1148) (internal quotation marks omitted).

"The Second Circuit has consistently 'held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *TufAmerica Inc. v. Diamond*, No. 12cv3529 (AJN), 2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).)

## II.   PLAINTIFF'S REQUEST FOR POST-JUDGMENT FEES AND COSTS

Plaintiff seeks an award of $172,997.60 in attorneys' fees (Pl. Mem., at 6), for 50 percent of the fees incurred for the period from February 23, 2015 to the date of Plaintiff's motion (10/28/16 Dellaportas Decl., Ex. B (invoices), at Dkt. 142-2, p. 2). This work is represented to have been performed by seven attorneys and two paralegals with the law firm of Morgan, Lewis & Bockius ("Morgan Lewis") (the previous law firm of Plaintiff's lead counsel John Dellaportas ("Dellaportas")), and three attorneys and three paralegals with the law firm of Kelley Drye & Warren ("Kelley Drye") (the law firm Dellaportas joined on July 1, 2016). (10/28/16 Dellaportas Decl. ¶ 6.)

### A.   Attorneys' Fees Incurred on Appeal

#### 1.   Reasonable Rates

In its March 9, 2015 Opinion and Order, the Court found to be reasonable the hourly rates that – at that time – Plaintiff had requested for the Morgan Lewis attorneys and paralegals who had worked on Plaintiff's team. (*See* 3/9/15 Order, at 5.) In particular, the Court noted that the highest rate being billed by a Morgan Lewis partner was $615 per hour, and that the highest rate being charged for an associate with "less than a decade" of experience was $395 per hour. (*Id.*;

6

*see also* Declaration of John Dellaportas in Support of Plaintiff's Jan. 20, 2015 Motion for Attorneys' Fees, dated Jan. 20, 2015 ("1/20/15 Dellaportas Decl.") (Dkt. 101) ¶ 7.) The Court found that these rates, as well as a rate of $575 per hour for a senior associate with 13 years of experience, were within the range of rates that had been approved in this District. (*See* 3/9/15 Order, at 5-6.)

Morgan Lewis, however, has either raised its attorney rates since the date of the Court's earlier scrutiny of its fees, or it has stopped providing as significant a "client discount" to Plaintiff. (*See* 1/20/15 Dellaportas Decl. ¶ 8 (stating that the rates requested in a prior application reflected "substantial discounts"); 10/28/16 Dellaportas Decl. ¶ 8 (stating that rates currently requested again reflect discounts).) For example, while the Morgan Lewis invoices that were previously submitted reflect that Dellaportas, the lead partner on the engagement, had charged a billing rate of $615 per hour on this engagement, the invoices that have now been placed before the Court reflect time that he billed at $695 per hour. (10/28/16 Dellaportas Decl., Ex. B (invoices), at Dkt. 142-2, pp. 6, 8, 10, 13-24.) For another example, Plaintiff previously sought payment for mid-level associate Mary Pennisi ("Pennisi") at the rate of $395 per hour, but, for purposes of this motion, Plaintiff now seeks reimbursement for Pennisi's time at rates ranging from $495 (*id.*, Ex. B (invoices), at Dkt. 142-2, pp. 2, 4, 6, 8, 10, 13-19) to $540 per hour (*id.*, Ex. B (invoices), at Dkt. 142-2, pp. 20-23). Although law firms generally increase their billing rates over time, this Court does not recommend that the increases proposed here be accepted, given that it was only in 2015 that the Court approved the rates that it did, and the work performed by Morgan Lewis that is now at issue did not proceed past 2016.

Adjusting the currently requested rates of Morgan Lewis's attorneys and paralegals, so that they do not exceed the rates the Court earlier found to be reasonable (*i.e.*, up to $615 per

hour for partners, up to $395 per hour for associates, and up to $280 per hour for paralegals),

results in the following recommended rates:

| Morgan Lewis | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Position** | **Years' Experience** | **Requested Rate** | **Recommended Rate** |
| Dellaportas | Partner | 23 | $695 | $615 |
| B.A. Herman | Partner | 19 | $675-705 | $615 |
| A.N. Ho | Partner | 17 | $660 | $615 |
| M.C. Pennisi | Associate | 6 | $495-540 | $395 |
| J.L. Joy | Associate | 4 | $420 | $330 |
| A.S. Goldenhersh | Associate | 2 | $365 | $300 |
| M.F. Feig | Associate | 3 | $365 | $300 |
| J.A. Walker | Paralegal | -- | $227.90[2] | $227.90 |
| R.A. Bellacosa | Paralegal | -- | $290 | $280 |

Using the same previously approved rates as parameters, this Court also recommends,

with one exception, adjusting the rates requested by Plaintiff for the work of the attorneys who

later represented him at Kelley Drye.[3] The exception would be for senior partner Sarah L. Reid

("Reid"), an attorney with reportedly 40 years of experience – nearly twice the years of

experience of Dellaportas. While Reid's requested rate of $832.50 per hour is above the range

---

[2] Although Dellaportas states, in his Declaration, that paralegal J.A. Walker ("Walker") billed at the rate of $227.60 per hour (10/28/16 Dellaportas Decl. ¶ 9), the submitted invoices actually reflect a billing rate of $227.90 per hour. (*Id.*, Ex. B (invoices), at Dkt. 142-2, pp. 14, 16-17, 20, 22-23.) Plaintiff gives no explanation as to why Morgan Lewis previously billed at the rate of $260 per hour for this same paralegal (*see* 1/20/15 Dellaportas Decl. ¶ 7) and now instead seeks the reduced rate of $227.90 per hour, but, as the currently requested rate is lower than what was previously approved, this Court sees no reason to reject the currently requested rate.

[3] There is no similar reason to make any downward adjustment of the rates charged by Kelley Drye for paralegal time, as Kelley Drye charged lower rates that Morgan Lewis for the work of paralegals.

that the Court has typically approved (*see* 3/9/15 Order, at 3 (noting that, "[i]n recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour" (collecting cases))), her high level of experience and apparent expertise – being called in, it seems, to consult on oral argument preparation for the appeal (*see* Plaintiff's Reply Brief in Further Support of His Motion (A) To Enforce Liability against Surety on Supersedeas Bond and (B) for an Award of Attorney's Fees and Expenses ("Pl. Reply Mem.") (Dkt. 155), at 9) – warrants approval of a higher rate than $615 per hour. I therefore recommend that the Court approve a rate of $750 per hour for Reid, and otherwise approve rates for the Kelley Drye team as follows:

| Kelley Drye | | | | |
|---|---|---|---|---|
| Timekeeper | Position | Years' Experience | Requested Rate | Recommended Rate |
| Dellaportas | Partner | 23 | $700 | $615 |
| Sarah L. Reid | Partner | 40 | $832.50 | $750 |
| Erika Stallings | Associate | 7 | $477 | $395 |
| Keith Vena | Paralegal | -- | $265.50 | $265.50 |
| Tanya Green | Paralegal | -- | $265.50 | $265.50 |
| Caslyn Carrey | Paralegal | -- | $265.50 | $265.50 |

### 2. Reasonable Hours

Plaintiff has submitted invoices reflecting 428.5 hours in attorney time and 162.1 hours in paralegal time. (10/28/16 Dellaportas Decl., Ex. B.) The total hours sought for each timekeeper at each law firm are detailed in the charts below, which this Court has prepared from its own review of those invoices. On this point, this Court notes that, with respect to Morgan Lewis, the

invoices presented do not support the hour totals presented by Dellaportas in his Declaration.

(*Compare id.* (invoices) *with* 10/28/16 Dellaportas Decl. ¶ 9.)[4]

| Morgan Lewis | | |
|---|---|---|
| Timekeeper | Position | Total Hours Worked |
| Dellaportas | Partner | 163.7 |
| B.A. Herman | Partner | 17.1 |
| A.N. Ho | Partner | 1.5 |
| M.C. Pennisi | Associate | 182.3 |
| J.L. Joy | Associate | 10.6 |
| A.S. Goldenhersh | Associate | 7.1 |
| M.F. Feig | Associate | 6.3 |
| J.A. Walker | Paralegal | 94 |
| R.A. Bellacosa | Paralegal | 9.8 |

---

[4] The most significant discrepancies between Dellaportas's representation of the number of hours worked by the Morgan Lewis team and the hours actually reflected by the invoices are with respect to Dellaportas's own time, and that of paralegal Walker. Dellaportas states in his Declaration that he expended 185.8 hours on the matter while at Morgan Lewis, but the invoices only reflect 163.7 hours (*see* 10/28/16 Dellaportas Decl., Ex. B (invoices), at Dkt. 142-2, pp. 6, 8, 10, 13-24) – a significant difference, considering his billing rate. Further, Dellaportas states that Walker billed a total of 188 hours, but the invoices reflect only about half that amount of time – 94 hours – for this timekeeper. (*Id.*, Ex. B (invoices), at Dkt. 142-2, pp. 14, 16-17, 20, 22-23.) This Court did not find the same type of calculation errors in Dellaportas's summary of the hours of the Kelley Drye timekeepers; for those attorneys, the represented hours match those set out in the underlying invoices.

| Kelley Drye | | |
| --- | --- | --- |
| **Timekeeper** | **Position** | **Total Hours Worked** |
| Dellaportas | Partner | 20.6 |
| Sarah L. Reid | Partner | 15.3 |
| Erika Stallings | Associate | 10.3 |
| Keith Vena | Paralegal | 40.5 |
| Tanya Green | Paralegal | 2.3 |
| Caslyn Carrey | Paralegal | 15.5 |

With respect to Plaintiff's first motion for attorneys' fees, Judge Forrest noted that this case, while only a contract dispute between two parties, "differs from the usual [breach-of-contract] scenario in that the contract at issue imposes continuing obligations on the parties, such that its true economic impact . . . is likely to greatly exceed the exact amount of damages sued over." (3/9/15 Order, at 6.) In the unusual circumstances of this case, the Court found it understandable that an attorneys' fee award could exceed the amount initially in controversy, and accepted the reasonableness of the expenditure of "569.5 hours of lawyers' time and 345.1 hours of paralegals' time spread across a considerable amount of discovery and the briefing of four dispositive motions." (*Id.*) It is not, though, similarly understandable that the law firms representing Plaintiff reasonably could have spent 428.5 hours in attorney time and 162.1 hours in paralegal time in connection with defending an appeal – even if the appeal combined challenges to a number of the Court's rulings, including both its summary judgment decision and its denial of Defendant's motion to vacate the judgment.

This number of attorney hours would be the equivalent of one attorney working full-time on this matter (eight full hours per day, five days per week), on *nothing* but this appeal, every single day for more than two months. Yet, as set out in the Second Circuit's summary order, there were, at bottom, a collection of only three issues necessarily addressed by the appeal: the

propriety of the Court's exercise of diversity jurisdiction, based on Plaintiff's change of domicile (*see* Summary Order, dated Sept. 29, 2016 ("Summary Order") (Dkt. 217-1 in Appeal No. 15-350 (2d Cir.)), at 2-4); the validity of the contract underlying the parties' dispute (*id.*, at 5-7); and whether the Court's denial of the motion to vacate the Amended Judgment rested on false evidence (*id.*, at 7-9). Even if each of those issues required the briefing of a number of sub-issues and mastery of a lengthy record, the attorney effort still should not have required nearly 430 hours, especially where each of the issues had presumably been briefed previously, in this Court.

Of particular concern is the fact that Dellaportas – the lead partner on the case – claims to have personally expended a large number of hours performing "legal and factual research" for an appellate brief (*see* time entries for 10/5/15 (3.6 hours), 10/6/15 (3.5 hours), 10/7/15 (4.0 hours), and 10/8/15 (3.5 hours)[5] (10/28/16 Dellaportas Decl., Ex. B (invoices), at Dkt. 142-2, p. 14)), and in preparing even the *first drafts* of Plaintiff's appellate briefs (*see, e.g.*, time entries for 10/9/15 ("Start of drafting appeal brief . . ." (3.8 hours)), 10/12/15 ("Ongoing drafting of appeal brief" (5 hours)), 10/13/15 ("Drafting appeal brief and research for same" (3.2 hours)), 10/14/15 ("Draft appeal brief" (4.3 hours)), 10/15/15 ("Drafting appeal brief" (4 hours)), 10/16/15 ("Drafting brief" (6.8 hours)), 10/18/15 ("Drafting appeal brief" (6 hours)), 10/19/15 ("Drafting appeal brief" (7.8 hours)), 10/20/15 ("Final drafting of first draft of appeal brief" (6.5 hours) (*id.*, Ex. B (invoices), at Dkt. 142-2, pp. 15-16)). While a senior partner, of course, has oversight responsibility for the firm's filings, and would be expected to play a significant role in supervising the preparation of briefs and revising drafts, legal research and the initial drafting of

---

[5] While certain of these entries also reflect other tasks, such as client communications, the time is block billed, such that this Court cannot discern the amount of time spent on these other tasks.

legal argument is more often performed by senior or mid-level associates, and – at a minimum – substantial time performing such work should not be charged at a senior-partner level. *See, e.g., Pig Newton, Inc. v. Boards of Directors of The Motion Picture Indus. Pension Plan*, No. 13cv7312 (KPF), 2016 WL 796840, at *7 (S.D.N.Y. Feb. 24, 2016) (collecting cases). Furthermore, the vagueness of Dellaportas's descriptions of his "legal and factual research" make it impossible for this Court to understand why any such research was even required, particularly in a case where the relevant facts and points of law had already been presented and argued at length. *See, e.g., D.J. v. City of New York*, No. 11cv5458 (JGK) (DF), 2012 WL 5431034, at *7-8 (S.D.N.Y. Oct. 16, 2012) (noting that attorney time entries that merely indicate that "research" was performed are generally considered too vague to justify full recovery), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (Nov. 7, 2012).

Moreover, as Defendant appropriately points out, she should not be responsible for the cost of duplicative work occasioned by Dellaportas's move to a new law firm. (*See* Herschmann Decl. ¶ 15.) While Plaintiff contends that Dellaportas "changed firms only *after* all appellate briefing was concluded, and well *before* preparations began for oral argument" (Pl. Reply Mem., at 9 (emphasis in original)), this does not mean that there was no duplication of effort. Surely, the preparations for oral argument would have been more streamlined and efficient if the Kelley Drye attorneys had not needed to start from scratch in learning the nuances of the various legal issues involved. In fact, the lengthier the record and more complicated the issues presented (presumably, according to Plaintiff, justifying the many hours spent briefing those issues), the more time new counsel would have had to spend, coming up to speed. This type of duplication of effort, standing alone, has been held to justify a 50-percent reduction in claimed fees. *See*

13

*Scholastic, Inc. v. Stouffer*, 246 F. Supp. 2d 355, 358 (S.D.N.Y. 2003) (reducing fee award by half to account for duplication that inevitably arose when law firm decided to change the roster of attorneys assigned to case).

Finally, even though Judge Forrest found, in her ruling on Plaintiff's initial fee application, that counsel's practice of "block billing" justified a reduction in the requested hours (*see* 3/9/15 Order, at 7 (stating that requested fees would be reduced by 15 percent "because the bills on which [Plaintiff's] fee request is based use block billing and group multiple tasks together within single time entries, without distinguishing between the time spent on each task"), Plaintiff's counsel nonetheless continued to block bill their time.[6] This again warrants a reduction in the claimed hours. *See Erickson Prods., Inc. v. Only Websites, Inc.*, No. 12cv1693 (PGG) (KNF), 2016 WL 1337277, at \*4 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

Courts in this District have typically found that, absent significant case complexity, up to 100 hours spent by a legal team working on an appeal may be considered reasonable. *See, e.g.*, *Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE) (GWG), 2017 WL 606507, at \*3 (S.D.N.Y. Feb. 15, 2017) (finding reasonable a total of 86.87 hours spent litigating appeal, including 8.79 hours of paralegal time) (citing *DeCurtis v. Upward Bound Int'l, Inc.*, 2013 WL 3270357, at \*6 (S.D.N.Y. June 3, 2013) (awarding fees for 100 hours of work done on appeal, including 10

---

[6] *See, e.g.*, time entries dated 7/17/15 (Dellaportas entry of 1 hour for: "Review of proposed entries to joint Second Circuit appendix; communications with Mary Pennisi re same; communication of additions to opposing counsel") (10/28/16 Dellaportas Decl., Ex. B (invoices), at Dkt. 142-2, p. 8); 9/2/15 (M.C. Pennisi entry of 2.3 hours for: "Revised research memorandum re: research issues; emails with J. Dellaportas re: same; conference with J. Dellaportas re: additional factual analysis for appellate brief; analyzed discovery time line for appellate brief; drafted memorandum re: same") (*id.*, p. 13); 10/16/15 (M.C. Pennisi entry of 1.9 hours for: "Conference with D. Ryan re: handwriting demonstrative; conference with R. Bellacosa re: same; conference with junior associates re: research issues; researched re: various issues on commercial and procedural law") (*id.*, p. 16).

14

hours of paralegal time); *Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.*, 881 F. Supp. 2d 482, 492 (S.D.N.Y. 2012) (awarding fees for 68 hours of work performed by attorneys on appeal)). Even if the hours approved in the cited cases were doubled in this case, or tripled – or even quadrupled or quintupled – they would still be significantly less than the nearly 600 hours claimed to have been expended here (including over 160 hours of paralegal time) – in a case that, after all, does not feature multiple parties, highly technical evidence, or other characteristics that might render it enormously complex. *See LaBarbera v. J.E.T. Res., Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (finding expenditure of more than 300 hours on "simple and straightforward" appeal to be "totally unnecessary and excessive," and reducing time by half).

This Court does acknowledge that Plaintiff had to defend two separate appeals filed by Defendant, and that this case – even if it arose from a fairly straightforward contract – had a long and involved procedural history. These factors suggest that it would have been reasonable for Plaintiff's counsel to have spent a significantly greater amount of time working on the appellate phase of the case than would be ordinarily expected. Nonetheless, in light of the extremely high number of stated hours and the various billing issues identified above, I recommend an overall 50-percent reduction in the hours stated by both Morgan Lewis and Kelley Drye, in Plaintiff's current fee application. This would result in a reduction of the stated attorney hours to 214.25, and the paralegal hours to 81.05.[7]

---

[7] This Court notes that, in addition to criticizing, generally, the number of hours billed on appeal, Defendant takes issue here with two specific time entries recorded by Morgan Lewis paralegal Walker. (*See* Herschmann Decl. ¶ 21.) These entries, for September 25 and 28, 2015, reflect 10.5 hours to "[p]ull joint appendix from PACER [and] create searchable [PDFs]" and "[d]ownload searchable PDFs onto desktop." (*Id.*; 10/28/16 Dellaportas Decl., Ex. B (invoices), at Dkt. 142-2, at 14.) In response to Defendant's challenge to these entries, Plaintiff states that Defendant's "18-volume appendix [was] replete with meaningless and duplicative materials, making it unusable in that form for searches, at least until it could be merged into a single [PDF]." (Pl. Reply Mem., at 10.) It may be that over 10 hours were reasonably required to

15

### 3.    Lodestar Calculation

Using the hourly rates and hours determined above to be reasonable for the work performed on appeal, this Court recommends calculating the lodestar for that work as follows:

| Morgan Lewis | | | | |
|---|---|---|---|---|
| Timekeeper | Job Title | Hours (reduced by 50% from Stated Hours) | Recommended Rate | Lodestar |
| Dellaportas | Partner | 81.85 | $615 | $50,337.75 |
| B.A. Herman | Partner | 8.55 | $615 | $5,258.25 |
| A.N. Ho | Partner | .75 | $615 | $461.25 |
| M.C. Pennisi | Associate | 91.15 | $395 | $36,004.25 |
| J.L. Joy | Associate | 5.3 | $330 | $1,749.00 |
| A.S. Goldenhersh | Associate | 3.55 | $300 | $1,065.00 |
| M.F. Feig | Associate | 3.15 | $300 | $945.00 |
| J.A. Walker | Paralegal | 47 | $227.90 | $10,711.30 |
| R.A. Bellacosa | Paralegal | 4.9 | $280 | $1,372.00 |
| | | | SUBTOTAL | $107,903.80 |

---

"pull" the joint appendix from PACER and then download it, but Plaintiff's submissions do not adequately demonstrate this. As this Court has no means to determine the reasonableness of the hours reflected in these time entries, it would be appropriate for the hours to be reduced, or even eliminated from any fee computation. Nonetheless, this Court views its recommended 50-percent, across-the-board reduction in Walker's hours (together with the hours of all other timekeepers) to be sufficient to account for any excess in these particular entries.

| Kelley Drye | | | | |
|---|---|---|---|---|
| Timekeeper | Job Title | Hours (reduced by 50% from Stated Hours) | Recommended Rate | Lodestar |
| Dellaportas | Partner | 10.3 | $615 | $6,334.50 |
| Sarah L. Reid | Partner | 7.65 | $750 | $5,737.50 |
| Erika Stallings | Associate | 5.15 | $395 | $2,034.25 |
| Keith Vena | Paralegal | 20.25 | $265.60 | $5,378.40 |
| Tanya Green | Paralegal | 1.15 | $265.50 | $305.33 |
| Caslyn Carrey | Paralegal | 7.75 | $265.50 | $2,057.63 |
| | | | **SUBTOTAL** | **$21,847.60** |
| | | | **TOTAL (both firms)** | **$129,751.40** |

Plaintiff's presumptively reasonable attorneys' fees for the appeal therefore total

$129,751.40, and this Court sees no reason to diverge from the lodestar in this case.

Accordingly, under the terms of the 2004 Indemnity, I recommend that the Court award Plaintiff

half of that amount, or $64,875.70.

## B. Fees Incurred on the Instant Motion

A party that has been awarded attorneys' fees is generally entitled to recover "fees on

fees," *i.e.*, the reasonable cost of making a fee application. *Mawere v. Citco Fund Servs., (USA)

Inc.*, No. 09cv1342 (BSJ) (DF), 2011 WL 6779319, at *7 (S.D.N.Y. Sept. 16, 2011), *report and

recommendation adopted,* No. 09cv1342 (BSJ) (DF), 2011 WL 6780909 (S.D.N.Y. Dec. 27,

2011) (citing *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999); *Valley Disposal, Inc. v. Cent. Vt.

Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995)). The Court should evaluate the

costs of preparing the fee motion no differently from the costs of litigating the underlying case.

*Mawere*, 2011 WL 6779319, at *7 (quoting *Valley Disposal, Inc.*, 71 F.3d at 1059) (internal

quotation marks omitted).

17

Here, in his moving brief on his fee application, Plaintiff estimated the fees incurred in preparing the application to be $15,000, pending the availability of finalized invoices. (Pl. Mem., at 8.) Plaintiff indicated that "[t]his aspect of [his] fee application [would] be supplemented in [his] reply submission," but he then included no such supplementation with his reply. (*Id.*) Thus, this Court is wholly unable to assess whether Plaintiff's estimate of $15,000 was accurate or reasonable, and, accordingly, I recommend that "fees on fees" be denied at this time. Further, I recommend that Plaintiff, who had indicated that he would substantiate his requested "fees on fees" in his Reply, but then did not (*see* Pl. Reply Mem., at 9 (reiterating request for such fees, but pointing to no documentation), and who has said nothing on the subject since, *not* be granted leave, *sua sponte*, to file yet another fee application. There is a need for finality in this protracted litigation, and, if the Court accepts the within recommendation that Plaintiff be awarded fees reasonably incurred on the appeal, the case will end with his having been granted three separate awards of attorneys' fees in this case. In this Court's view, and in the totality of the circumstances, denying Plaintiff fees on fees at this juncture would be an appropriate use of the Court's discretion.

## C.     Costs

Plaintiff's requested costs relating the appeal fall into two categories – the $3,497.96 in claimed appellate printing costs that he included in his two bills of costs, as described above, and $9,077.52 in other expenses, such as taxis and meals, incurred by counsel (mostly by Morgan Lewis) in the course of working on the appeal.

As to the printing costs, costs of this type are taxable under 28 U.S.C. § 1920(3) and Federal Rule of Appellate Procedure 39, and the Second Circuit has already determined that Plaintiff's reasonable recovery for printing costs is $210.60. (*See* Dkt. 146; Dkt. 224 in Appeal

18

No. 15-350 (2d Cir.).) In light of this determination, I recommend that the Court not engage in a separate examination of the reasonableness of Plaintiff's printing costs, or include any such costs in its fee award. (*Cf.* Order, dated Feb. 2, 2015 (Dkt. 108) (directing that costs to which Plaintiff was entitled as a prevailing party were to be handled by the Court's Orders and Judgments Clerks, pursuant to Fed. R. Civ. P. 54(d)(1).)[8]

As to the additional costs that Plaintiff seeks (*i.e.*, 50 percent, under the 2004 Indemnity, of those costs that are non-taxable under 28 U.S.C. § 1920), Defendant makes a generalized argument that the costs in question are too high (*see* Herschmann Decl. ¶ 23), but does not take issue with any particular itemized disbursements. Nonetheless, this Court has reviewed Plaintiff's submitted documentation, so as to satisfy itself of the reasonableness of Plaintiff's request. On review, this Court finds that, with one exception, the types of charges and amounts that are listed by both Morgan Lewis and Kelley Drye appear to be reasonable and appropriate. The exception is that Morgan Stanley's purported "word processing" costs – totaling $3,610.00 – are not sufficiently explained for this Court to be able to ascertain their reasonableness. This Court assumes that counsel's "word processing" costs are not synonymous with their printing costs, as printing charges were purportedly listed separately, in Plaintiff's bills of costs. More likely, the costs may have been for work performed by the firm's secretarial staff, but, as Plaintiff has offered no description of the work actually performed, how it related to the case, or

_____

[8] This Court notes that the Second Circuit's taxation of costs in Plaintiff's favor was based on statute, and not on the 2004 Indemnity. For this reason, Defendant is separately required to pay all of the costs duly taxed by the Circuit – not half, as would be the case if her liability were based on the contract between the parties. For the same reason, Plaintiff's argument, made in his reply brief, that his fee application here should be reduced by 50 percent of the costs taxed in his favor by the Circuit (*see* Pl. Reply Mem, at 10) is illogical; as the prevailing party on the appeal, Plaintiff has already been found to be entitled to 100 percent of those costs.

19

the identity of the person(s) performing the work, these charges should be excluded from any award. *See Amaprop Ltd. v. Indiabulls Financial Servs. Ltd.*, No. 10cv1853 (PGG), 2011 WL 1002439, at *9 (S.D.N.Y. Mar. 16, 2011) (disallowing "word processing" costs that had "not been explained in sufficient detail").

I therefore recommend that Plaintiff be awarded $2,733.77 in costs pursuant to the 2004 Indemnity, representing one-half of all presented costs related to the appeal, except for printing costs (which were separately taxed by the Second Circuit) and "word processing" costs listed by Morgan Lewis.[9]

## CONCLUSION

For the reasons set forth above, I recommend that, under the 2004 Indemnity, Plaintiff be awarded $64,875.70 in attorneys' fees (representing one-half of the reasonable attorneys' fees incurred by Plaintiff in connection with Defendant's appeals), and $2,733.77 in costs (representing one-half of the reasonable, non-taxable costs incurred by Plaintiff in connection with the appeals).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Katherine B. Forrest, United States Courthouse, 500 Pearl Street, Room 2230, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

---

[9] This is calculated as follows: $9,077.53 [total presented costs other than the printing costs included in the Bill of Costs filed by Plaintiff in the Second Circuit] - $3,610.00 ["word processing" costs] ÷ 2 [under the terms of the 2004 Indemnity].

10007. Any requests for an extension of time for filing objections must be directed to

Judge Katherine B. Forrest. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14)

DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      May 22, 2017

                                           Respectfully submitted,

                                           DEBRA FREEMAN
                                           United States Magistrate Judge

Copies to:

All counsel (via ECF)